UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PharmacyChecker.com LLC,<br><br>*Plaintiff,*<br><br>vs.<br><br>National Association of Boards of Pharmacy, Alliance for Safe Online Pharmacies, Center for Safe Internet Pharmacies Ltd., LegitScript LLC, and Partnership for Safe Medicines, Inc.,<br><br>*Defendants.* | Civil Action No. 7:19-cv-07577-KMK<br><br>PLAINTIFF'S REPLY BRIEF TO DEFENDANT NATIONAL ASSOCIATION OF BOARDS OF PHARMACY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Judge Kenneth M. Karas<br>Magistrate Judge Paul E. Davison |

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................. 2

    I.     THE INJUNCTION IS PROHIBITORY ............................................................. 2

    II.    VENUE IS PROPER .......................................................................................... 3

    III.   IRREPARABLE HARM ..................................................................................... 4

          1.  PharmacyChecker.com's Irreparable Harm is From the
             Conspiracy, Not Merely NABP's Overt Act ............................................... 4

          2.  PharmacyChecker.com is Threatened With Three
            Distinct Types of Irreparable Harm .............................................................. 5

    IV.   NABP'S HARM IS MINIMAL ............................................................................ 6

    V.    COMPETITION IS THE OVERRIDING PUBLIC INTEREST .................................. 7

    VI.   PHARMACYCHECKER.COM IS LIKELY TO SUCCEED ........................................ 8

          1.  PharmacyChecker.com's Injury Flows From Defendants,
            Not the Government ..................................................................................... 8

          2.  PharmacyChecker.com Submits Evidence, Not Just Allegations,
            Proving Conspiracy ...................................................................................... 9

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*California v. Am. Stores Co.*,
    495 U.S. 271 (1990) ................................................................................ 3, 8

*In re Canadian Import Antitrust Litig.*,
    470 F.3d 785 (8th Cir. 2006) ................................................................. 1, 8

*Jacobson & Co. v. Armstrong Cork Co.*,
    548 F.2d 438 (2d Cir. 1977) ....................................................................... 5

*Mastrio v. Sebelius*,
    768 F.3d 116 (2d Cir. 2014) ................................................................... 2, 3

*Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*,
    381 U.S. 311 (1965) ..................................................................................... 8

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
    435 U.S. 679 (1978) ..................................................................................... 8

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
    392 U.S. 134 (1968), *overruled on other grounds by Copperweld
    Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ............................... 3, 10

*Pinkerton v. United States*,
    328 U.S. 640 (1946) ..................................................................................... 4

*Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*,
    649 F.2d 530 (7th Cir. 1981) .................................................................... 10

*Roso–Lino Beverage Distribs. v. Coca–Cola Bottling Co.*,
    749 F.2d 124 (2d Cir. 1984) ........................................................................ 5

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) ........................................................................ 2, 5

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................ 3, 9, 10

**Statutes**

15 U.S.C. 1 et seq. ............................................................................................... 1, 8, 10

15 U.S.C. § 22 ............................................................................................................ 3, 4

15 U.S.C. § 26 ............................................................................................................ 3, 8

NABP's focus on the importation issue is a red herring that distracts from the question before the Court. Although the parties have engaged in a longstanding dispute over the merits of personal importation, the Court need not choose a side in that argument in order to determine that PharmacyChecker.com is entitled to the relief it seeks. The question before the Court is about competition: Can the defendants lawfully combine to exclude a competitor from the two relevant markets—the market for pharmacy verification services and the market for comparative drug pricing information?

Vigilantism is not a defense to the Sherman Act, and in any case, PharmacyChecker.com does not import medicine—it provides consumers with valuable information that helps keep them safe and make informed purchasing decisions. It has effectively been excluded from these markets by the defendants and suffered irreparable harm, including reputational damage and loss of goodwill that NABP wholly overlooks. The motion-to-dismiss standard is irrelevant to this motion, which is supported by direct and circumstantial ***evidence*** of the conspiracy. And unlike the consumers in *In re Canadian Import Antitrust Litigation* whose higher prices were caused by government policies, PharmacyChecker.com's injuries were proximately caused by the defendants' anticompetitive conduct. PharmacyChecker.com has shown it is likely to succeed on the merits of its antitrust challenge to defendants' group boycott, that the boycott caused irreparable harm exactly of the type the anti-

trust laws were intended to prevent, that the balance of equities favors PharmacyChecker.com, and that an injunction is in the public interest. This Court should grant the motion and enter an injunction against NABP and CSIP.

## ARGUMENT

### I. THE INJUNCTION IS PROHIBITORY

Like most preliminary injunctions, the relief sought by PharmacyChecker.com is prohibitory because it seeks a return to the status quo as it existed prior to the conduct giving rise to the complaint. NABP's arguments to the contrary do not comport with the decisions of this circuit: an injunction is not mandatory simply because it requires an affirmative act to return to the status quo, and the status quo does not depend on the passage of time. Regardless, the mandatory/prohibitory distinction is not relevant in antitrust cases.

A "typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits," while a "mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). The status quo is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (citations omitted). Preserving it "is not confined to ordering the parties to do nothing: it may require parties to take action." *Id.* at 120–21.

In *Mastrio*, the court considered whether an order granting a temporary restraining order requiring the government to reinstate the plaintiff's health benefits

restored or altered the status quo. *Id.* It held that the order's "effect was simply a return to the status quo." *Id.* PharmacyChecker.com likewise seeks relief that returns the parties to the last peaceable status prior to the controversy giving rise to the motion: before PharmacyChecker.com was added to the blacklist. That it took months to result in irreparable harm does not change the analysis.

Regardless, the distinction between mandatory and prohibitory conduct is not relevant in the antitrust context. *California v. Am. Stores Co.*, 495 U.S. 271, 282 (1990) ("[T]he distinction between . . . prohibitory and mandatory relief is illusory in a case of this kind."). In fact, the Clayton Act, 15 U.S.C. § 26, gives this Court broad power to fashion injunctive remedies aimed at preventing threatened harm to competition. *Am. Stores*, 495 U.S. at 284 (15 U.S.C. § 26 was enacted "not merely to provide private relief, but to serve as well the high purposes of enforcing the antitrust laws."); *see also Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968) (rejecting requirements beyond those set by Congress because "private [antitrust suits] serve[] important public purposes"), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).

## II. VENUE HERE IS PROPER

The appropriate vehicle to contest venue is a motion for improper venue under Federal Rule of Civil Procedure 12(b)(3), which NABP has not filed. Regardless, NABP transacts business in this district: it has accredited and continues to maintain accreditations for at least 89 pharmacies located in the Southern District of New York

3

on its own website, the listings for which it publicly posts on its VIPPS website. *See* 15 U.S.C. § 22; Decl. of Lisa Mittwol, Ex. 1. Thus, venue here is proper.

## III. PHARMACYCHECKER.COM SHOWS IRREPARABLE HARM

### 1. PharmacyChecker.com's Irreparable Harm Is from the Conspiracy, Not Merely NABP's Overt Act

NABP attempts to put distance between PharmacyChecker.com's irreparable harm and its act of placing PharmacyChecker.com on its blacklist, which occurred months earlier. But NABP's overt act in December 2018 is not the appropriate benchmark. This is an antitrust conspiracy case; the question is whether the conspiracy caused PharmacyChecker.com irreparable harm—not whether NABP did, because a conspiracy does not accomplish its objective through one conspirator alone. *Cf. Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) (holding conspirators liable for all acts in furtherance of conspiracy). In fact, since the filing of this lawsuit, NABP has doubled down on its harm to PharmacyChecker.com: it has now ratchetted up its assertions on its Not Recommended Sites webpage, stating that "all sites" on the list are "unsafe."[1] It also created new individual pages for each of PharmacyChecker.com and PharmacyCheckerBlog.com to further suppress its search-engine visibility. *See* Exs. A–B attached to the Declaration of Aaron Gott ("Gott Decl.") filed with this reply.

PharmacyChecker.com could not have shown a threat of irreparable harm in late December 2018, as the full consequences of NABP's conduct had not yet been

---

[1] *See* https://safe.pharmacy/not-recommended-sites/ (last visited Sept. 6, 2019).

4

realized. Google updated its page rank algorithms implementing the updated blacklist in March 2019. Then, in July 2019, Bing began displaying the pop-up warning to scare consumers away from PharmacyChecker.com.[2] *See* Mot. at 6. It was after this latter date that a pattern emerged as crucial circumstantial evidence that forcefully rebuts the very denial that NABP now makes. *See* Opp'n at 25 ("these allegations deal with unilateral conduct wholly unconnected to any other defendant.").

### 2. PharmacyChecker.com Is Threatened with Three Distinct Types of Irreparable Harm

The motion details three types of irreparable harm that PharmacyChecker.com faces: (1) a major disruption of its business, which relies on its visibility to consumers, S*aban Entm't.*, 60 F.3d at 37 (threatened loss of business is irreparable harm); *Roso–Lino Beverage Distribs. v. Coca–Cola Bottling Co.*, 749 F.2d 124, 125-26 (2d Cir. 1984) (loss of "ongoing business representing many years of effort" is irreparable harm); (2) lost good will and customers, "neither of which could be rectified by monetary damages," *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir. 1977); and (3) reputational damage, particularly since July when Bing added a warning box to PharmacyChecker.com's search results. NABP largely only addresses the first type, dissecting and downplaying individual facts such as how many customers Pharmacy-Checker.com has lost to date. NABP argues that a business who loses one-sixth of its

---

2. As of yesterday, Sept. 5, it appears that Bing removed many warnings relating to Pharmacy-Checker.com and PharmacyCheckerBlog.com. It continues to maintain warnings for other websites on the blacklist, suggesting that Bing did so in response to this lawsuit.

5

total customers does not face a major disruption. PharmacyChecker.com disagrees, but it is beside the point: PharmacyChecker.com has lost a substantial proportion of its customers and 70% of its revenue in just a couple of months—that indicates a *threat* of a major business disruption yet to come as the reality of defendants' scheme sets in and PharmacyChecker.com's customer base continues to drop.[3] That is hardly speculative. Moreover, given the nature of the services that PharmacyChecker.com provides—verification and publication of information about safe online pharmacies—its credibility is especially vital to its success and any loss of reputation or goodwill is both catastrophic and unrecoverable.

## IV. NABP'S HARM IS MINIMAL

NABP argues that it will be harmed if an injunction is issued, but it does not explain what that harm is. Elsewhere in the opposition, it references "direct costs on its operations" due to having to modify its list and notify third parties as well as unspecified "reputational damage." Opp'n at 25. Even if the Court could ascertain those costs and the effect on NABP's reputation from these vague references, those potential side effects pale in comparison to the irreparable harm PharmacyChecker.com will suffer, and that it has already begun suffering, at the hands of the defendants' purposeful scheme. To the extent NABP will suffer reputational damage from having

---

3. As of this filing, PharmacyChecker.com has now lost a total of 8 pharmacies from its listing program since December 2018, the majority of which (6) were lost since March. No new pharmacies have entered the listing program in 2019, in contrast to 8 that joined in 2018. The total number has decreased from 31 at the end of 2018 to 23 at present. Aff. of Tod Cooperman, MD, ¶ 4.

to unwind its anticompetitive conduct, that is not an appropriate consideration for equitable balancing.

## V. COMPETITION IS THE OVERRIDING PUBLIC INTEREST

NABP spends substantial effort attempting to convince the Court that international pharmacies are a risk to the public health, but these claims are devoid of any actual evidence that accredited safe international pharmacies pose any risk to public health. Indeed, reported data, including peer-reviewed research, show they are just as safe as U.S. pharmacies. *See, e.g.*, Gott Decl., Ex. C. Setting aside the broader questions about the safety of drug importation, NABP's position defies logic: the very mission of PharmacyChecker.com is to provide patients with information about purchasing medicines from verified ***safe*** sources online (both U.S. and international). Even Dr. Catizone, who now claims on behalf of NABP that PharmacyChecker.com is a risk to public health, previously admitted on the record that "clearly [PharmacyChecker.com] serve[s] a purpose, and they help consumers, and we serve a different purpose, or maybe just slightly different." Gott Decl., Ex. D at 10. Thus, NABP's blacklist serves as a risk to public health, denying consumers valid and, indeed, critical prescription drug information.

NABP's argument is further belied by its own course of conduct—it previously added PharmacyChecker.com to its blacklist in 2010, only to reverse course and remove it when PharmacyChecker.com protested. Did NABP simply stand by and watch this supposed patient harm in the intervening eight years—evidence of which

7

it does not present—occur?

In any case, one public interest overrides all others in an antitrust case: the protection of competition. In fact, the Supreme Court has rejected arguments that enforcing the antitrust laws should take a back seat to safety as nothing more than a full-frontal assault on the national policy in favor of competition. "The Sherman Act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978). To make "[e]xceptions to the Sherman Act for potentially dangerous goods and services would be tantamount to a repeal of the statute." *Id.* It would be no different to deny a preliminary injunction on those same rejected public safety grounds. *See Am. Stores,* 495 U.S. at 283–84 (Clayton Act remedies in public interest); *Minn. Stores*, 495 U.S. at 283–84 (same); *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 318 (1965) ("[P]rivate antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws.").

## VI. PHARMACYCHECKER.COM IS LIKELY TO SUCCEED

### 1. PharmacyChecker.com's Injury Flows from Defendants, Not the Government

NABP relies entirely on an Eighth Circuit case, *In re Canadian Import Antitrust Litigation*, to contest PharmacyChecker.com's antitrust standing. 470 F.3d 785 (8th Cir. 2006). That case involved a class of consumers who alleged they suffered an antitrust injury in the form of higher prices for prescription medicine as a result of a conspiracy by pharmaceutical manufacturers to suppress international pharmacy

8

competition. *Id.* at 791. That court found that the higher prices the consumers paid were not the result of the conspiracy but instead the result of federal government policies restricting the importation of prescription medicine. *Id.* In other words, the plaintiffs' injuries did not flow from the anticompetitive conduct—they flowed from the government policies. By contrast, PharmacyChecker.com's injuries did not result from government policies or government action. They resulted from the defendants' conspiracy. Indeed, they are exactly the desired consequence of the conspiracy: exclusion of PharmacyChecker.com as a competitor in the markets for pharmacy verification and price comparisons by effectively silencing its consumer-facing expression in markets where that expression is the very essence of the service provided.

NABP's proposition that personal importation is necessarily illegal under all circumstances is flatly incorrect—there are exceptions and numerous legitimate pathways to import medicine. *See* Compl., ¶¶ 48–52. Even if that were not the case, this private-party vigilantism is not somehow immunized from antitrust liability. *See Perma Life*, 392 U.S. at 140 (*in pari delicto* inapplicable to antitrust); *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 n.5 (7th Cir. 1981) (same).

### 2. PharmacyChecker.com Submits Evidence, Not Just Allegations, Proving Conspiracy

NABP argues that the injunction should be denied because the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). But the pleading standard is wholly inapplicable to a motion for preliminary injunction. PharmacyChecker.com, in fact, must show evidence, and it submits that it met its burden of

9

showing a likelihood of success on the concerted action requirement by supplying both direct and circumstantial evidence of defendants' conspiracy before even having the benefit of discovery.

Even if this motion for preliminary injunction turned, even in part, on whether a complaint would survive a motion to dismiss, NABP's argument is misplaced for two reasons. First, it attempts to rebut those allegations with its own averments despite that, for purposes of Rule 12(b)(6), the Court must assume the truth of the allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Second, this is **not** a parallel conduct case like *Twombly*: PharmacyChecker.com pleads detailed facts that require no inferences to support a conclusion that the defendants consciously committed to a common scheme in violation of Sherman Act Section 1.

## CONCLUSION

For the foregoing reasons, PharmacyChecker.com respectfully requests that the Court grant its motion and enter a preliminary injunction against NABP and CSIP.

Respectfully submitted,

DATED: September 6, 2019

By: _____
*S/Alexandra Shear*
Alexandra Shear

Aaron Gott (CA Bar #314264)
Jarod Bona (CA Bar #234327)
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037

Alexandra Shear (4373023)
BONA LAW PC
The Seagram Building
375 Park Ave #2607
New York, NY 10152

(858) 964-4589  
aaron.gott@bonalawpc.com  
jarod.bona@bonalawpc.com

*Counsel for Plaintiff Pharmacy-Checker.com*

(212) 634-6861  
alex.shear@bonalawpc.com

*Counsel for Plaintiff Pharmacy-Checker.com*

**CERTIFICATE OF SERVICE**

I, Gabriela Hamilton, hereby certify that on this 6th day of September 2019, I caused a copy of Plaintiff's Reply Brief to Defendant National Association of Boards of Pharmacy's Opposition to Plaintiff's Motion for Preliminary Injunction and the Declaration of Aaron Gott in Support of Plaintiff's Reply Brief to Defendant National Association of Boards of Pharmacy's Opposition to Plaintiff's Motion for Preliminary Injunction be served upon counsel of record via the Court's electronic filing system.

                                                                                         _/s/ Gabriela Hamilton_
                                                                                         GABRIELA HAMILTON