UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PharmacyChecker.com LLC,<br><br>               *Plaintiff*,<br>vs.<br><br>National Association of Boards of Pharmacy et al.,<br><br>               *Defendants*. | Civil Action No. 7:19-cv-07577-KMK<br><br>**Plaintiff's Opposition to Defendant Alliance for Safe Online Pharmacies' Motion to Dismiss**<br><br>ORAL ARGUMENT REQUESTED<br><br>Judge Kenneth M. Karas<br>Magistrate Judge Paul E. Davison |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 1

    I.    THE COMPLAINT ADEQUATELY ALLEGES A CONSPIRACY ............... 2

        A. The Complaint Pleads Facts Connecting ASOP to the Conspiracy ........................... 2

        B. ASOP's Proffered Alternative Explanation is Irrelevant on a Motion
           to Dismiss ................................................................................................................... 8

    II.    ASOP'S ANTICOMPETITIVE CONDUCT IS NOT SHIELDED BY THE
        *NOERR-PENNINGTON* DOCTRINE ........................................................................ 9

CONCLUSION ........................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
 486 U.S. 492 (1988) .................................................................................................. 11

*Anderson News, L.L.C. v. Am. Media, Inc.*,
 680 F.3d 162 (2d Cir. 2012) ................................................................................... 3, 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................... 2, 7, 8, 9

*Eastman Kodak Co. v. Henry Bath LLC*,
 936 F.3d 86 (2d Cir. 2019) ..................................................................................... 11

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
 385 F.3d 159 (2d Cir. 2004) ..................................................................................... 8

*In re Ins. Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010) ..................................................................................... 2

*In re Interest Rate Swaps Antitrust Litig.*,
 261 F. Supp. 3d 430 (S.D.N.Y. 2017) ..................................................................... 9

*Litton Sys., Inc. v. AT&T Co.*,
 700 F.2d 785 (2d Cir. 1983) ................................................................................... 10

*Mayor & Council v. Citigroup, Inc.*,
 709 F.3d 129 (2d Cir. 2013) ..................................................................................... 3

*E. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
 365 U.S. 127 (1961) .......................................................................................... 10, 11

*Palin v. N.Y. Times Co.*,
 940 F.3d 804 (2d Cir. 2019) ..................................................................................... 8

*Starr v. Sony BMG Music Entm't*,
 592 F.3d 314 (2d Cir. 2010) ................................................................................. 7, 8

**Statutes and Rules**

15 U.S.C. § 1 *et seq.*................................................................................................... 1

Fed. R. Civ. P. 12(b)(6).................................................................................................. 8

**INTRODUCTION**

The Alliance for Safe Online Pharmacies' (ASOP) motion to dismiss should be denied. The motion is procedurally improper and duplicative of the joint motion it also joined in submitting, arguing once again that PharmacyChecker.com has not plausibly alleged a conspiracy under Sherman Act Section 1.[1] But, as explained in the opposition to the joint motion, the complaint sufficiently alleges the existence of the conspiracy and adequately links ASOP to that conspiracy. ASOP seeks to overcome these well-pled allegations by posing an alternative explanation that concedes it entered an agreement by instead proffering justifications for that agreement. In any case, its alternative explanation creates a premature factual dispute, and PharmacyChecker.com's claim is not based on injury from any petitioning activity protected by *Noerr-Pennington* doctrine. Accordingly, the Court should deny ASOP's individual motion to dismiss.

**ARGUMENT**

As described more extensively in PharmacyChecker.com's opposition to defendants' joint motion to dismiss, the complaint adequately alleges an anticompetitive conspiracy and sufficiently links ASOP to the conspiracy and its efforts.

---

1. Under Rule II.A. of the Individual Rules of Practice of the Honorable Kenneth M. Karas, a motion to dismiss requires a pre-motion conference, which a moving party must arrange by submitting a letter with the basis for the anticipated motion. All other defendants complied with this rule. ASOP did not—nor does it explain why it failed to do so—yet it now submits a duplicative motion designed only to take a second bite at the plausibility apple already presented in the joint motion to dismiss.

1

# I. THE COMPLAINT ADEQUATELY ALLEGES A CONSPIRACY

The complaint alleges a nationwide conspiracy with the overall objective of controlling pharmacy-related Internet commerce in the United States, the efforts of which deliberately targeted PharmacyChecker.com, with extensive and detailed allegations that plausibly suggest an agreement was made among the defendants. Some allegations plead direct facts showing defendants' agreements and involvement in the conspiracy, which require no inferences and are themselves adequate to survive a motion to dismiss. But the complaint goes significantly further by including additional, circumstantial facts from which an agreement could independently be inferred. These details are described at length in PharmacyChecker.com's opposition to the joint motion to dismiss, which we incorporate by reference.

## A. The Complaint Pleads Facts Connecting ASOP to the Conspiracy

The allegations connecting ASOP to the alleged conspiracy are no different. As explained below, PharmacyChecker.com pleads both direct allegations of ASOP's agreements and circumstantial allegations that support an inference ASOP consciously committed to a conscious scheme.

An antitrust complaint can adequately plead a conspiracy in two ways. First, it can allege direct facts establishing that the defendants entered into an agreement. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323–24 (3d Cir. 2010) ("Allegations of direct evidence of an agreement, if sufficiently detailed, are independently adequate" under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). But

in most antitrust cases, "smoking gun" direct evidence is hard to come by at the pleading stage, so as an alternative, a complaint may "present circumstantial facts supporting the *inference* that a conspiracy existed." *Mayor & Council v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). An inference is warranted where the circumstances show parallel conduct and "plus factors" such as common motive, actions against individual economic self-interest, a high degree of interfirm communications, or potentially other circumstances that make an agreement more plausible. Importantly, a plaintiff need not provide circumstantial allegations "suggesting an agreement are more likely than not true or that they rule out the possibility of independent action, as would be required at later litigation stages such as a defense motion for summary judgment." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012).

The direct allegations of ASOP's agreement include:

- In ASOP's own words, it joined with PSM, NABP, and others in an anticompetitive strategy of "requiring Internet search engines, domain name registrars, and other 'gatekeepers' to stop enabling rogue Internet drug outlets" (the complaint elsewhere explains that the defendants' definition of "rogue Internet drug outlets" includes companies like PharmacyChecker.com). ¶70.[2] In the same statement, ASOP mentioned

---

2. Unless otherwise noted, paragraph references are to the Amended Complaint, docket 82 filed October 21, 2019.

- they (ASOP, NABP, PSM, and other key stakeholders) had persuaded multiple search engines to amend their policies to allow advertising only by NABP's VIPPS-accredited pharmacies. *Id.*
- ASOP and NABP held a meeting they dubbed the "Task Force on Internet Pharmacy Practice" to discuss numerous plans for actions they intended to undertake in conjunction with their co-conspirators to further limit competition for online pharmacies. ¶72. At the meeting:
  - NABP and ASOP affirmed their agreement to restrain competition and discussed a plan to persuade gatekeepers to deny resources to PharmacyChecker.com and others. ¶73a.
  - NABP and ASOP committed to "continue interfacing with CSIP and encourage CSIP to support Internet environments" that deprive all but LegitScript- and NABP-approved pharmacies of key internet resources. ¶73b.
- A representative of Eli Lilly, an ASOP member, represented to the federal government that "ASOP is the manner in which Lilly (and PhRMA as an observer) is ***working with other key stakeholders*** to compile data and collaborate to address the problem of online drug sellers/counterfeits, as ***we cannot do this as one company***, or as PhRMA alone." ¶69 (emphasis added).

These are all direct allegations of conspiracy, straight from the conspirators'

own words: ASOP publicly announced multiple agreements with other defendants that specifically stated what they were going to do: persuade key Internet gatekeepers to deprive their targets, including PharmacyChecker.com, of resources necessary to compete. The Court need not look any further than these direct allegations to confirm ASOP's connection to a well-pleaded conspiracy. But there are also abundant circumstantial allegations connecting ASOP to the conspiracy:

- ASOP was launched by LegitScript (a direct competitor of PharmacyChecker.com) and pharmaceutical and pharmacy interests, including Eli Lilly and the National Association of Chain Drug Stores. ¶67a.

- NABP and PSM became "observers of ASOP and regularly participate[d] in meetings and initiatives." *Id*.

- ASOP helped LegitScript, Eli Lilly, and others launch CSIP. ¶74.

- NABP, ASOP, CSIP, LegitScript and other pharmaceutical interests and stakeholders "jointly developed a proposal that would create a new gatekeeping function through the global domain name system administered directly by NABP" which culminated with the ".pharmacy" domain. The group "created the eligibility requirements and worked with CSIP members to implement new restrictions to prevent non '.pharmacy' websites from advertising, receiving merchant payments, and other vital aspects of Internet commerce." ¶¶80, 96.

- ASOP, with the other defendants, "also engaged in coordinated misinformation campaigns," sometimes "jointly issu[ing] false and misleading paid news release[s]" and published similar materials on the same topics, often repeating the same false information asserted by their co-conspirators. ¶¶85–86.

- CSIP and ASOP have funded, supported, and carried out misinformation advertising campaigns that have reached as many as 40 million people. ¶74.

- PSM made announcements championing ASOP's programs. ¶77.

- ASOP and LegitScript jointly issued a false and misleading news release August 18, 2015 targeted at PharmacyChecker.com. ¶85a.

- Just weeks later, CSIP posted a similar statement on its blog. ¶85c.

- ASOP's website published a consumer-facing "FAQ" repeating various scare tactics and false claims about the safety of online pharmacies, and specifically dedicated an entire section to disparaging PharmacyChecker.com with false and misleading statements. The same webpage links to a LegitScript article about PharmacyChecker.com and provides links to further information from ASOP and NABP. ¶85g.

- ASOP's principal executive, Libby Baney, is registered as a lobbyist for not just ASOP, but also NABP and GoodRx (an ASOP member and competitor of PharmacyChecker.com). ¶7.

- ASOP's Libby Baney regularly appears together with NABP's Carmen Catizone on news and radio programs. ¶85h. Baney has claimed in those appearances that sites on NABP's Not Recommended List are "illegal or rogue sites" "outside the U.S." who are "faking those licenses" and "faking legitimacy just so they can bring people to their site and think they're real and they are selling these counterfeit products." ¶131.
- ASOP, as well as PSM and CSIP, have publicly endorsed LegitScript and NABP's VIPPS program while at the same time calling PharmacyChecker.com an unsafe pharmacy website. ¶100.

Thus, even if the complaint did not contain direct facts showing that ASOP agreed with others, including defendants, to restrain trade, it sufficiently alleges facts "in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 323 (2d Cir. 2010) (citing *Twombly*, 550 U.S. at 557). This is not a parallel conduct case *even when* considering only the circumstantial facts. The complaint pleads multilateral and bilateral actions by defendants undertaken in broad daylight. The circumstances plausibly suggest a conspiracy to restrain trade because of these joint actions as well as the numerous examples of "plus" factors.

Moreover, although ASOP implies that *some* allegations are insufficient because they do not allege specific times, places, or persons who acted on behalf of ASOP and others, such extreme specificity is not required. *Starr*, 592 F.3d at 325

7

("Defendants next argue that *Twombly* requires that a plaintiff identify the specific time, place, or person related to each conspiracy allegation. This is also incorrect.").

## B. ASOP's Proffered Alternative Explanation is Irrelevant on a Motion to Dismiss

ASOP's attempts to offer an alternative explanation to the complaint's allegations—what ASOP calls the "obvious explanation"—should be rejected as improper on a motion to dismiss. Courts construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true and drawing all inferences in favor of the plaintiff. *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). Further, "[t]he test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019); *see also Anderson News,* 680 F.3d at 185 ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").

ASOP attempts to do the opposite, asking the Court to construe allegations and draw inferences against PharmacyChecker.com and accept what ASOP insists is a more "obvious" explanation. In reality, ASOP's alternative seems to be that it was justified as a "non-profit with the aim of advocating for the safe dispensing of pharmaceuticals by online pharmacies . . . ." Dkt. 105 at 7. It is irrelevant that ASOP insists it had noble intentions relating to its efforts to restrain activity in these markets. ASOP still joined an agreement to restrain competition, and that does not cease to be an agreement simply because ASOP adamantly believes the restraints

8

imposed were justified.

Moreover, regardless of ASOP's purported altruism, it acknowledges the direct allegations of its participation in the conspiracy that it entered into an agreement with certain co-conspirators—including its collaboration with key stakeholders, issuance of a press release, and multiple meetings with NABP. *See id.* at 15–16. These facts are sufficient to adequately plead the existence of a conspiracy.

Further, ASOP's citation to *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 462 (S.D.N.Y. 2017), for the proposition that it can inject "obvious alternative explanations" is irrelevant. That proposition was simply a reference to *Twombly* and its uncontroversial holding that bare bones allegations of parallel conduct, without more, is not sufficient to allege a conspiracy. 550 U.S. at 550–51. Yet, PharmacyChecker.com's complaint is nothing like that in *Twombly*, but instead offers numerous detailed allegations of meetings and joint efforts, much more than simple parallel conduct and speculation about motive.

Of course, ASOP will have an opportunity to test its "obvious alternative explanation" later, at summary judgment or beyond, but because PhamarcyChecker.com plausibly alleged a conspiracy, with both direct and circumstantial facts, there is no place for ASOP to insist that its interpretation of the facts supplants PharmacyChecker.com's.

## II.    ASOP'S ANTICOMPETITIVE CONDUCT IS NOT SHIELDED BY THE *NOERR-PENNINGTON* DOCTRINE

ASOP half-heartedly suggests that its anticompetitive conduct is shielded by

the *Noerr-Pennington* doctrine. This is incorrect, as *Noerr-Pennington* is inapplicable to private commercial activity. *Litton Sys., Inc. v. AT&T Co.*, 700 F.2d 785, 807 (2d Cir. 1983) ("[T]he *Noerr-Pennington* doctrine is plainly inapposite because AT&T was engaged in private commercial activity, no element of which involved seeking to procure the passage or enforcement of laws.").

The complaint focuses on defendants' private market activity, not efforts to lobby or petition the government. PharmacyChecker.com alleges it was injured by defendants' efforts to influence private market participants by driving them from PharmacyChecker.com's website and misclassifying it as unlawful and dangerous. In fact, the complaint distinguishes defendants' lobbying activity from their private anticompetitive conduct. ¶59 ("[B]ecause the defendants and the interests they represent have been unsuccessful in their efforts to use the government to do their bidding, they have instead launched misinformation campaigns to scare consumers and developed private agreements with internet gatekeepers to unlawfully deprive consumers access to, and information about, safe online pharmacies.").

*Noerr* confirmed this distinction, noting there were "no specific findings that the [defendants] attempted directly to persuade anyone not to deal with the [plaintiffs]." *E. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 142 (1961). Instead, "all of the evidence . . . deal[t] with the [defendants'] efforts to influence the passage and enforcement of laws." *Id.*

Courts simply need to assess from where the alleged injury flows: If the

complained of injury flows from government activity, *Noerr-Pennington* immunizes; if the complained of injury flows from private market activity, *Noerr-Pennington* offers no immunity. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) ("Where a restraint upon trade or monopolization is the result of valid governmental action, ***as opposed to private action***, those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint.") (citing *Noerr*, 365 U.S. at 136) (emphasis added). Here, PharmacyChecker.com's alleged injury did not result from any governmental action or restraint, but from ASOP and its co-conspirators' efforts to blacklist PharmacyChecker.com and to persuade other private market actors, including internet search companies, pharmacies, and other entities that facilitate internet commerce, to adopt the blacklist and exclude PharmacyChecker.com.

## CONCLUSION

For the foregoing reasons, PharmacyChecker.com respectfully requests that the Court deny ASOP's individual motion to dismiss. If the Court grants the motion, in whole or part, PharmacyChecker.com requests leave to amend to cure any deficiencies identified by the Court. *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019) (leave to amend should be freely granted except for good reason).

|  |  |
|---|---|
| | Respectfully submitted, |
| DATED: April 17, 2020 | By: <u>              *S/Aaron Gott*              </u><br>     AARON GOTT (admitted *pro hac vice*) |

aaron.gott@bonalawpc.com
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037

*Counsel for Plaintiff
PharmacyChecker.com*

# CERTIFICATE OF SERVICE

I, Lisa Mittwol, hereby certify that on this 17th day of April 2020, I caused a copy of Plaintiff's Opposition to Defendant Alliance for Safe Online Pharmacies' Motion to Dismiss the Amended Complaint be served upon counsel of record via the Court's electronic filing system.

*Lisa Mittwol*
LISA MITTWOL

1