# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PharmacyChecker.com LLC,<br><br>    Plaintiff,<br><br>v.<br><br>National Association of Board of Pharmacy, Alliance for Safe Online Pharmacies, Center for Safe Internet Pharmacies Ltd., LegitScript LLC, and Partnership for Safe Medicines, Inc.,<br><br>    Defendants. | Civil Action No.: 7:19-cv-07577-KMK<br><br>ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM OF LAW OF DEFENDANT PARTNERSHIP FOR SAFE MEDICINES, INC. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT AS TO IT WITH PREJUDICE

Leslie E. John *Pro Hac Vice*
john@ballardspahr.com
Elizabeth P. Weissert *Pro Hac Vice*
weisserte@ballardspahr.com

Jay N. Fastow (ID. 1541788)
fastowj@ballardspahr.com
Justin W. Lamson (ID. 770895)
lamsonj@ballardspahr.com

*Attorneys for Defendant,
Partnership for Safe Medicines, Inc.*

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT................................................................................................................... 2

    A.    PharmacyChecker Cannot Evade Its Own Allegations Demonstrating That PSM's Conduct Is Immunized by the Noerr-Pennington Doctrine. ....................... 2

    B.    PharmacyChecker Cannot Connect PSM to the Alleged Conspiracy. ................... 5

    C.    PharmacyChecker Should Not be Given Leave to Amend................................... 7

III. CONCLUSION............................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT v. Associated Press*,
   181 F.3d 216 (2d Cir. 1999) ................................................................................................... 7

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
   486 U.S. 492 (1988) .......................................................................................... 1, 2, 4, 6

*Am. Express Travel Related Servs. Co. v. Visa U.S.A.*,
   No. 04 Civ. 8967, 2005 U.S. Dist. LEXIS 42852 (S.D.N.Y. June 23, 2005) ........................... 7

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*,
   129 F. Supp. 2d 578 (W.D.N.Y. 2000) ................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 5, 6

*Caplan v. American Baby, Inc.*,
   582 F. Supp. 869 (S.D.N.Y. 1984) .......................................................................................... 7

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ................................................................................................ 6

*Eastern R. Conf. v. Noerr Motors*,
   365 U.S. 127 (1961) ............................................................................................................ 4, 5

*Fisk v. Letterman*,
   401 F. Supp. 2d 362 (S.D.N.Y. 2005) ..................................................................................... 3

*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................................................................ 8

*Gachette v. Metro N. High Bridge*,
   No. 12 Civ. 3838, 2013 U.S. Dist. LEXIS 5396 (S.D.N.Y. Jan. 14, 2013) .............................. 2

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   332 F. Supp. 3d 885 (S.D.N.Y. 2018) .................................................................................. 6, 7

*Music Ctr. S.N.C. Di Luciano Pisoni & C. v. Prestini Musical Instruments Corp*,
   874 F. Supp. 543 (E.D.N.Y. 1995) .......................................................................................... 5

*Suburban Restoration Co. v. ACMAT Corp.*,
   700 F.2d 98 (2d Cir. 1983) ...................................................................................................... 2

*Tera Grp., Inc. v. Citigroup, Inc.*,
   No. 17-cv-4302, 2019 U.S. Dist. LEXIS 128107 (S.D.N.Y. July 30, 2019) ............................ 1

*Weiss v. Willow Tree Civic Ass'n*,
    467 F. Supp. 803 (S.D.N.Y. 1979) ....................................................................................4, 5

The Partnership for Safe Medicines, Inc. ("PSM") respectfully submits this reply memorandum of law in further support of its Motion to Dismiss.

I. **PRELIMINARY STATEMENT**

PharmacyChecker.com, LLC ("PharmacyChecker") concedes that a "publicity campaign directed at the general public, seeking legislative or executive action, enjoys antitrust immunity." D.E. 111, Opp. to PSM MTD at 4 (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988)) (emphasis removed). PharmacyChecker also concedes that the Noerr-Pennington doctrine immunizes some of the conduct it alleges against PSM. *Id.* at 4. While PharmacyChecker tries to argue that other conduct is not protected, its arguments rest on mischaracterizations of the documents at issue (which PharmacyChecker relies upon in its Amended Complaint), sidestepping its allegations showing the protected nature of the conduct, and efforts to too narrowly circumscribe the doctrine.

Even considering the alleged conduct that PharmacyChecker does not concede is protected by Noerr-Pennington, however, PharmacyChecker fails to allege anything against PSM other than participation in meetings of a co-defendant association (and not meetings at which any conspiracy was allegedly discussed) and unilateral publication of a handful of articles. In fact, PharmacyChecker's own allegations of PSM's purpose and objectives—allegations it added to the Amended Complaint in an effort to invoke the jurisdiction of this Court—show that the alleged conduct is consistent with PSM's independent self-interest. *See* D.E. 82 at ¶ 10. These allegations fall far short of setting forth the "substantial connection" between PSM and the alleged conspiracy required to keep PSM in the case. *Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302, 2019 U.S. Dist. LEXIS 128107, at *40 (S.D.N.Y. July 30, 2019).

## II. ARGUMENT

### A. PharmacyChecker Cannot Evade Its Own Allegations Demonstrating That PSM's Conduct Is Immunized by the Noerr-Pennington Doctrine.

Once again, PharmacyChecker continues to ignore that the allegations it levied *against PSM* concern actions "attempting to influence" the government, which are immune. *See Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 99 (2d Cir. 1983); D.E. 82 at ¶ 10 (alleging PSM published articles "with the purpose of influencing policymakers and members of the public regarding importation issues"). PharmacyChecker's own case concedes that publicity campaigns "directed at the general public" receive antitrust immunity. *Allied Tube*, 486 U.S. at 499. Factually, PharmacyChecker resorts to referencing generalized allegations about "defendants," rather than engaging in a detailed analysis of the seven allegations it made against PSM. D.E. 98 at 4-5 (setting forth the seven items). In so doing, PharmacyChecker ignores its own allegations about: (i) ASOP requesting a meeting with an Obama administration official (Item (i)), PSM urging consumers to ask their senators to oppose certain legislation (Item (iii)), and ASOP's plan to engage with "key governmental agencies." (Item (ii)). D.E. 98 at 8-9.

Contrary to PharmacyChecker's assertions, it is clear that these allegations amount to more than "only one example in the complaint involving PSM" petitioning the government. D.E. 111 at 5. PharmacyChecker may now wish it had not focused so many of its allegations on protected conduct. But PharmacyChecker cannot change the protected nature of the alleged conduct, especially since its arguments are contradicted by the documents, specifically referenced in its Amended Complaint that these allegations purport to characterize. *See Gachette v. Metro N. High Bridge*, No. 12 Civ. 3838, 2013 U.S. Dist. LEXIS 5396, at *3-*4 (S.D.N.Y. Jan. 14, 2013) ( "[T]he Court 'is not obliged to reconcile plaintiffs own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by [the]

plaintiff in drafting the complaint.'") (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

For example, the August 2010 press release relied upon by PharmacyChecker in its Opposition, and referenced in paragraph 70 of the Amended Complaint, specifically states that ASOP, "[w]ith the support of NABP and other stakeholders…is *educating government policymakers* about the role Internet commerce stakeholders … could play in protecting patient safety[.]" D.E. 99-2 (Ex. B) (emphasis added). The press release captures the petitioning nature of these actions, stating ASOP's goals involving the cooperation of "choke-point stakeholders *and government actors*" regarding online pharmaceutical sales and "[e]ngaging with key *government agencies*." *Id.* (emphasis added). This represents quintessential Noerr-Pennington protected conduct: educating, petitioning, and engaging with governmental actors. The text of the press release refutes PharmacyChecker's argument that these actions are not protected.[1]

Rather than addressing its own allegations about the many forms of protected lobbying activity in which PSM has engaged, PharmacyChecker focuses on the "publicity campaign" it alleges PSM conducted, which allegedly consisted of four articles PSM posted on its website (Items (iv)-(vii)). D.E. 111 at 5. Such allegations "all fall squarely within the Noerr-Pennington doctrine," which immunizes efforts to influence the government, including governmental agencies. D.E. 98 at 9. PharmacyChecker studiously avoids mentioning its allegation that PSM "***has published editorials and other advocacy materials with the purpose of influencing policymakers and members of the public regarding importation issues***." D.E. 82 ¶ 10 (emphasis added). Indeed, PSM's publicity efforts are indistinguishable from those in

---

[1] PharmacyChecker does not discuss PSM's legal authority demonstrating that the Court can consider the exhibits PSM attached to its motion.

*Noerr*, where the Supreme Court found that a publicity campaign waged by the railroads was immune from antitrust liability because the railroads were thereby attempting to influence government action against truckers. *Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127, 145 (1961). The publicity campaign was protected even though it "was intended to and did in fact injure the truckers in their relationships with the public and with their customers[.]" *Id.* at 143. [2] Here, any alleged harm to PharmacyChecker resulting from PSM's protected lobbying activities is an incidental effect of PSM's campaign to influence the government to enforce the drug importation laws.

Given its concession that the purpose of PSM's publicity campaign is to influence the government, PharmacyChecker resorts to the argument, without citation to governing law, that whether conduct is protected by Noerr-Pennington is "a question of fact ill-suited for resolution at the motion to dismiss stage." Opp. at 1, 6.[3] PharmacyChecker misreads into the caselaw a requirement that an action proceed through costly, and unnecessary, antitrust discovery. Courts in this Circuit have do not accept PharmacyChecker's argument. *See, e.g., Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F. Supp. 2d 578, 597 (W.D.N.Y. 2000) ("[T]he Court has determined that the complaint must be dismissed pursuant to the Noerr Pennington doctrine[.]"); *Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803, 818 (S.D.N.Y. 1979) ("Yet the complaint was dismissed by the Court in *Noerr*, as it should be dismissed here.

---

[2] PharmacyChecker's reliance on *Allied Tube*, 486 U.S. 492 (1988), is factually inapposite. Unlike here, in *Allied Tube*, defendants were petitioning a "private, voluntary organization" whose *members* had "economic incentives to restrain competition[.]" *Id.* at 495, 500. As PharmacyChecker itself points out, the government, the entity PSM is petitioning in this case, "acts in the public interest." *Id.* at 501 (internal quotation omitted).

[3] PharmacyChecker cites a single district court case, from a different Circuit, over 25 years ago, that is not reflective of the approach courts in this Circuit have taken.

Virtually all the conduct alleged against defendants falls squarely under *Noerr*'s conclusion that the First Amendment protects 'attempts to influence the passage or enforcement of laws,' no matter how harmful their incidental impact on third parties may be.") (quoting *Noerr*, 365 U.S. at 135). In *Music Center S.N.C. Di Luciano Pisoni & C. v. Prestini Musical Instruments Corp.*, the court recognized, in the sham litigation context, that allowing complaints to proceed to discovery based on "broad and indistinct allegations of misrepresentation" could "effectively chill the First Amendment rights which *Noerr* immunity was intended to protect." 874 F. Supp. 543, 549 (E.D.N.Y. 1995).

Due to the expense, rigors, and complexity of antitrust litigation, it is appropriate to dismiss a complaint premised on immune conduct and conduct not otherwise sufficient to establish participation in a conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery…but quite another to forget that proceeding to antitrust discovery can be expensive."). Conduct that this Court determines is protected by the Noerr-Pennington doctrine cannot be used to determine whether PharmacyChecker has met its burden of showing that the suit should proceed against PSM. *See* D.E. 98 at 6 (citing cases).

### B.  PharmacyChecker Cannot Connect PSM to the Alleged Conspiracy.

Even PharmacyChecker concedes that its Amended Complaint contains scant references to any conduct of PSM. D.E. 113 at 25 (PSM mentioned in only 8 paragraphs). None of those references connect PSM to the alleged conspiracy; to the contrary, PSM is not alleged to have participated in any of the meetings where plaintiff claims the alleged conspiracy was discussed. D.E. 82 at ¶¶71-73. As discussed above, Items (i)-(iii) represent conduct that is on its

face immunized by the Noerr-Pennington doctrine.[4] The remaining allegations, PSM's status as an observer in ASOP and PSM's unilaterally published articles, do not represent concerted action. To the contrary, PSM's posting of articles on its website in line with its stated mission is simply evidence of unilateral action. D.E. 98 13-14 (citing cases). [5]

PSM's attendance at ASOP meetings where there is no accompanying allegation that the supposed conspiracy was discussed at those meetings does not suggest that PSM joined any conspiracy. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1097-98 (9th Cir. 1999) (refusing to infer liability by virtue of membership in trade association when plaintiff provided no evidence meetings were used to pursue unlawful ends).

Apart from PSM's involvement with ASOP, PharmacyChecker hopes to connect PSM to the conspiracy at large through its publication of allegedly "false information about drug importation and PharmacyChecker.com," and articles endorsing LegitScript and NABP, "while at the same time falsely vilifying PharmacyChecker.com." D.E. 111 at 8-9. But posting articles on PSM's website that are consistent with its avowed purpose is likewise not suggestive of conspiracy, rather only of uncontroversial unilateral action. D.E. 98 at 13-14 (citing cases). Even the case PharmacyChecker relied upon establishes this. *See In re London Silver Fixing,*

---

[4]  PharmacyChecker's efforts to mischaracterize an ASOP document (referenced in ¶ 70 of the Amended Complaint) should be rejected for the reasons discussed, *supra*, at 2-3.

[5]  For the first time, PharmacyChecker asserts that PSM's status as a 501(c)(6) results in the necessary composition of "persons with economic incentives to restrain trade." D.E. 111 at 6. Neither citation provided by PharmacyChecker support this conclusion, with *Allied Tube* not even mentioning 501(c)(6) business organizations. Such "labels and conclusions" should be disregarded by this court. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.") (internal quotation omitted). Moreover, there is no allegation that any member of PSM took any actions to "blacklist" PharmacyChecker or otherwise engaged in the alleged conspiracy. At its core, this argument proves nothing more than that PSM took unilateral action in accordance with its own interests.

*Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 900 (S.D.N.Y. 2018) (recognizing allegations of bilateral coordinated conduct are not persuasive unless "each bilateral agreement or unilateral action [is] against the defendants' self-interest"). These sparse, and ineffective, allegations are not sufficient to plead the substantial connection to the alleged conspiracy required to state an antitrust claim against PSM.[6]

Also, PharmacyChecker's reliance on allegations concerning PSM's exercise of free speech to assert an antitrust claim is deeply problematic. Courts in this District have long held that when the alleged antitrust violation centers on "conduct which is prima facie protected by the First Amendment" the possible danger of a "chilling effect on the exercise of First Amendment rights requires a greater degree of specificity in the complaint than would otherwise be the case." *Caplan v. American Baby, Inc.*, 582 F. Supp. 869, 871 (S.D.N.Y. 1984). The majority of PharmacyChecker's allegations focus on PSM's speech. Such allegations do not rise to the level necessary to state an antitrust claim against PSM.

### C. PharmacyChecker Should Not be Given Leave to Amend.

In its Opposition, PharmacyChecker renews its request for leave to amend. But PharmacyChecker has already been given multiple complaints and briefing opportunities to adequately connect PSM to the alleged conspiracy. PharmacyChecker's silence about what more it would plead to connect PSM to the alleged conspiracy demonstrates the futility of allowing

---

[6] PharmacyChecker, for the first time, asserts in its Opposition Brief that PSM's connections to PhRMA constitute "overlapping ties to the conspiracy." D.E. 111 at 9. At no point in its Amended Complaint does PharmacyChecker allege that PSM is connected to the alleged conspiracy through its connection to PhRMA, an entity not named as a defendant or co-conspirator. Membership in or association with a particular entity is not a basis for antitrust conspirator liability. *See Am. Express Travel Related Servs. Co. v. Visa U.S.A.*, No. 04 Civ. 8967, 2005 U.S. Dist. LEXIS 42852, at *14 (S.D.N.Y. June 23, 2005) ("[E]very action by a trade association is not concerted action by the association's members.") (citing *AD/SAT v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999).

any further amendment.  Further leave should be denied.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (deciding that Rule 15(a)(2) allows a Court to deny motions for leave to amend due to the "repeated failure to cure deficiencies by amendments previously allowed…futility of amendment, etc.").

**III.  CONCLUSION**

For the foregoing reasons, as well as those set forth in PSM's Motion to Dismiss and the Joint Defendants' Motion to Dismiss and Reply Brief in support of that motion, PSM respectfully requests the Court dismiss the Amended Complaint as to PSM with prejudice.

*/s/ Leslie E. John*
Leslie E. John *Pro Hac Vice*
john@ballardspahr.com
Elizabeth P. Weissert *Pro Hac Vice*
weisserte@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215-665-8500

Jay N. Fastow (ID. 1541788)
fastowj@ballardspahr.com
Justin W. Lamson (ID. 770895)
lamsonj@ballardspahr.com
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, New York 10019
Telephone: (212) 223-0200

*Attorneys for Defendant,
Partnership for Safe Medicines, Inc.*