IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

PharmacyChecker.com LLC,      )
                              )
              Plaintiffs      )
        v.                    )
                              )  Case No. 7:19-cv-7577-KMK
National Association of Boards of  )
Pharmacy, *et. al*,           )
                              )
              Defendants.     )
_____

REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS SHERMAN ACT § 1 CLAIM
AND THE NATIONAL ASSOCIATION OF BOARDS OF PHARMACY'S
<u>MOTION TO DISMISS LANHAM ACT CLAIM</u>

# Table of Contents

PRELIMINARY STATEMENT ................................................................................... 1

I.  Plaintiff Bases Its Claim That Personal Importation Is Legal On A Statute That Is Not In Effect.................................................................................................................... 3

II.  Plaintiff Cannot Establish Antitrust Injury ...................................................... 4

   A.  Plaintiff Cannot Allege Injury To Its Business When The Alleged Conduct Prevented Plaintiff From Facilitating Illegal Conduct ........................................ 4

   B.  Plaintiff Has Not Established Harm To Competition In A Relevant Market ..................... 6

III.  Plaintiff's Allegations Are Insufficient To Establish An Inference Of Conspiracy ............. 10

IV.  Plaintiff Fails To Plead Basic Elements Of Relevant Product And Geographic Markets ..... 13

V.  The Rule Of Reason Is The Appropriate Standard To Apply To Plaintiff's Claim ............. 14

VI.  Plaintiff Fails To Plead Essential Elements Of A Lanham Act Claim ................................. 17

   A.  Plaintiff Cannot Plead That NABP's NRL Statements Are Literally Or Impliedly False  17

   B.  NABP's NRL Statements Do Not Constitute Commercial Speech ................................... 19

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson News, LLC v. American Media, Inc.*,
680 F.3d 162 (2d Cir. 2012)............................................................................11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................11

*Attia v. Dollar Fin. Corp.*,
No. 05-civ-7133, 2007 WL 1746806 (S.D.N.Y. Jun. 15, 2007)................................8

*Baiqiao Tang v. Wengui Guo*,
2019 WL 6169940 (S.D.N.Y. 2019)..................................................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................10, 11, 12

*Blue Shield of Virginia v. McCready*,
457 U.S. 465 (1982)......................................................................................9

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011).............................................................................13

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
996 F.2d 537 (2d Cir. 1993).............................................................................8

*Chamilla, LLC v. Pandora Jewelry, LLC*,
Case No. 04-CV-6017 (KMK), 2007 WL 2781246 (Sept. 24, 2007)......................17

*Concord Assocs., L.P. v. Entm't Properties Tr.*,
817 F.3d 46 (2d Cir. 2016)..............................................................................13

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
363 F.3d 761 (8th Cir. 2004) ...........................................................................16

*eMove Inc. v. SMD Software Inc.*,
No. CV-10-02052-PHX-JRG, 2012 WL 1379063 (D. Ariz. Apr. 20, 2012)..............19

*Enigma Software Group USA, LLC v. Bleeping Computer LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016)................................................................20

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)......................................................................................9

ii

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. Of Physics*,
    859 F. Supp. 1521 (S.D.N.Y. 1994)..............................................................................20

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
    No. 2:18-cv-00923-SVW-RAO, 2018 WL 6118440 (C.D. Cal. July 18, 2018) ....................19

*In re Aluminum Warehouse Antitrust Litig.*,
    833 F.3d 151 (2d Cir. 2016)..........................................................................................9

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 13-MD-2481 KBF, 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014), *aff'd*, 833 F.3d 151
    (2d Cir. 2016)..............................................................................................................12

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999).................................................................................10, 12

*In re Canadian Import Antitrust Litig.*,
    470 F.3d 785 (8th Cir. 2006) ...........................................................................1, 6, 9

*In re Elevator Antitrust Litig.*,
    No. 04–CV–1178 (TPG), 2006 WL 1470994 (S.D.N.Y. May 30, 2006), *aff'd*, 502 F.3d 47
    (2d Cir. 2007)..............................................................................................................10

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
    332 F. Supp. 3d 885 (S.D.N.Y. 2018)...................................................................10, 13

*Maltz v. Sax*,
    134 F.2d 2 (7th Cir. 1943) .............................................................................................5

*Mathias v. Daily News, L.P.*,
    152 F. Supp. 2d 465 (S.D.N.Y. 2001)..........................................................................14

*Monarch Marketing Sys., Inc. v. Duncan Parking Meter Maint. Co.*,
    No. 82-c-2599, 1988 WL 23830 (N.D. Ill. Mar. 8, 1988) .......................................5

*Moore v. Boating Indus. Assocs.*,
    819 F.2d 693 (7th Cir. 1987) ......................................................................................16

*Nat'l Soc'y of Prof.'l Eng'rs. v. United States*,
    435 U.S. 679 (1978).....................................................................................................15

*NW Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985)...............................................................................................15, 16

*Pearl Music Co., Inc. v. Recording Industry Ass'n of America, Inc.*,
    460 F. Supp. 1060 (C.D. Cal. 1978) ..............................................................................6

*R & A Synergy LLC v. Spanx, Inc.*,
No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019) .......................19

*Re-Alco Indus., Inc. v. Nat'l Ctr. For Health Educ., Inc.*,
812 F. Supp. 387 (S.D.N.Y. 1993) ...............................................................................13, 14

*Reinschmidt v. Exigence LLC (Del)*,
2019 WL 911056 (W.D.N.Y. Feb. 25, 2019) .........................................................................7

*Rossi v. Standard Roofing, Inc.*,
156 F.3d 452 (3d Cir. 1998).................................................................................................10

*Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Comms., Inc.*,
376 F.3d 1065 (11th Cir. 2004) .............................................................................................8

*Tampa Elec. Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961).............................................................................................................14

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
142 F.3d 90 (2d Cir. 1998)....................................................................................................9

*Wellnx Life Scis. Inc. v. Iovate Health Scis. Res. Inc.*,
516 F. Supp. 2d 270 (S.D.N.Y. 2007).....................................................................................9

**STATUTES**

21 U.S.C. § 384.................................................................................................................................3

21 U.S.C. § 384(j).............................................................................................................................3

21 U.S.C. § 384(l).............................................................................................................................3

SHERMAN ACT, 15 U.S.C. § 1 .....................................................................................................20

**OTHER AUTHORITIES**

Dep't of Health and Human Svcs., Food and Drug Admin., Importation of Prescription Drugs,
Proposed Rule, 84 Fed. Reg. 70796, 70800 (Dec. 23, 2019)......................................................4

# PRELIMINARY STATEMENT

Plaintiff's Opposition only serves to further demonstrate that Plaintiff has not and cannot plead a cognizable claim against any of the Defendants, and that the Complaint must be dismissed. Ignoring the relevant case law, Plaintiff's Opposition does nothing to remedy the fatal defects in the Complaint. First and foremost, Plaintiff fails to acknowledge that personal importation of pharmaceuticals—which lies at the heart of Plaintiff's claims and business—is unlawful. Plaintiff's citation to non-applicable "exceptions" and a statute that is *not in effect* cannot change this. Given the illegality of personal importation, and Plaintiff's concessions that the "primary reason" it provides its "information" is to "facilitate" unlawful importation, Plaintiff cannot establish antitrust injury. "[A]llegedly anticompetitive behavior [that] discourage[s] only unlawful importation of drugs and not lawful activity the Sherman Act was designed to protect" is not "an injury of the type that the antitrust laws were designed to remedy." *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 788, 791 (8th Cir. 2006).

Plaintiff's Opposition also does little to advance its conclusory allegations of a decade-long conspiracy that came to fruition in 2018 when NABP added Plaintiff to its "Not Recommended List" ("NRL"). Allegations of conspiracy must be plausible to survive a motion to dismiss. At the center of Plaintiff's claim are allegations that Defendants *compelled* Google, Microsoft, PayPal, and UPS to exclude Plaintiff from the "relevant markets." Yet the only lever Defendants had to *compel* these multinational "gatekeepers" was Defendant CSIP's membership rules. Plaintiff's implausible theory is, unsurprisingly, unsupported by *factual* allegations.

Plaintiff further fails to explain why it is exempt from the basic requirement in all Sherman Act cases to plead relevant geographic and product markets with *facts* relating to economic principles: product interchangeability, demand cross-elasticity, and barriers to entry. Plaintiff cites

no case supporting its argument that, for example, an antitrust plaintiff can plead a "worldwide" geographic market simply because anyone can access information from "anywhere in the world" through the internet. The law demands more. Plaintiff also asserts for the first time in its Opposition a third relevant market—"the market(s) for prescription medicine." Opp'n at 18–20. But Plaintiff has not alleged this market in the Complaint and cannot do so for the first time now.[1]

Lastly, Plaintiff's claim of a group boycott reviewable under the *per se* standard should also be rejected. Plaintiff ignores the presumption in favor of the rule of reason standard for all but the most egregious cases and fails to demonstrate that it has sufficiently pled any of the elements of a *per se* unlawful group boycott. Plaintiff also fails to address the fact that courts apply the rule of reason, where, as here, the alleged restraint relates to conduct designed to improve public safety. It is evident that Plaintiff has failed to meet the most rudimentary pleading standards for stating a Sherman Act claim against any of the Defendants, and, thus, this claim must be dismissed.

Plaintiff's Opposition also fails to rebut NABP's primary arguments for dismissal of Plaintiff's Lanham Act claim. Plaintiff egregiously misquotes NABP's NRL statements from its own Complaint in an attempt to make the statements sound more actionable. But it is clear from the Complaint and NABP's motion that none of the alleged statements are literally or impliedly false. And Plaintiff points to no customers who were plausibly misled by any NRL statement. Plaintiff's argument that the NRL statements constitute "commercial speech" because the NRL diverts Plaintiff's would-be customers to unidentified "affiliates" is unsupported by law. Plaintiff nowhere alleges that NABP receives economic benefit from such diversions and it cites no case finding commercial speech under the circumstances here. Plaintiff also leaves unaddressed the

---

[1] Even if Plaintiff had pled a third "prescription medicine" market, neither Plaintiff nor any Defendant is a participant in this market and Plaintiff lacks standing to bring antitrust claims based on any alleged injuries in this market.

case law holding that the Lanham Act must give way to First Amendment rights, where, as here, speech is designed to enhance public safety. This claim, too, must be dismissed.

## I. Plaintiff Bases Its Claim That Personal Importation Is Legal On A Statute That Is Not In Effect

Plaintiff's sweeping argument that there are "multiple avenues" for consumers to lawfully import medicine is wrong as a matter of law. Opp'n at 4, 18 ("numerous ways"). Plaintiff bases its claim on 21 U.S.C. § 384, which directed the Secretary of HHS to "exercise discretion to permit individuals to make [] importations in circumstances in which…the importation is clearly for personal use…." Opp'n at 4 (referencing § 384(j)). Plaintiff then claims, incorrectly, that "[t]he FDA has exercised that discretion," thereby permitting personal importation under §384(j). *Id.* As Plaintiff is well aware, 21 U.S.C. § 384(j) *is not in effect*.

As is clear on the face of the statute Plaintiff cites, and as Defendants establish in their opening brief,[2] personal importation under § 384 only becomes effective *if* the HHS Secretary first certifies to Congress "that the implementation of this section will – (A) pose no additional risk to the public's health and safety; and (B) result in a significant reduction in the cost of covered products to the American consumer." 21 U.S.C. § 384(l); Defs.' Br. at 6. The HHS Secretary has never made such a certification. In a December 2019 Notice of Proposed Rulemaking, the Secretary expressly stated that it was "*not proposing to implement the personal importation provisions in Section 804(j)*,[3] and warned that "[m]edications that are purchased online and imported through international mail, express couriers, and other means pose significant challenges for FDA and its ability to adequately safeguard the quality and safety of drugs taken by U.S.

---

[2] The Court should reject Plaintiff's argument that Defendants somehow made "a concession that personal importation is legal in certain circumstances." Opp'n at 3. What Defendants "concede" in their opening brief is only that "[t]he [FFDCA] expressly prohibits importation of drugs, except under limited circumstances defined below and *not applicable here*." Defs.' Br. at 4 (emphasis added).

[3] Section 804(j) of the Federal Food, Drug, and Cosmetics Act is codified at 21 U.S.C. § 384(j).

consumers." Dep't of Health and Human Svcs., Food and Drug Admin., Importation of Prescription Drugs, Proposed Rule, 84 Fed. Reg. 70796, 70800 (Dec. 23, 2019) (emphasis added).

## II.    Plaintiff Cannot Establish Antitrust Injury

### A.    Plaintiff Cannot Allege Injury To Its Business When The Alleged Conduct Prevented Plaintiff From Facilitating Illegal Conduct

Plaintiff's argument that it does not facilitate unlawful drug importation is demonstrably false. Opp'n at 3 n. 2. Its counsel, signatory to both complaints, Dkt. #1, 82, represented to the Court that the "primary reason" Plaintiff provides information to consumers is to "facilitate" their unlawful purchase and importation of foreign drugs, and conceded that Plaintiff's conduct "may be bad policy." Defs.' Br. at 9–10 (citing PI transcript). Even if the Court ignores Plaintiff's admissions, Plaintiff's Complaint and Opposition amply show that the core of Plaintiff's business is to facilitate unlawful importation.[4] Given that Plaintiff's business predominantly facilitates unlawful conduct, Plaintiff cannot claim that Defendants' alleged conduct that stifles this facilitation is an injury the antitrust laws address. Defs.' Br. at 16–19.

Plaintiff's attempt to distinguish or recharacterize the *Canadian Import* and *Maltz* cases misses the mark. Opp'n at 9–12. Plaintiff's claim that *Canadian Import* "would only apply where a plaintiff's exclusion from the market was caused by a regulatory barrier rather than by the defendants' conduct" is of no consequence. Opp'n at 9. First, Defendants have clearly argued that the law prohibiting personal drug importation (e.g., the FFDCA) dictates that Plaintiff's alleged

---

[4] *See, e.g.*, Compl. ¶ 108 ("PharmacyChecker.com's exclusion from the market means. . . more restricted options *for alternative sources* of lower-priced prescription drugs both U.S.-based and abroad."); *id.* ¶ 5 (Plaintiff "allows consumers worldwide to find the lowest prices for their prescription medications, whether dispensed in the United States or abroad."); *id.* ¶ 21 ("international online pharmacies make lower-price prescription drugs more accessible to patients worldwide – and particularly to U.S. patients."); *id.* ¶ 134 (referring to online pharmacies doing business with Plaintiff as "PharmacyChecker.com's" "affiliates"); Opp'n at 2 ("*First*, [PharmacyChecker] helps consumers make their own purchasing decisions by providing information about the safety and prices of medicine purchased through pharmacy websites worldwide."); *id.* at 20–21 ("PharmacyChecker.com's business *facilitated* increased competition in the market(s) for prescription medicines (including in the United States).") (emphasis added).

suppressed ability to facilitate importation is not the type of injury the antitrust laws were designed to address. Defs.' Br. at 3–8 (illegality of personal importation); 16–17 (discussing *Canadian Import*). And notwithstanding Plaintiff's characterization of *Canadian Import* as merely the "Eight Circuit's sweeping, generalized statements about U.S. drug import law," the case unambiguously stands for the proposition that, where there is a regulatory barrier and defendants advocate for compliance with that barrier, plaintiff's alleged harms flow from the regulatory barrier, not defendants' conduct. Defs.' Br. at 16–19 (discussing *Canadian Import* and other authority).

Similarly, Plaintiff argues that *Maltz* should be restricted to cases where a "plaintiff's sole business was entirely illegal." Opp'n at 11 (citing *Monarch Marketing Sys., Inc. v. Duncan Parking Meter Maint. Co.*, No. 82-c-2599, 1988 WL 23830, at *1 (N.D. Ill. Mar. 8, 1988)).[5] This misreads the case. Zero percent of the plaintiff's business in *Maltz* was illegal. In *Maltz*, the plaintiff, a manufacturer of gambling punchboards at a time when gambling was unlawful, alleged defendants conspired to suppress plaintiff's punchboard business. *Maltz v. Sax*, 134 F.2d 2, 3 (7th Cir. 1943). The *Maltz* court held that "neither the manufacture of gambling devices, nor their sale," were "prohibited by Federal Statute." *Id.* at 4. Nevertheless, the plaintiff could not recover against defendants because "[p]laintiff's business was the making and selling of goods which could only be used by purchasers in furtherance of the [illegal] business of gambling. Plaintiff has no legal rights in [the] business…. Therefore defendants could not invade them." *Id.* at 5. Plaintiff's argument that *Maltz* does not apply because "none of [PharmacyChecker's] business is illegal" simply misses the point—*none* of the plaintiff's business in *Maltz* was illegal, but the court

---

[5] Plaintiff is wrong that "[s]ubsequent cases within the Seventh Circuit have acknowledged that *Maltz* itself was strictly limited to situations where the plaintiff's sole business was ***entirely illegal***." Opp'n at 11 (citing only *Monarch Marketing Sys., Inc. v. Duncan Parking Meter Maint. Co.*, No. 82 C 2599, 1988 WL 23830, at *1 (N.D. Ill. Mar. 8, 1988) (emphasis in original). *Monarch* never cites or references *Maltz*, the case had nothing to do with the legality of any business, and, as a district court case, it does not displace the Circuit Court's holding in *Maltz*.

dismissed its antitrust claim because it facilitated unlawful gambling. Opp'n at 12. The court's

holding in *Maltz* is not an anomaly and Plaintiff does not engage with other authority Defendants

presented in the opening brief. *See* Defs.' Br. at 18–19 (citing, e.g., *Pearl Music Co., Inc. v.

Recording Industry Ass'n of America, Inc.,* 460 F. Supp. 1060, 1068 (C.D. Cal. 1978) (even when

plaintiff alleged that some of its business was lawful, "[t]he almost total magnitude of this illegal

conduct by plaintiffs ma[de] their miniscule conduct that may be legal, insignificant. . . .")).[6]

**B.  Plaintiff Has Not Established Harm To Competition In A Relevant Market**

Plaintiff's Opposition does not address Defendants' primary argument that Plaintiff cannot

plead injury to competition as a matter of law given that: (1) Plaintiff's "primary" business is to

"facilitate" unlawful importation of pharmaceuticals, Defs.' Br. at 10 (citing PI Tr. at 65:24–66:3);

(2) personal importation of pharmaceuticals in the United States is unambiguously illegal in all

instances relevant here; and thus (3) the law and regulatory barriers, not Defendants' alleged

conduct, precluded consumers' ability to obtain lower drug prices from foreign online pharmacies

that Plaintiff has characterized as "safe" enough from which to purchase. *Id.* at 19–21. While

Plaintiff argues that Defendants mistakenly rely on *Canadian Import* to prove Plaintiff can plead

no injury to *itself*, Plaintiff does not respond to Defendants' argument that *Canadian Import*

squarely rejects Plaintiff's ability to establish harm to *competition* in the pled relevant markets.

*Canadian Import* is directly on point: it found no injury to *competition* where the law and

regulatory barriers caused consumers to pay higher drug prices, not the defendants' alleged

---

[6] In a bid to establish injury to itself and to competition, Plaintiff attempts to artificially bifurcate its website services into accreditation of foreign pharmacies "for consumers outside the United States" and accreditation of U.S. pharmacies "for U.S. consumers." Opp'n at 12. Plaintiff's attempt to cast Defendants' alleged conduct as stifling the domestic aspects of its business is disingenuous. As the court in *Pearl* found, just because Plaintiff engages in *some* lawful business, given the unlawful aspects of Plaintiff's business here, the "some" is not sufficient to establish antitrust injury. The argument is also inconsistent with Plaintiff's protestation that an accreditation site that only allowed consumers to access sites in their own jurisdiction would be "of little utility for many consumers." Compl. ¶ 39. Finally, Plaintiff fails to allege that "domestic" consumers were forced to pay more for pharmaceuticals or accreditation services as a result of the alleged conduct and, thus, has not and cannot plead any actual injury.

"blacklisting" of drug importers. This is precisely Plaintiff's theory of consumer injury here and it has already been rejected as a matter of law.

Plaintiff asserts for the first time in its Opposition that, in addition to "end-consumers" who purchase drugs with the assistance of Plaintiff's site, "[o]thers" also use Plaintiff's services to do "research," "advocate policy" changes, and that pharmacy websites use Plaintiff's information to "audit and refine their practices" and "consume the marketplace information PharmacyChecker.com provides to compete more effectively." Opp'n at 17–18 (citing Compl. ¶¶ 31, 83, 113). Plaintiff pleads none of these allegations in the Complaint and it cannot supply additional factual allegations through its Opposition.[7] *See Reinschmidt v. Exigence LLC (Del)*, 2019 WL 911056, at *8 (W.D.N.Y. Feb. 25, 2019) (refusing to consider factual allegation made in opposition to motion to dismiss that was not in complaint). Even if the Complaint included these allegations, Plaintiff would still not meet *Twombly*'s requirements. Plaintiff does not demonstrate that the alleged conduct had an effect on any consumer's ability to conduct "research" or "policy" advocacy. Nor does Plaintiff allege facts establishing that researchers could not get information elsewhere or even from Plaintiff's website directly. A list of reasons why a consumer, theoretically, might use Plaintiff's sites is not a demonstration of *market-wide* harm.

The Court should also reject Plaintiff's argument that it has shown harm to competition because the alleged restraints "made accurate and truthful information about comparisons of pharmacies more difficult and costly to obtain," "reduced output," and "led to fewer and lower quality choices for consumers in the market" for at least two reasons. Opp'n at 17 (citing Compl.

---

[7] Plaintiff has also not pled a market for generalized "information" for "researchers" or "policy advocates," and has previously disavowed the value of such "information service" other than for unlawful importation. Defs.' Br. at 10 (quoting PI Tr. at 86:15–18 (Court: "And indeed, when I asked counsel…*what would be the purpose of providing the information other than to allow people to do something that's illegal, the answer is, there isn't.*") (emphasis added)).

¶¶ 107a–b, 107f–g). First, Plaintiff pleads no facts supporting these boilerplate allegations. Plaintiff's consumer injury allegations here, essential to its antitrust claim, are confined to a few paragraphs of pure *ipse dixit*. There are, for example, no *factual* allegations substantiating that—*on a market-wide basis*—"output" was reduced. Injury to Plaintiff and injury to the market are separate and independent elements of every antitrust claim. Plaintiff asks the Court to accept the proposition that any alleged reduction in *Plaintiff's* visibility necessarily harms the *markets* for pharmacy verification and price comparison. Plaintiff cannot merely point to its own alleged reduced search visibility and declare, *ipso facto*, that "output" in the entire market was depressed.[8] *See Attia v. Dollar Fin. Corp.*, No. 05-civ-7133, 2007 WL 1746806, at *1 (S.D.N.Y. Jun. 15, 2007) (dismissing complaint where "the only specific injuries alleged in the Complaint are injuries to Plaintiffs" and not crediting barebones allegations of "harm to competition"). Second, Plaintiff's "harms" flow from the suppression of information that Plaintiff provides to facilitate unlawful purchase of foreign drugs. *See, e.g.*, Opp'n at 18; Compl. ¶ 107a–b; 107g. For the reasons already presented, reduced search engine visibility of information that enables consumers to break the law is not a harm cognizable under the antitrust laws. *Supra* § II.A; Defs.' Br. at 19–21.

Plaintiff next claims it provides "not one, but two examples in which [Defendant's] actions harmed competition by coercing U.S. pharmacies not to do business with PharmacyChecker.com." Opp'n at 19 (citing Compl. ¶¶ 82–83, 113). There is just one pharmacy that allegedly declined to do business with Plaintiff, HealthWarehouse.com—though it is mentioned twice. Compl. ¶¶ 82–83, 113. Again, Plaintiff erroneously equates an alleged injury to itself with market-wide injury to

---

[8] A competitor-plaintiff must still show "harm to the whole market," not merely to "individual competitors." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993); *see also Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Comms., Inc.*, 376 F.3d 1065, 1072 (11th Cir. 2004) (dismissing for failure to allege harm to competition, rejecting argument that because plaintiff is defendant's "primary competitor," "any damage it suffers inherently damages competition in that market"); *id.* ("[D]amage to a single competitor, even as a result of deliberate misinformation, does not state a claim under Section One of the Sherman Act.").

consumers. *See supra* n. 6. Plaintiff's loss of a single customer is not a showing of harm to the market as a whole. *See Wellnx Life Scis. Inc. v. Iovate Health Scis. Res. Inc.*, 516 F. Supp. 2d 270, 293 (S.D.N.Y. 2007) (dismissing complaint because partial exclusion of one competitor is not harm to "competition as a whole"); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 96–97 (2d Cir. 1998) (exclusion of one competitor is not "adverse effect on competition as a whole").

Finally, the Court should reject Plaintiff's claimed harm to competition in the "related market(s) for prescription medication." Opp'n at 18–20.[9] To the extent Plaintiff is now arguing that the relevant markets include "prescription medication," Plaintiff has made no attempt to define the market(s), offered no showing that Defendants have market power in the market(s), and has not attempted to argue increased price or decreased quality for consumers seeking to lawfully purchase prescription drugs in their own market. Indeed, Plaintiff cannot even tell the Court whether the market for prescription drugs is a single market or multiple "markets." *See* Opp'n at 18, 20 (describing "markets for prescription medication" and the "market(s) for prescription medication"). To the extent Plaintiff argues consumers in the market(s) are harmed because it is more difficult to purchase medication from abroad, and thus drug prices increased, *Canadian Import* rejected that same argument.[10] 470 F.3d at 791–92, Defs.' Br. at 19–21.

---

[9] Plaintiff also lacks standing to bring antitrust claims based on any injuries in this market because it has not *shown* that its purported injury was "inextricably intertwined" with *any* unlawful "objective" that Defendants sought to achieve in these "market(s)." *In re Aluminum Warehouse Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016); *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 479 (1982) (requiring, under an inextricably intertwined theory, that plaintiff be used as a fulcrum by which defendant "sought to achieve its illegal ends").

[10] Plaintiff mischaracterizes the FTAIA and the reach of U.S. antitrust law. It is irrelevant that "PharmacyChecker.com serves consumers worldwide, so U.S. drug importation law does not apply to many of its customers." Opp'n at 4. The U.S. antitrust laws are concerned with *domestic* injury. If Plaintiff is claiming injury on behalf of foreigners – though Plaintiff has pled no facts alleging foreign injury – principles of comity inform that "Congress sought to *release* domestic (and foreign) anticompetitive conduct from Sherman Act constraints when that conduct causes foreign harm." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 166 (2004) (emphasis in original). Any claim for alleged injury to consumers outside the U.S. in this case is barred by the FTAIA. *Id.* at 175 (independently caused foreign injury, i.e., as here, instances where "the conduct's domestic effects did not help to bring about that foreign injury" are outside the reach of the Sherman Act).

## III.    **Plaintiff's Allegations Are Insufficient To Establish An Inference Of Conspiracy**

Plaintiff inaccurately claims that it pleads direct evidence of the alleged conspiracy and that Defendants "concede[d]" this point. Opp'n at 26. Defendants did no such thing. And nowhere does Plaintiff meet the bar for what constitutes direct evidence of an alleged conspiracy. "Direct evidence" in an antitrust conspiracy "must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999). It is the proverbial "smoking-gun." *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465 (3d Cir. 1998); *see also In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 896, 901 (S.D.N.Y. 2018) (direct evidence includes, for example, chat messages or "recorded phone call or email in which competitors agreed to fix prices."). While Plaintiff repeats that its claim is supported by direct evidence, it nowhere points to any such "explicit" "smoking gun" evidence establishing that Defendants had a conscious commitment to conspire.

Contrary to Plaintiff's assertion, Opp'n at 26, courts routinely hold that allegations of a meeting between competitors *does not*, absent more, constitute direct evidence of an unlawful conspiracy. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 n. 12 (2007) (rejecting inference of conspiracy based on participation in industry trade association); *In re Elevator Antitrust Litig.*, No. 04–CV–1178 (TPG), 2006 WL 1470994, at *11 (S.D.N.Y. May 30, 2006) ("allegation that elevator company executives attend trade, industry, or social functions together is clearly insufficient to state a claim"), *aff'd*, 502 F.3d 47 (2d Cir. 2007).

Instead, Plaintiff's allegation rests entirely on circumstantial evidence and asks the Court to make inference upon inference based on conclusory statements that do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556; Opp'n at 22–25. As explained in Defendants' opening brief, Plaintiff alleges only "unilateral conduct, lawful coordination, and parallel action in line with Defendants' independent interests."

Defs.' Br. at 21. None of this conduct establishes a prima facie case demonstrating that each Defendant had the required conscious commitment to a common scheme. *See Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012).

Plaintiff misunderstands the requirements for pleading a conspiracy through circumstantial evidence. First, Plaintiff ignores that an alleged agreement must be "at least 'plausible'" at the pleading stage: "To present a plausible claim, the 'pleading must contain something more ... than ... a statement of facts that merely creates a *suspicion* [of] a legally cognizable right of action.'" *Anderson News*, 680 F.3d at 182 (quoting *Twombly*, 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief" requires that the Court "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff never squarely addresses Defendants' argument under *Twombly* that, for its conspiracy theory to be even possible, let alone *plausible*, Defendants—all relatively small entities—would have needed the power to compel the likes of Google, Microsoft/Bing, UPS, credit card processors, and other large corporations to agree to stifle Plaintiff's business. Plaintiff points to a single piece of "evidence" to support its claim that Defendants had the power to force all these "internet gatekeepers" to join the alleged "boycott": CSIP's voluntary Principles of Participation. Opp'n at 28 n.10; Compl. ¶ 93. Such an allegation is patently implausible and Plaintiff fails to plead sufficient *facts* establishing that these companies agreed to conspire for *any* reason. Plaintiff simply makes a circular, conclusory, and factually unsubstantiated argument that "the allegations regarding these internet companies' agreements are plausible because they are, in fact, participating." Opp'n at 28 n. 10. This defies "common sense" and should not be held sufficient to open the gates to the particularly costly discovery of antitrust cases. *See Twombly*, 550 U.S. at 558 ("a district court must retain the power to insist upon some specificity in pleading before allowing

a potentially massive factual controversy to proceed") (internal quotation omitted).

Second, any alleged parallel conduct *must* (not "may" as Plaintiff presents) be accompanied by plus factors. *See Baby Food*, 166 F.3d at 122 (Plus factors are "necessary conditions for the conspiracy inference."); Opp'n at 27. Evidence of parallel business behavior, without more, "falls short of conclusively establish[ing] agreement or . . . itself constitut[ing] a Sherman Act offense." *Twombly*, 550 U.S. at 553 (internal quotation omitted). This is because parallel conduct is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554.

The only "parallel" behavior Plaintiff alleges is that Defendants published purportedly similar language (albeit at different times in 2015, 2017, and 2018) *three to five years after* some (not all) Defendants attended two bilateral meetings (in 2011 and 2012). Defs.' Br. at 25–26. Plaintiff points to nothing in its Opposition to bridge the extensive time and inferential gap between the two meetings and the "similar" publications—it does nothing to connect the two in any fashion that would support a plausible inference of a conspiracy. Opp'n at 22–25. *See also Anderson News*, 680 F.3d at 187–89 (comparing *Twombly* and *Anderson* complaints: unlike *Twombly*, *Anderson* detailed specifics of multiple communications between and meetings among competitors and challenging defendants' parallel conduct all of which occurred within a three-week time frame).

Plaintiff does allege that certain Defendants talked at two bilateral meetings, and even alleges that certain Defendants talked about PharmacyChecker.com when discussing unlawful online pharmacy practices. Compl. ¶¶ 71–73. But Plaintiff cannot plausibly allege *facts* that any of those discussions resulted in two or more Defendants reaching an agreement to violate the antitrust laws. Plaintiff's argument, which begins and ends with opportunity to conspire, falls short. *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4277510, at

*40 (S.D.N.Y. Aug. 29, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016) (dismissing conspiracy claims, holding that "[c]ommittee membership . . . is, standing alone, not enough… [because] '[t]he mere opportunity to conspire does not by itself support the inference that ... an illegal combination actually occurred.'" (quoting *Capital Imaging Assocs.*, 996 F.2d at 545)).

The only in-Circuit case Plaintiff cites for its legally unsupported proposition that bilateral meetings suffice to establish conspiracy in fact clarifies that "bilateral meetings *can* be persuasive" *only* where, unlike here, the challenged conduct "would be against the defendants' self-interest." *In re London Silver Fixing*, 332 F. Supp. 3d at 900 (emphasis added). Defendants' challenged conduct is entirely in line with who Defendants are and what they do: they independently promote safe, legal online pharmacies in one way or another. Defs.' Br. at 25–26. Given this shared public health goal, which Plaintiff acknowledges, Opp'n at 28, it is in each Defendant's independent interest to participate in lawful industry initiatives to foster pharmaceutical safety.[11] Plaintiff's allegations do not meet the pleading requirements for a *plausible* conspiracy.

## IV. Plaintiff Fails To Plead Basic Elements Of Relevant Product And Geographic Markets

Plaintiff's argument that the Court should not dismiss the Sherman Act claim because market definition is "deeply fact-intensive" is a red herring. Courts routinely dismiss antitrust claims under Rule 12 where, as here, a plaintiff fails to plead even basic facts relating to product interchangeability, demand cross-elasticity, or barriers to entry.[12]

---

[11] Plaintiff conveniently relies on the same Defendants' "similar interests and goals" to argue that this "confirms a common motive to conspire." Opp'n at 28. What Plaintiff fails to acknowledge is that courts readily recognize that the motive and acts against self-interest plus factors could reflect nothing more than lawful parallel action. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 227 (3d Cir. 2011) (motive and acts against economic self-interest "may simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism.") (internal citation omitted).

[12] *See, e.g.*, *Concord Assocs., L.P. v. Entm't Properties Tr.*, 817 F.3d 46, 53 (2d Cir. 2016) (affirming dismissal without leave to amend because plaintiffs' proposed geographic market was "inherently implausible" and "there is 'no absolute rule' against dismissal where the plaintiff has failed to articulate a *plausible*" market definition) (emphasis added) (internal citation omitted); *Re-Alco Indus., Inc. v. Nat'l Ctr. For Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y.

Plaintiff does not directly address Defendants' geographic market arguments, including the case law upon which Defendants rely. While Plaintiff points to paragraphs in the Complaint purportedly describing its geographic and product market claims "in detail," Opp'n at 30 (citing Compl. ¶¶ 31–35, 37–39, 61, 106–107), these utterly conclusory paragraphs reveal that Plaintiff cannot plead facts, as it must, relating to product interchangeability, demand cross-elasticity, or barriers to entry, *Re-Alco*, 812 F. Supp. at 391, and has not "identif[ied] the precise geographic boundaries of effective competition," *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 481 (S.D.N.Y. 2001), or articulated a "careful selection of the market area in which the seller operates and to which the purchaser can practicably turn for supplies." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). Its claim thus fails.

## V. The Rule Of Reason Is The Appropriate Standard To Apply To Plaintiff's Claim

Plaintiff makes the baffling claim that Defendants have not made "a substantive rule of reason argument" and have thus "waived" such arguments for purposes of this motion. Opp'n at 17, 31. Defendants devote substantial attention to rule of reason arguments in their opening brief, including that the rule of reason applies, that Plaintiff fails to properly define relevant geographic and product markets, and that Plaintiff fails to plead facts establishing harm to competition. *See* Defs.' Br. at 26–29 (geographic and product markets); 29–30 (rule of reason applies; analogizing the case to other cases involving public safety where courts found no restraint of trade).

Plaintiff's Opposition fails to rebut Defendants' argument that the rule of reason is the appropriate standard here because, among other reasons, the alleged unlawful agreement does not qualify as one "whose nature and necessary effect are *so plainly anticompetitive* that no elaborate

---

1993) ("[i]f a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand . . . a court may [dismiss] it").

study of the industry is needed to establish [its] illegality." *Nat'l Soc'y of Prof.'l Eng'rs. v. United States*, 435 U.S. 679, 692 (1978) (emphasis added). That Defendants may share a common desire to protect consumer health is not, as Plaintiff would have it, a "pretextual motive," but rather an ethical standard designed to protect public safety—the basis for many courts' application of the rule of reason. Defs.' Br. at 29–30 (citing authority).

Plaintiff's retort that the *per se* standard applies because it has alleged a "classic group boycott" is incorrect. Plaintiff cannot plead any of the elements of a "classic" group boycott, i.e., that the allegedly boycotting firms: (1) possess "a dominant position in the relevant market"; (2) "cut off access to a [necessary] supply, facility, or market"; and (3) "the[ir] practices were generally not . . . [plausibly] intended to enhance overall efficiency and make markets more competitive." *NW Wholesale Stationers*, *Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985). The Court also held that for *per se* treatment to apply, defendants' conduct must "imply anticompetitive animus." *Id.* at 296–97. It is the Plaintiff's burden to make "a threshold showing [of] these structural characteristics." *Id.* at 297. Plaintiff makes no such showing here.

First, Plaintiff fails to plead that Defendants "possess[] a dominant position in the relevant market." *NW Wholesale*, 472 U.S. at 294. Plaintiff has not pled economically relevant geographic or product markets. Defs.' Br. at 26–29; *supra* § IV. It cannot therefore establish that Defendants possessed a "dominant position in the relevant market" as a matter of law. *Id*. Plaintiff's claim that Defendants "[t]ogether [] have market power" also fails: it is not pled anywhere in the Complaint and Plaintiff fails to explain in which market or markets Defendants allegedly possess that power. Opp'n at 31.

Second, Plaintiff cannot plead facts establishing that Defendants engaged in any unlawful conduct that "cut off [Plaintiff's] access to a [necessary] supply, facility, or market." *NW.*

*Wholesale*, 472 U.S. at 294. Personal importation of foreign drugs is unlawful. Defs.' Br. at 3–8; *supra* § I. Thus, even if Plaintiff could establish that Defendants eliminated Plaintiff's access to the necessary tools to facilitate unlawful importation (it cannot), this is not the type of injury the antitrust laws were designed to address; it cannot be the basis of a *per se* violation.

Third, Defendants' challenged conduct—in Plaintiff's words: stifling Plaintiff's "facilitation" of foreign drug purchase and importation—hardly "impl[ies] anticompetitive animus." *NW Wholesale*, 472 U.S. at 296–97. Each Defendant's independent efforts to connect consumers to safe, lawful online pharmacies "enhance[s] overall efficiency" and "make[s] markets more competitive." *Id.* at 294; *see also Moore v. Boating Indus. Assocs.*, 819 F.2d 693, 696, 702 (7th Cir. 1987) (applying *NW Wholesale*, finding no group boycott where trade group applied standards set by federal law and stopped certifying products that did not meet federal standards); *id.* at 710–11 ("promot[ing] compliance with [federal law] and the standards under it, admittedly the purpose of defendants . . . is not an activity which is characteristically . . . likely to result in predominantly anticompetitive effects") (internal quotation omitted).

Plaintiff's claim that "defendants do not argue their conduct increased competition" misstates the test. Opp'n at 32. Companies like LegitScript and NABP maintain "directories of accredited pharmacies," Compl. ¶ 32, provide advertising verification and other services to search engines, Compl. ¶¶ 6, 9, and Defendants independently work to "address the problem of online drug sellers/counterfeits" to eliminate "rogue Internet drug outlets." Compl. ¶¶ 7, 70. Thus, some Defendants advance parallel goals of creating an online consumer environment where regulated substances are sold *consistent with regulation*. This "enhances efficiency" and "makes markets more competitive" by helping to ensure that consumers searching the internet for a pharmacy are connected to those from which they can lawfully purchase. *See Craftsmen Limousine, Inc. v. Ford*

*Motor Co.*, 363 F.3d 761, 774 (8th Cir. 2004) (allegedly anticompetitive conduct designed to increase safety is "often [] pro-competitive," and "[w]hen consumer confidence in a market is increased, consumers enter the market or are willing to purchase more").

## VI. Plaintiff Fails To Plead Essential Elements Of A Lanham Act Claim

### A. Plaintiff Cannot Plead That NABP's NRL Statements Are Literally Or Impliedly False

Plaintiff is incorrect in arguing that it does not matter whether NABP's NRL statements are "subjective opinions…[because] '[c]ompanies violate the Lanham Act whenever they offer misleading 'opinions' to promote their financial interests." Opp'n at 35 (citing *Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 2:18-cv-00923-SVW-RAO, 2018 WL 6118440, at *5 (C.D. Cal. July 18, 2018)). Whether a statement is a "subjective opinion" goes to the issue of whether the statement is false or misleading, whereas any "financial interests" of a speaker goes solely to the commercial speech element of a Lanham Act claim. *Chamilla, LLC v. Pandora Jewelry, LLC*, Case No. 04-CV-6017 (KMK), 2007 WL 2781246, at *6 (Sept. 24, 2007); Defs.' Br. at 31 (citing additional authority). It is Plaintiff's burden to plead sufficient facts establishing both falsity *and* commercial speech, *id.*, and thus Plaintiff's conclusory statement that NABP's speech was commercial in nature does not relieve Plaintiff of its obligation to plead falsity.

Plaintiff egregiously mischaracterizes the NRL statements in an attempt to establish falsity:

- "NABP's statements that PharmacyChecker.com was 'acting illegally,' 'violate[s] US law,' is 'unsafe,' *and* 'put[s] you and your family at risk'" are "false and misleading";
- "The complaint alleges numerous false and misleading statements, including [that] PharmacyChecker.com's websites 'are known to be unsafe,' 'put you and your family at risk,' *and* 'are all known to be unsafe'"; and
- "[T]he complaint details objective statements of fact capable of being proved false, such as NABP's statement that PharmacyChecker.com is 'acting illegally' *and* 'violate[s] US law.'"

Opp'n at 33 (stated twice at 1st and 4th paragraphs), 34, 36 (emphasis added). As is evident from the Complaint, the word "and" does not appear as such in *any* NRL statement and each of the

phrases quoted above are removed from their context. *See* Defs.' Br. at Table I (establishing that all statements are disjunctive and qualified). Plaintiff's mischaracterization is no small matter. Context is highly relevant— "disjunctive" and otherwise qualified statements cannot be false as a matter of law. Defs.' Br. at 34 (citing *Border Collie Rescue, Inc., v. Ryan*, 418 F. Supp. 2d 1330, 1347 (M.D. Fla. 2006) ("use of the disjunctive [with at least one true clause] removes the representation from the purview of a literal falsity"). Plaintiff ignores this law.

Plaintiff elsewhere edits NABP's NRL statements so heavily as to make them legally unrecognizable from the allegations in the Complaint; it simply cuts the quote off prior to the qualifying language that undercuts Plaintiff's allegations. For example:

| Plaintiff's Opposition Alleges | Complaint Alleges |
|---|---|
| NABP stated: Plaintiff's sites "'appear to be out of compliance with state and federal laws.'" Opp'n at 34. | NABP stated: NRL sites "are those internet drug outlets that appear to be out of compliance with state and federal laws *or NABP patient safety and pharmacy practice standards.*" (Compl. ¶¶ 119, 120; Defs.' Br. Ex. E–H, Table I) |
| NABP stated: Plaintiff's sites "are 'acting illegally.'" Opp'n 34. | NABP stated: NRL sites are "acting illegally *or do not follow best practices.*" (Compl. ¶ 120; Defs.' Br. Table I) |

Read in context, NRL opinion speech regarding subjective issues like "best practices" and "patient safety" cannot be false or misleading as a matter of law. Defs.' Br. at 32–37, Table I. Table I details all NRL statements in context and why each is not literally or impliedly false.

Plaintiff's Opposition also confirms the absence of facts that consumers were "misled" by the NRL statements. Plaintiff rehashes its allegations of reduced "web traffic" and "click-through revenue" that Plaintiff attributes, without any *factual* support, to NRL statements. Opp'n at 36. But such *ipse dixit* is insufficient to state a claim because they do not allege facts connecting any alleged consumer confusion to NABP's NRL statements. Brief at 35–36 (citing authority).

Plaintiff offers for the first time in its Opposition the purported example of a single customer allegedly declining Plaintiff's services. Plaintiff argues that in March 2018,

HealthWarehouse.com told Plaintiff it would not list its drug prices on Plaintiff's website in light of the NRL statements. Opp'n at 34 (citing Compl. ¶ 83). But NABP did not add Plaintiff to the NRL until, at earliest, "November 2018"—about nine months *after* HealthWarehouse.com elected not to do business with Plaintiff. Compl. ¶¶ 83, 118; 117 (Plaintiff bases its claim on "false and/or misleading…representations on [NABP's NRL] and related webpages and websites, and in representations to others in conjunction with its Not Recommended Sites list, pertaining to PharmacyChecker.com."). Plaintiff's claim is thus belied by the Complaint.[13]

### B. NABP's NRL Statements Do Not Constitute Commercial Speech

Plaintiff's argument that the NRL statements constitute commercial speech because NABP "merely references" matters of "public" concern is inconsistent with the Complaint and legally incorrect. Opp'n at 38–39. To the extent Plaintiff now argues that the NRL is, in fact, advertising under the pretext of public concern, this is implausible and conclusory. The Complaint concedes that "the internet's proliferation of online pharmacies…facilitated bad actors who engage in nefarious or unsafe practices," labels such online pharmacies as "[t]ruly rogue," and admits that the NRL "contains thousands of rogue online pharmacies" and "the vast majority of websites on [the NRL] are rogue online pharmacy sites." Compl. ¶¶ 37, 79, 89. Plaintiff admits that consumers are less safe when "choosing rogue online pharmacies that have yet to be added to the NABP's [NRL because it] increase[s] their chance of obtaining a counterfeit drug." *Id*. ¶ 107(h). Plaintiff

---

[13] Additionally, even if plausible, Plaintiff's citation to a single incident of purported customer confusion is insufficient to establish implied falsity at the Rule 12 stage. Instead, "a plaintiff must allege facts showing...(2) the statement actually deceived or has the tendency to deceive a *substantial segment* of its audience…." *Grasshopper*, 2018 WL 6118440 at *5 (emphasis added); *see also R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *12 (C.D. Cal. May 1, 2019) (dismissing because social media comments on Defendant's accounts were insufficient to show a "substantial segment" of Plaintiff's target audience would be deceived); *eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 1379063, at *11 (D. Ariz. Apr. 20, 2012) (one customer who switched products after receiving fax with allegedly false statements was insufficient to show dissemination).

does not truly dispute that NABP is devoted to advancing public policy issues, it simply disagrees with the content of certain narrow aspects of NABP's speech directed at PharmacyChecker.com.

Plaintiff's conclusory assertion that NRL statements are motivated by NABP's "economic interests" is contrary to its own cited law.[14] Opp'n. at 38. Plaintiff circuitously argues that NABP's statements are economically motivated because: (i) the NRL discourages consumer use of Plaintiff's price comparison services; (ii) which "scares" consumers away from Plaintiff's sites; (iii) to NABP's website; (iv) where NABP "encourages consumers to 'Buy Safely' and 'Purchase medication from legitimate websites online'"; and (v) "provides a link to a list of sites that participate in and are approved by NABP's VIPPS program (i.e., NABP's affiliates)." *Id.* at 37–38 (citing Compl. ¶¶ 123, 124, 134). Plaintiff does not allege any common ownership between NABP and any "affiliate," that any commercial transaction ever actually occurs on any "affiliate's" webpage, or that NABP receives any commissions from such transactions. Plaintiff points to no case holding that a purported financial benefit realized by a third-party "*affiliate*" somehow establishes a sufficient commercial benefit *to NABP*.[15]

## **CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiff's Sherman Act § 1 claim. Defendant NABP respectfully requests that the Court dismiss Plaintiff's Lanham Act claim.

---

[14] Plaintiff cites to *Enigma* and *Baiqiao* but both cases involved defendants posing as neutral, unbiased critics of plaintiffs who were in fact direct competitors of plaintiffs and as a result of their false speech, stood to receive direct financial benefits from commissions and other remuneration. *See Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 294 (S.D.N.Y. 2016) (plaintiff adequately pled economic incentive when it alleged that defendant received commissions on directed sales of plaintiff's competitor's products and "functions as a sales arm of [competitor]"); *Baiqiao Tang v. Wengui Guo*, 2019 WL 6169940, at *3–4 (S.D.N.Y. 2019) (defendant added "DONATE" buttons to encourage viewers to donate to plaintiff's competitor organizations, including his own). These cases bear no resemblance to the facts at issue here.

[15] Nor can Plaintiff point to any such authority: "In this Circuit, to constitute commercial advertising or promotion…a statement must be…(2) made for the purpose of influencing consumers to buy ***defendant's*** goods or services…." *Enigma*, 194 F. Supp. 3d at 293 (emphasis added); *Baiqiao*, 2019 WL 6169940 at *3 (same).

/s/ Erik T. Koons
BAKER BOTTS LLP
ERIK T. KOONS (*pro hac vice*)
STEPHEN WEISSMAN (*pro hac vice*)
JANA I. SEIDL (*pro hac vice*)
TIMOTHY P. SINGER (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email: stephen.weissman@bakerbotts.com
Email: erik.koons@bakerbotts.com

*Attorneys for Defendant National Association of Boards of Pharmacy*

/s/ Rachel J. Adcox
Rachel J. Adcox (*pro hac vice*)
Jeny M. Maier
AXINN, VELTROP & HARKRIDER LLP
950 F Street N.W.
Washington, D.C. 20004
Telephone: (202) 721-5406
Facsimile: (202) 912-4701
radcox@axinn.com
jmaier@axinn.com

Cristina M. Fernandez
AXINN, VELTROP & HARKRIDER LLP
114 W 47th Street, 22nd Floor
New York, NY 10036
Telephone: (212) 261-5668
Facsimile: (212) 728-2201
cfernandez@axinn.com

*Counsel for Defendant Alliance for Safe Online Pharmacies*

/s/ Leslie John
Leslie E. John (*pro hac vice*)
john@ballardspahr.com
Elizabeth P. Weissert (*pro hac vice*)
weisserte@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor

Philadelphia, PA 19103
Phone: 215-665-8500

Jay N. Fastow (ID. 1541788)
fastowj@ballardspahr.com
Justin W. Lamson (ID. 770895)
lamsonj@ballarspahr.com
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, New York 10019
Telephone: (212) 223-0200

*Attorneys for Defendant,*
*Partnership for Safe Medicines, Inc.*

*/s/ Barry Werbin*
HERRICK, FEINSTEIN LLP
Barry Werbin
Nicholas Veliky
2 Park Avenue
New York, N.Y. 10016
212.592.1418
Email: bwerbin@herrick.com

*Attorneys for Defendant Center for Safe Internet*
*Pharmacies, Ltd.*

GORDON REES
SCULLY MANSUKHANI, LLP

/s/ *Ryan Sestack*
Mercedes Colwin, Esq.
Ryan Sestack, Esq.
John T. Mills, Esq.
1 Battery Park Plaza, 28th Floor
New York, NY 10004
(212) 269-5500 (Phone)
(212) 269-5505 (Fax)
mcolwin@grsm.com
rsestack@grsm.com
jtmills@grsm.com

*Attorneys for Defendant LegitScript LLC*