UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHARMACYCHECKER.COM, LLC,

       Plaintiff,

   v.

NATIONAL ASSOCIATION OF BOARDS
OF PHARMACY, *et al.*,

       Defendants.

No. 19-CV-7577 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

  The Parties have submitted competing proposed discovery schedules. (*See* Proposed Case Management and Scheduling Order ("Proposed Order") (Dkt. No. 163).) Defendants propose phased discovery. (*Id*. ¶¶ 8–17.) Phase 1 would take five months, including expert discovery, and focus on whether Plaintiff's enterprise is completely or almost completely geared towards facilitating illegality. (*Id*. ¶¶ 8, 10; *id*. App. B ("Defs.' Letter") (Dkt. No. 163-2); *see also* Op. & Order ("MTD Op.") 26 (Dkt. No. 129) (articulating this requirement for antitrust standing).) At that point, Defendants would have the option to move for summary judgment on the grounds that Plaintiff lacks antitrust standing due to illegality. (Proposed Order ¶ 8.) Phase 2 would follow. (*See id*. ¶¶ 15–17.) It would take 12 months, and include discovery on Plaintiff's remaining claims. (*Id*.) Plaintiff counters with a standard, non-phased discovery schedule. (*Id*. ¶¶ 5–7; *id*. App. A ("Pl.'s Letter") (Dkt. No. 163-1).) Plaintiff proposes eight months for fact discovery, followed by an additional four months for expert discovery. (*Id*.) For the reasons that follow, the Court adopts portions of Phase 1 of the schedule proposed by Defendants.

  "A district court has broad discretion to manage pre-trial discovery," and its decisions are reviewed "only for abuse of discretion." *Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir. 2005).

Discovery may "be conducted in phases or be limited to or focused on particular issues." Fed. R. Civ. P. 26(f)(3)(B). At least one court in this district has limited discovery in an antitrust case to "threshold requirement[s]." *Minnesota Mining & Mfg. Co. v. Graham-Field, Inc.*, No. 96-CV-3839, 1997 WL 166497, at *6 (S.D.N.Y. Apr. 9, 1997) (limiting discovery to the existence of a Sherman Act conspiracy); *cf. Chambers v. Cap. Cities/ABC*, 159 F.R.D. 429, 431 (S.D.N.Y. 1995) (permitting phased discovery in light of the potential for "production of large numbers of persons or documents"). Despite its assertion that "Defendants' phased discovery proposal is . . . legally unsupported," Plaintiff cites no law to the contrary. (*See generally* Pl.'s Letter.) It is a threshold requirement that Plaintiff's enterprise not be completely or almost completely geared towards facilitating illegality. This determines whether Plaintiff has alleged "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." (MTD Op. 23 (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005)).) Absent antitrust injury, the "important federal policy favoring enforcement of the antitrust laws through private litigation" does not apply. (*See* Pl.'s Letter 3.)

       The Court does not pre-judge Defendants' putative motion for summary judgment, which has not been submitted. Indeed, the Court is not aware that any discovery has occurred. However, Defendants' putative motion is not frivolous. Plaintiff's Amended Complaint alleges that Plaintiff is a "maverick" because, unlike its competitors, it "provide[s] . . . information to consumers about safe international pharmacies that sell to consumers in the United States." (Am. Compl. ¶ 33 (Dkt. No. 82).) At the preliminary injunction hearing, Plaintiff admitted that the "primary reason" to provide information to United States consumers about international pharmacies selling into the United States is "to facilitate [the] purchase" of drugs from those pharmacies. (Dkt. No. 96, at 65–66.) And while such imports "'might' be permitted in certain,

2

limited cases," they "are generally prohibited due to U.S. labeling requirements." (MTD Op. 3–4.) While the Amended Complaint described activities that the Court at the motion to dismiss stage presumed to be legal—such as accrediting U.S. online pharmacies and providing price comparisons for U.S. online pharmacies—and made no claims regarding the share of its business related to sales of prescription drugs from foreign pharmacies to U.S. consumers, "[a]t summary judgment, Plaintiff will no longer be sheltered by the vagueness of its [Amended Complaint]." (*Id*. at 26–27.)

If Defendants prevail on their putative motion, it would create substantial efficiencies. First, it would mitigate the "costs of modern federal antitrust litigation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007), by allowing the Parties to avoid the bulk of antitrust discovery. Second, because Plaintiff brings only a Sherman Act claim against the Alliance for Safe Online Pharmacies, Center for Safe Internet Pharmacies Ltd., and Partnership for Safe Medicines, Inc., it would relieve these Parties of at least nearly all of their discovery obligations.

Plaintiff accurately observes that, even if Defendants prevail on their putative motion, the case will not be over, as at least part of its Lanham Act claim against the National Association of Boards of Pharmacy will remain to be litigated. (Pl.'s Letter 3.) Thus, the Court's discovery schedule will inevitably delay Plaintiff from prosecuting its case. To mitigate this delay, the Court will not approve *any* requested extensions to the discovery schedule ordered. And this delay will cause Plaintiff no financial prejudice, as its alleged "damages . . . involve loss of revenue and can be compensated should [P]laintiff prevail at trial." (Dkt. No. 96, at 80.)

Plaintiff argues that phased discovery "will cause substantial waste and duplication of effort, including the need to depose witnesses twice, collect documents twice, and search and review documents twice." (Pl.'s Letter 2.) These inefficiencies are outweighed by the possible

efficiencies to be gained should Defendants prevail on their putative motion for summary judgment. In addition, Defendants represent that they "do not propose to use all of their fifteen depositions in the five-month Phase I period, which would leave them without any additional as-of-right depositions should any part of the case proceed to Phase 2." (Defs.' Letter 3.) Consistent with this representation, any depositions that Defendants take in Phase 1 will count towards any as-of-right allocation that the Court adopts in Phase 2.

The Court declines to adopt certain portions of Defendants' proposed order. Most notably, it declines to adopt a Phase 2 discovery schedule. (*See* Proposed Order ¶¶ 15–17.) Such a schedule is premature at this stage. This issue can be revisited after the conclusion of Phase 1. The Court also declines to order a briefing schedule for Defendants' putative motion for summary judgment and accompanying Daubert motions. (*See id.* ¶ 13.) If Defendants wish to request leave to file such a motion, they may do so by submitting a pre-motion letter consistent with the scheduling order. Finally, while the Parties are welcome to conduct a settlement conference if they wish, the Court declines to order that they do so as proposed by Defendants. (*See id.* ¶ 14.)

SO ORDERED.

DATED:     June 17, 2021
           White Plains, New York

                                              _____
                                              KENNETH M. KARAS
                                              UNITED STATES DISTRICT JUDGE