UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PharmacyChecker.com LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>National Association of Board of Pharmacy, Alliance for Safe Online Pharmacies, Center for Safe Internet Pharmacies Ltd., and Partnership for Safe Medicines, Inc.,<br><br>*Defendants*. | Civil Action No.: 7:19-cv-07577-KMK<br><br>Judge Kenneth M. Karas<br>Magistrate Judge Paul E. Davison<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OBJECTION TO**
**AMENDED PHASE 1 DISCOVERY SCHEDULING ORDER**

Defendants Alliance for Safe Online Pharmacies ("ASOP"), National Association of Boards of Pharmacy ("NABP"), Partnership for Safe Medicine ("PSM"), and Center for Safe Internet Pharmacies ("CSIP") hereby object pursuant to Federal Rule of Civil Procedure 72(a) to one aspect of the Amended Phase 1 Discovery Scheduling Order ("Revised CMO") entered by the Court (Davison, M.J.) on December 14, 2021 (Dkt. No. 197). Defendants respectfully request that the Court restore the original sequencing of expert disclosures set forth in this Court's June 17, 2021 Case Management and Scheduling Order ("Original CMO") for Phase 1 discovery (Dkt. No. 166), such that Plaintiff would be required to come forth with its expert disclosures prior to Defendants' disclosures. To hold otherwise would, as a practical matter, shift the burden of proving the threshold inquiry of antitrust injury from Plaintiff to Defendants, contrary to established case law, as well as this Court's ruling on the motion to dismiss. Op. & Order 26-27 (Dkt. No. 129).

I.      **OVERVIEW AND FACTUAL BACKGROUND**

Per the Court's June 17, 2021 ruling, Phase 1 of discovery in this case is focused on whether the business of Plaintiff PharmacyChecker.com ("Plaintiff") is "completely or almost completely geared towards facilitating illegality," such that Plaintiff cannot satisfy the threshold requirement of antitrust injury necessary to pursue its antitrust claims. The original CMO reflected the fact that Plaintiff is the *only* party bearing the burden of proof on the central issue of Phase 1—whether Plaintiff has standing to pursue its antitrust claims. The Court adopted phased discovery because "[w]hile the Amended Complaint described activities that the Court at the motion to dismiss stage presumed to be legal . . . at summary judgment, Plaintiff will no longer be sheltered by the vagueness of its Amended Complaint." Order 2-3 (Dkt. No. 167) (quoting Op. & Order 26-27 (Dkt. No. 129)) (internal brackets omitted). Nothing has changed since the entry of the CMO that warrants reversing the expert sequencing that *both* parties sought initially and that the Court entered in the CMO. Plaintiff did not object to the customary order of expert disclosures when the parties submitted their positions on phased discovery (*see* Dkt. No. 163). Indeed, Plaintiff's own proposed schedule also required Plaintiff to provide its expert disclosures first. *Id.* at 2.

Moreover, throughout the discovery process, all parties and Magistrate Judge Davison have discussed and understood that a new schedule mirroring the old schedule in all respects would be adopted once Plaintiff met its discovery obligations. Despite this approach, at the most recent conference before Magistrate Judge Davison on December 6, Plaintiff for the first time requested to reverse the order of expert disclosures set forth in the original CMO, which, as is customary, required the Plaintiff who bears the burden to show standing to provide its disclosures first. Magistrate Judge Davison granted this request on December 14, reversing

the order of disclosures to require Defendants to submit their expert disclosures first. Defendants respectfully object to this aspect of the revised CMO.

Not only is the order unsupported by the law, but to uphold the reversal of expert sequencing would prejudice Defendants without reason and reward Plaintiff for its continued failure to produce Phase 1 discovery information. Defendants therefore respectfully request that the original sequencing of expert disclosures be restored.

The Court's Original CMO required Plaintiff to substantially complete its production of documents by August 4, 2021. Now, over four months and seven Court-mediated discovery conferences after this deadline, Plaintiff has finally neared substantial completion, though the sources of 15% of its revenues appear to be unaccounted for in the general ledger files it produced. Specifically, Plaintiff and its third-party accountant have produced financial records showing Plaintiff's revenues for its lines of business, including cost per click amounts paid by online pharmacies for referrals to their websites, fees paid by pharmacies participating its verification and listing programs, and revenues from its discount card program. However, these records appear to be incomplete and do not reconcile with other financial information produced by PCC.

In September 2021, Defendants raised with Plaintiff that many of the entries in these financial records show amounts of monies being deposited without any corresponding customer names. Defendants were unable to match these entries with specific pharmacy customers and accordingly requested that Plaintiff identify the customers for these entries. In total, these entries account for nearly 15% of Plaintiff's revenues. Despite Defendants raising this issue during multiple meet and confers and court-mediated discovery conferences, Plaintiff refused to fill in the entries that are missing customer names. Plaintiff has said that these are

revenues associated with its pharmacy verification and pharmacy listing programs but Plaintiff does not record these payments with any associated pharmacy name in its general ledgers, the very records it provides to its outside accountants and which its accountants use to prepare its tax filings. Instead, Plaintiff has directed Defendants to a different file, which is labeled "Prepared at the request of counsel" and contains the disclaimer that the general ledger is the authoritative record of revenue to fill in some (but not all) of the missing revenue information.

## II.     LEGAL ARGUMENT

### A.     The Revised CMO Erroneously Places the Burden of Proof on Defendants to Show the Illegality of Plaintiff's Enterprise

Pursuant to Federal Rule 72(a), the Court must modify or set aside any part of the Revised CMO that is clearly erroneous or is contrary to law. Here, the Revised CMO's sequencing for expert disclosures is contrary to law because Magistrate Judge Davison has implicitly placed the burden of proof on the issue of the legality of Plaintiff's enterprise on Defendants. Legality, however, is an aspect of antitrust injury and thus part of Plaintiff's case-in-chief, for which Plaintiff bears the burden of proof.

Plaintiff asserts a claim under Section 1 of the Sherman Act. Plaintiff bears the burden to establish, among other elements, "that they themselves have sustained an 'antitrust injury . . . .'" Order at 23, Dkt. No. 129; *Daniel v. American Bd. Of Emergency Medicine*, 428 F.3d 408, 438 (2d Cir. 2005) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). In order to show that Plaintiff has sustained antitrust injury, Plaintiff must prove that its business is not completely or almost completely geared towards illegality. Order at 26-28, Dkt. No. 129. The Court's order granting phased discovery made this clear:

> It is a threshold requirement that Plaintiff's enterprise not be completely or almost completely geared towards facilitating illegality. This determines whether Plaintiff has alleged "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." (MTD Op. 23 (*quoting*

4

> *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 438 (2d Cir. 2005)).) Absent antitrust injury, the "important federal policy favoring enforcement of the antitrust laws through private litigation" does not apply. (See Pl.'s Letter 3.)

Dkt. No. 167 at 2; *see also Realnetworks, Inc. v. DVD Copy Control Ass'n*, 2010 WL 145098, at *20-21 (N.D. Cal. Jan. 8, 2010) ("The court does not here hold that Real is barred from maintaining an antitrust claim because it has engaged in illegal activity; rather, the court holds that [plaintiff] has failed to allege a plausible antitrust injury . . . . [Plaintiff] alleges no viable antitrust injury and therefore does not have standing to bring a private claim under the Sherman Act.").

The Court has held that the "legality" of Plaintiff's enterprise is an issue that is inextricably intertwined with Plaintiff's burden to prove antitrust injury: "where the plaintiff's enterprise is . . . completely or almost completely geared towards facilitating *illegality*, that plaintiff cannot plead *an antitrust injury* . . . ." Order at 26–28, Dkt. No. 129 (emphasis added). In opposing Defendants' motion for phased discovery, Plaintiff conceded that "the sole issue [Defendants] wish to focus on—'the legality of plaintiff's business model'—cannot be separated from discovery on antitrust injury . . . ." Dkt. No. 163-1 at 2. The legality of Plaintiff's enterprise is thus not, as Plaintiff argued in support of its request to reverse expert sequencing, an affirmative defense. Plaintiff therefore bears the burden to establish the legality of its business.

Plaintiff itself cites no case law in support of its argument that the issue of legality of its business is an affirmative defense. Instead, in its letter to the Magistrate, Plaintiff pointed out that "each defendant asserts no fewer than four affirmative defenses stating some variation on the theme that plaintiff's claim is barred because it is engaged in or facilitates unlawful conduct." Dkt. No. 195 at 2. Plaintiff failed to note that Defendants explicitly disclaimed that

5

they were assuming any burden of proof not required by law. PSM, for example, stated in its answer, "PSM alleges and asserts the following defenses in response to the allegation of the Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein." Dkt. No. 150 at 17. Consistent with that statement, PSM called its defenses "Additional and/or Affirmative Defenses." *See Amerio v. Gray*, No. 5:15-CV-538, 2019 WL 5307248 at *2 (N.D.N.Y. Oct. 21, 2019) (citing *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013)) (noting, in a securities fraud case, "that defendants have not asserted a lack of reliance as an affirmative defense does not somehow remove from [the plaintiffs] the burden of proving that element. As plaintiffs, they bear the burden of proving every element of every claim that they assert."); *see also Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1089 (S.D.N.Y. 1995) ("A defense is not affirmative where it merely negates an element of the plaintiff's prima facie case."). As discussed above, under the law, Plaintiff has the burden to prove antitrust injury and accordingly establish the legality of its enterprise.

Contrary to Plaintiff's assertions to Magistrate Judge Davison, upholding the Court's original CMO would not require Plaintiff to "prove a negative." Rather, it needs to offer its position and proof as to the nature and portion of its business that it asserts *is* legal, such it is capable of suffering antitrust injury. To this day, Plaintiff has not yet responded to questions from the Court or Defendants as to what facts could possibly support a finding of antitrust injury. When the Court inquired early on, Plaintiff admitted that the "primary reason" Plaintiff provides information to consumers and links to foreign online pharmacies is to "facilitate" drug importation, which is plainly illegal under federal law.[1] Discovery thus far has only

---

[1] When the Court stated: "I don't understand what the reason is to provide information, including the link, except to facilitate that purchase," Plaintiff responded: "That is likely *the primary reason*, your Honor." Dkt.

confirmed the premise of Phase 1 discovery. The vast majority of Plaintiff's (documented) revenues appear to derive from facilitating the illegal importation of prescription drugs into the U.S. Its documents are replete with admissions as to the illegality of importation under current law. At this point, consistent with the schedule originally contemplated, it is only appropriate that Plaintiff take on its burden of establishing what legal U.S. business it has that entitles it to pursue antitrust claims in federal court.

### B. Governing Law Provides for Plaintiff's Expert Disclosures to Precede Defendants' Disclosures

Courts in this Circuit routinely require parties with the burden of proof to submit their expert reports first.[2] The Advisory Committee Notes to the 1993 Amendments to Rule 26(a)(2) expressly state that "the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." And Defendants' and Plaintiff submitted competing proposed case schedules that *both* provided for the disclosure of Plaintiff's experts prior to Defendants. Proposed Order at 2 (Plaintiff's submission), 4 (Defendants' submission) Dkt. No. 163. Since Plaintiff bears the burden of proof on the legality of its business to establish antitrust injury, Plaintiff must make its expert disclosures first.

---

No. 96 (PI Tr). at 65–66 (emphasis added); *see also id.* at 65 ("[S]ome international pharmacies selling into the United States, that may be illegal, but providing information is not. It may be bad policy."); *id.* at 86 (Court: "And indeed, when I asked counsel…what would be the purpose of providing the information other than to allow people to do something that's illegal, the answer is, there isn't.").

[2] *See, e.g.*, *Ortega v. Target Corp.*, 2021 WL 306884, at *1 (S.D.N.Y. Jan. 29, 2021) ("expert report(s) of the party with the burden of proof shall be due before those of the opposing party's expert(s)"); *Stallings v. Wellife Network, Inc.*, 2020 WL 2096472, at *2 (S.D.N.Y. Apr. 23, 2020) (same); *NL Indus., Inc. v. ACF Indus. LLC*, 2015 WL 4066884, at *8 (W.D.N.Y. July 2, 2015) (disclosure of parties with burdens of proof due before responding parties' disclosure); *Jose Luis Pelaez, Inc. v. Scholastic, Inc.*, 2018 WL 1891116, at *2 (S.D.N.Y. Apr. 3, 2018) (same); *Camarata v. Experian Information Solutions, Inc.*, 2018 WL 1738335, at *2 (S.D.N.Y. Mar. 5, 2018) ("The sequence of expert disclosures, as set forth in the scheduling order in this case (and as set forth in most scheduling orders), follows the allocation of the burden of proof at trial. The plaintiff makes the initial expert disclosures. Thereafter, defendant serves rebuttal expert disclosures."); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *4 (S.D.N.Y. Dec. 18, 2009) (same).

This burden is precisely why Phase 1 discovery is limited to discovery as to Plaintiff. Plaintiff has all the facts most important to Phase 1 discovery in its possession. Since it is Plaintiff's burden to establish the legality of its business and legality depends, in part, on the sources of Plaintiff's revenue, Plaintiff's expert should first opine why all of Plaintiff's revenues, including the 15% that is unaccounted for in its general ledger files, comes from lawful sources. Only once discovery of all those relevant facts is complete can Defendants' experts respond.

It simply makes no sense for Defendants' experts to submit reports before fact discovery, including depositions, has been completed. Such a schedule would in practice have the effect of substantially shortening the time Defendants have to take depositions, because after the expert deadline Defendants' experts will not be able to incorporate any additional facts learned. Flipping the usual and originally adopted order of expert sequencing would reward Plaintiff's intransigence and prejudice Defendants' summary judgment motion on the critical issue of Plaintiff's alleged antitrust injury.

### III.   CONCLUSION

For the foregoing reasons, Defendants request that the Court restore the sequencing of expert reports provided in the original CMO.

Date:  December 27, 2021                             Respectfully submitted,


*/s/ Erik T. Koons*_____                           */s/ Rachel J. Adcox*_____
Erik T. Koons (*pro hac vice*)                         Rachel J. Adcox (*pro hac vice*)
Jana I. Seidl (*pro hac vice*)                         Melanie Kiser (*pro hac vice*)
Timothy P. Singer (*pro hac vice*)                     **AXINN VELTROP & HARKRIDER LLP**
**BAKER BOTTS LLP**                                    1901 L St NW
700 K St. NW                                           Washington, DC 20036
Washington, DC 20001                                   Tel: (202)-912-4700
Tel: (202)-639-7973                                    Fax: (202)-912-4701

| | |
|---|---|
| Fax: (202) - 585-1086<br>erik.koons@bakerbotts.com<br>jana.seidl@bakerbotts.com<br>timothy.singer@bakerbotts.com<br><br>*Counsel for Defendant National Association of Boards of Pharmacy* | radcox@axinn.com<br>mkiser@axinn.com<br><br>Denise Plunkett<br>**AXINN VELTROP & HARKRIDER LLP**<br>114 West 47th Street<br>New York, NY 10036<br>Tel: (212)-728-2200<br>Fax: (212)-728-2201<br>dplunkett@axinn.com<br><br>*Counsel for Defendant Alliance for Safe Online Pharmacies* |
| */s/ Leslie John*<br>Leslie E. John (*pro hac vice*)<br>john@ballardspahr.com<br>Elizabeth P. Weissert (*pro hac vice*)<br>weisserte@ballardspahr.com<br>**BALLARD SPAHR LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Phone: (215)-665-8500<br><br>Justin W. Lamson<br>lamsonjw@ballardspahr.com<br>**BALLARD SPAHR LLP**<br>1675 Broadway, 19th Floor<br>New York, New York 10019<br>Tel: (212)-223-0200<br><br>*Counsel for Defendant Partnership for Safe Medicines, Inc.* | */s/ Barry Werbin*<br>Barry Werbin, Esq.<br>Nicholas Veliky, Esq.<br>**HERRICK, FEINSTEIN LLP**<br>Two Park Avenue<br>New York, New York 10016<br>Tel: (212)-592-1418<br>bwerbin@herrick.com<br>nveliky@herrick.com<br><br>*Counsel for Defendant Center for Safe Internet Pharmacies Ltd.* |