# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PharmacyChecker.com LLC,        ) | |
| ) | |
| Plaintiff        ) | |
| v.        ) | |
| ) | Case No. 7:19-cv-7577-KMK |
| National Association of Boards of        ) | |
| Pharmacy, *et al.*,        ) | |
| ) | |
| Defendants        ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION FOR SUMMARY JUDGMENT ON SHERMAN ACT § 1 CLAIM**

Table of Contents

I.   Preliminary Statement ............................................................................................. 1

II.   Argument ................................................................................................................ 2

   A.   The Court's "Almost Completely Geared Toward Facilitating Illegality" Standard Is Well Grounded In Law And PCC Has Waived Any Argument To The Contrary ............................ 2

      1.   The Court's Standing Requirement Finds Ample Support In The Law ........................ 3

      2.   PCC Has Waived Its Alternative Standing Argument .................................................... 4

      3.   PCC's Proposed Alternative Standing Rules Would Not Defeat Summary Judgment .. 6

   B.   Personal Importation Is Illegal ................................................................................. 7

   C.   No Factual Dispute Precludes Summary Judgment .......................................................... 9

      1.   Defendants Make No Impermissible Inferences And, In Fact, No Inference Need Be Drawn To Conclude That PCC's Primary Purpose Is To Facilitate Illegal Importation ...... 10

      2.   PCC's Mere Speculation Of Anticompetitive Effect On Its Enterprise Does Not Create A Genuine Issue Of Factual Dispute ................................................................................. 13

III.   Conclusion ............................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................7, 15

*Cook v. Food & Drug Admin.*,
733 F.3d 1 (D.C. Cir. 2013).........................................................................................9

*Fogel v. Chestnutt*,
668 F.2d 100 (2d Cir. 1981).........................................................................................6

*Gentleman v. State Univ. of N.Y. Stony Brook*,
No. 21-1102-cv, 2022 WL 1447381 (2d Cir. May 9, 2022)....................................14

*Hayes v. Dahlke*,
976 F.3d 259 (2d Cir. 2020).......................................................................................10

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010).......................................................................................14

*In re Canadian Import Antitrust Litig.*,
470 F.3d 785 (8th Cir. 2006) .......................................................................................9

*In re Fosamax Prod. Liab. Litig.*,
707 F.3d 189 (2d Cir. 2013).......................................................................................11

*In re Motors Liquidation Co.*,
957 F.3d 357 (2d Cir. 2020).........................................................................................1

*Laguerre v. Nat'l Grid USA*,
No. 20-3901-cv, 2022 WL 728819 (2d Cir. Mar. 11, 2022)....................................14

*Maltz v. Sax*,
134 F.2d 2, 5 (7th Cir. 1943) ...............................................................................3, 4, 6

*Memorex Corp. v. IBM Corp.*,
555 F.2d 1379 (9th Cir. 1977). 460 F. Supp. .........................................................3, 4

*Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co.*,
No. 82 C 2599, 1988 WL 23830 (N.D. Ill. Mar. 8, 1988) .........................................4

*Montgomery County v. Leavitt*,
    445 F.Supp.2d 505 (D. Md. 2006) ........................................................8

*Mujo v. Jani-King Int'l, Inc.*,
    13 F.4th 204 (2d Cir. 2021) ...........................................................9, 10

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*,
    850 F.2d 904 (2d Cir. 1988)............................................................7

*O'Hagan v. Soto*,
    565 F. Supp. 422 (S.D.N.Y. 1983) .................................................6

*Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*,
    460 F. Supp. 1060, 1068 (C.D. Cal. 1978) ........................................3, 4

*R.B. Ventures, Ltd. v. Shane*,
    112 F.3d 54 (2d Cir. 1997)............................................................9

*Scott v. Harris*,
    550 U.S. 372 (2007) ....................................................................9

*Spielmann v. Anchor Motor Freight, Inc.*,
    551 F. Supp. 817 (S.D.N.Y. 1982) ...............................................14

**STATUTES**

21 U.S.C. § 353(b) ..............................................................................9

21 U.S.C. § 355(B)(1)(vi) ....................................................................9

21 U.S.C. § 384(j) .......................................................................1, 7, 8, 9

21 U.S.C. § 384(l) ..............................................................................8

**OTHER AUTHORITIES**

21 C.F.R. 201.100 ..............................................................................9

84 Fed. Reg. 70796, 70800 (Dec. 23, 2019) ........................................8

Fed. Rule Civ. Proc. 56......................................................................9, 14

Fed. Rule Civ. Proc. 56(c) ..................................................................9

I.     **Preliminary Statement**

PharmacyChecker.com's ("PCC") opposition does not credibly dispute that its enterprise is "almost completely geared toward facilitating illegality" and thus that it lacks antitrust standing to pursue its Sherman Act claim.  Rather, PCC quarrels with the Court's standing analysis and posits alternative standards that find no applicability here.  Critically, the Court's standing analysis finds ample legal support.  Based on that standard, first announced by the Court in March 2021, following extensive briefing and argument (and subsequently revisited on two other occasions), Defendants conducted discovery exploring the legality of PCC's business.  That discovery establishes what PCC conceded at "the preliminary injunction hearing[;] Plaintiff admitted that the primary reason to provide information to United States consumers about international pharmacies selling into the United States—a major aspect of Plaintiff's business, according to the Amended Complaint—is to facilitate the purchase of drugs from those pharmacies."[1]  Order at 2, Dkt. 220.

PCC's argument that the personal importation it facilitates is legal is false as a matter of law.  It rests on the purported "personal importation exemption" in 21 U.S.C. § 384(j) and a statement of FDA policy.  But section 384(j) is *not* in effect and the FDA policy, by definition, is not law.  That policy also provides that personal importation is not allowed if, as is the case here, the imported drugs are already commercially available in the U.S.

And while PCC accepts as true Defendants' accounting expert's conclusion that ███ of PCC's total revenue is generated from foreign pharmacies, it manufactures a lower purportedly relevant partial revenue share number of ███ by artificially carving out obviously foreign income from business lines including PCC's accreditation of *foreign* pharmacies and PCC's listing

---

[1] Plaintiff's statement made at the preliminary injunction hearing constitutes a judicial admission—a statement of fact made by a party or its counsel to the court—by which it should be bound throughout the course of the proceeding. *See, e.g.*, *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020).

of *foreign* pharmacies and accompanying links U.S. consumers can use to buy foreign drugs on its site.  PCC's newly minted ██████ revenue number—first set forth in PCC's President's late-disclosed expert opinions—is also contradicted by that same witness's 30(b)(6) testimony where he stated that "the ███████████" of PCC's click through revenue came from its foreign pharmacy customers and can thus be disregarded on summary judgment.  DSOF ¶ 13, Dkt. 264-1.  PCC focuses on this false revenue share number in an effort to distract from the host of other factors demonstrating that "the primary purpose of Plaintiff's business is to facilitate unlawful importation"—like the fact that PCC actively "intervenes" in illegal consumer drug purchase transactions, admits that its "forte" is listing foreign drug prices and links to buy foreign drugs, and the fact that foreign pharmacies pay PCC accreditation and listing fees only *because* PCC steers U.S. consumers to their sites to purchase and illegally import foreign drugs.  Recent testimony from ████████████████████████████████████████████.

The legal standard governing antitrust standing is thus sound and the evidence establishes that the primary purpose of PCC's business is to facilitate unlawful importation.  PCC therefore lacks standing to pursue this antitrust claim.

## II.    Argument

### A.    The Court's "Almost Completely Geared Toward Facilitating Illegality" Standard Is Well Grounded In Law And PCC Has Waived Any Argument To The Contrary

PCC's argument that the Court created an "unprecedented" standing requirement "contrary to controlling" law is wrong.  Opp'n at 12, 8, Dkt. 269.  It is hardly a novel rule of law to find no antitrust standing for a plaintiff who admittedly—as is now confirmed by discovery—created an enterprise to supply "information," including links to buy drugs, to U.S. consumers for the "primary" purpose of facilitating illegal drug importation.  Moreover, PCC has waived any

argument that its ambiguously articulated alternative standards, first asserted in its opposition brief, should apply.

1.      **The Court's Standing Requirement Finds Ample Support In The Law**

The Court laid out, in no fewer than *three* Orders, ample law supporting its holding that, "[f]rom these cases, the Court takes the following principle:  where the plaintiff's enterprise is … completely or almost completely geared towards facilitating illegality, the plaintiff cannot plead antitrust injury."  *See* Dkt. 129 at 23–26 (citing cases); Dkt. 167 at 2–3; Dkt. 220 at 2, 5–6.  The Court's ruling is hardly "unprecedented" and does not add any novel antitrust standing burden inconsistent with Supreme Court precedent.

The Court's governing standard is supported by a raft of cases.  For example, in *Maltz v. Sax*, another facilitation case, the plaintiff made gambling "punch boards" at a time when gambling was illegal.  134 F.2d 2, 5 (7th Cir. 1943).  Defendants argued that the plaintiff could not maintain a claim because "the use and sale" of the boards was unlawful.  *Id*. at 3.  Plaintiff argued, like PCC, that his business of making boards was 100% legal and he could thus prove injury to his business protectable under the antitrust laws.  *Id.* at 4.  The court rejected this argument, holding: "[w]hile…making and selling gambling machines" was not itself illegal, "[p]laintiff's business was the making and selling goods which could only be used by purchasers in furtherance of the business of gambling…. Plaintiff has no legal right in [the] business…. Therefore defendants could not invade them."  *Id*. at 5.  PCC posits the same form over substance argument.

Other cases relied on by the Court reach similar conclusions.  For example, in *Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*, the court found lack of standing where "[t]he almost total magnitude of this illegal conduct by plaintiffs makes their miniscule conduct that may be legal, insignificant…."  460 F. Supp. 1060, 1068 (C.D. Cal. 1978) (where 2% of plaintiffs' sales were not "pirated" and thus legal and plaintiff could legally sell all its products in Vermont).  The

*Pearl* court also rejected plaintiffs' reliance on *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379 (9th Cir. 1977). 460 F. Supp. at 1068. The court reasoned that, unlike PCC, "the plaintiff [in *Memorex*] was a business which engaged in wrongful or illegal conduct *only in part* of its" otherwise "*sizeable* enterprise" and thus plaintiff maintained standing. *Id.* (emphasis added). *Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co.* also supports the core principle that a business whose primary purpose relates to illegal conduct lacks standing. The *Monarch* court had initially dismissed plaintiff's claim for lack of standing when the court presumed that "virtually all" of the counterclaimants' enterprise was devoted to illegal conduct—which is what the facts here show. No. 82 C 2599, 1988 WL 23830, at *1 (N.D. Ill. Mar. 8, 1988). On reconsideration, the *Monarch* court found standing where up to 70% of counterclaim-plaintiff's enterprise was potentially lawful. *Id.* at n.2.

### 2.    PCC Has Waived Its Alternative Standing Argument

PCC's argument that its opposition "marks [PCC's] first opportunity to litigate the appropriate standard for determining standing," and that the Court adopted the standard "without briefing," is wrong. Opp'n at 11, 12. The parties have briefed the antitrust standing requirement *repeatedly*. The Court established the governing standard long ago, PCC never challenged that standard after the Court's ruling, and it is now the law of the case.

Defendants first argued in their March 2020 joint motion to dismiss that PCC could not establish antitrust injury because Defendants' alleged conduct "merely prevents [PCC] from facilitating unlawful conduct." Dkt. 101 at 15–19; *see also* Dkt. 116 (Defs. Reply Br.) at 4–6. Defendants argued the very case law the parties argue on summary judgment now, including the *Maltz*, *Realnetworks*, and *Pearl Music* cases. *Id.* PCC opposed Defendants' motion on the basis, as it argues here, that these cases do not support the rule that an enterprise that facilitates unlawful conduct lacks antitrust standing. Dkt. 114 at 8–15. In its motion to dismiss Order, the Court, after

considering the parties' arguments, held:  "[i]f discovery supports Defendants' claim that the 'primary purpose [of Plaintiff's business] is to facilitate unlawful importation,' … it may advance the same argument [at summary judgment]."  Dkt. 129 at 27–28.  PCC never filed a motion to reconsider.  PCC also argued then, as it does again now, that equitable defenses like unclean hands and the doctrine of *in pare delicto* do not defeat a Sherman Act claim.  Dkt. 114 at 11, 15.  But that is not what Defendants argue.  Defendants argue that PCC has failed to show the required threshold element of antitrust injury.  And as PCC recognizes in its present opposition, the Court already noted that equitable defenses have been *distinguished* from a failure to allege antitrust injury.  Opp'n at 8; Order at 27 n.12, Dkt. 129.

The parties next fully briefed these same issues in relation to Defendants' motion for Phase I discovery *and* Defendants' objection to the Magistrate Judge's order on expert disclosure sequencing.  *See* Dkt. 163, 194, 195.  On those motions, the Court ruled, again, based on the same corpus of case law:  "it is clear to the Court that if an enterprise is completely or almost completely geared toward facilitating illegality, then the type of injury caused by allegedly anticompetitive conduct aimed at the enterprise is not an injury Congress sought to address and prevent via the antitrust laws."  Dkt. 220 at 5; *see also* Dkt. 167 at 2.  PCC never challenged these holdings before this opposition to Defendants' summary judgment motion.

Defendants then filed their pre-motion letter arguing that "there is no genuine dispute of material fact that the 'primary purpose [of PCC's business] is to facilitate unlawful importation'" and thus PCC cannot establish standing.  Dkt. 233 at 3.  While PCC's pre-motion letter-response suggested that it may dispute the "proper legal standard," it offered no alternative standard.  Dkt. 238 at 1.  Even if it had, the Court's holding that PCC cannot establish antitrust standing if "the

primary purpose of Plaintiff's business is to facilitate unlawful importation" is well grounded in law, is the law of the case, and PCC has waived any argument for a different standard.[2]

### 3.     PCC's Proposed Alternative Standing Rules Would Not Defeat Summary Judgment

It appears that PCC is proposing three different standing tests.  In one instance, PCC argues that "controlling authorities" focus on injury and proximate cause (i.e., "whether law or Defendants caused Plaintiff's injuries"), which is not the issue Defendants raise at this juncture. Opp'n at 11.  In another, it argues that "the most relevant test" comes from the *Ayerst* decision, which did not focus on injury or proximate cause and was decided on unique facts not present here. *Id*. at 12.  In yet a third iteration, PCC argues that standing is absent only where "plaintiff's enterprise could *only* be used to further illegal activity."  *Id*. at 15 (citing *Maltz*) (emphasis added). None of these arguments are right.

Addressing them in turn, first, even assuming PCC's argument that the antitrust injury analysis "focuses on whether… Defendants caused Plaintiff's injury" is correct, PCC lacks standing under this alternative framework.  As discussed *infra*, PCC has not developed a record substantiating its alleged injury and that Defendants were the alleged proximate cause of those injuries—i.e., its business would have been somehow less geared toward facilitating unlawful conduct but for Defendants' challenged conduct.  PCC chose not to do so and cannot present the Court with any facts to substantiate its argument.  *See* Section II.C.2.  If PCC thought that its alleged injury and the proximate cause of that injury was the correct test to establish standing, then it needed to be prepared at summary judgment to set forth that evidence.  On summary judgment,

---

[2] "The law of the case doctrine is rooted in principles of judicial economy and administrative efficiency."  *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981).  "While the 'law of the case' doctrine is not an inexorable command, [it]… must be followed ... unless ... [1] controlling authority has since made a contrary decision of the law applicable to such issues, or [2] the decision was clearly erroneous and would work manifest injustice."  *O'Hagan v. Soto*, 565 F. Supp. 422, 426–27 (S.D.N.Y. 1983).  PCC identifies no new law, clear error, or manifest injustice.

once Defendants have met their initial burden of showing that there is no genuine dispute as to any material fact, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Here, PCC does not even have a scintilla.

Second, contrary to PCC's argument, *Ayerst* does not provide "the most relevant test" and does not provide a "far more bright-lined [test] than" this Court's standing test. Opp'n at 12. The Second Circuit held that *Ayerst* was decided on "unusual circumstances" and interpretation of the Hatch-Waxman Act, a law not at issue here. *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 912–13 (2d Cir. 1988). The *Ayerst* decision is thus a poor candidate for a "bright-line" standing test. Finally, PCC's argument that it possesses antitrust standing if *any* aspect of its enterprise is legal finds no support and is at odds with the many cited decisions where courts have decided whether a plaintiff's business is primarily illegal or devoted to facilitating illegal conduct. *See supra* Section II.A.1.

### B.      Personal Importation Is Illegal

Despite overwhelming authority to the contrary, PCC argues that the personal importation it facilitates is somehow lawful. PCC proclaims that "the importation of drugs into the United States is not always unlawful," Opp'n at 20–21, but fails to show how any of the personal importation *it facilitates* could be lawful. PCC relies on 21 U.S.C. § 384(j), a statute not in effect, and the personal importation *policy* ("PIP"), to argue that the importation it facilitates is legal.[3] Opp'n at 22. PCC's argument is contrary to law.

---

[3] In support of its argument that prescription drug importation is lawful, PCC relies extensively on the expert testimony of Benjamin England, Esq. Defendants moved to exclude this incorrect and improper legal testimony. *See* Dkt. 260.

First, it is beyond dispute that Section 384(j)—the only potential legal pathway for personal importation of prescription drugs into the U.S.—is not, and has never been, in effect.  Section 384(j) cannot come into effect unless the Secretary of Health and Human Services ("Secretary") makes the appropriate certification to Congress.  21 U.S.C. § 384(l).  PCC's expert testified that he was not aware of the Secretary having made the required certification.  DSOF ¶ 3.  And the FDA has made clear in recent rulemaking that it was "*not proposing to implement the personal importation provisions in section 804(j)*."  84 Fed. Reg. 70796, 70800 (Dec. 23, 2019) (emphasis added).  Moreover, the court in *Vermont v. Leavitt* squarely rejected PCC's exact argument that the statutory provision requiring Secretarial certification to Congress (i.e., § 384(l)) applied only to "the wholesale importation program under subsection (b), not (j)."  405 F. Supp. 2d 466, 475 (D. Vt. 2005); Opp'n at 26.  The court rejected that argument as "highly implausible" and held that the certification provision applied to all of § 384, including § 384(j).  *Id.*[4]

Second, as PCC's expert admitted, the PIP is not law and, in any event, relates solely to enforcement discretion, not the legality of personal importation.  Defs.' Br. at 1–2, Dkt. 264.  Even if the PIP had legal effect, PCC utterly fails to address the simple fact that the prescription drug importation it facilitates could not fall within the PIP—for example, "the [PIP] does not apply to medications that are already available in the U.S., even if sold under the same name."  *See* Statement of William K. Hubbard, Senior Associate Commissioner for Policy, Planning and Legislation, FDA, at 2, https://www.aging.senate.gov/imo/media/doc/hr86wh.pdf; DSOF ¶ 63 (PCC following up with a consumer reporting receipt of drug with different pill "marking" and container than the domestic version of the same drug).  Thus, PCC has not and cannot demonstrate

---

[4] Similarly, in *Montgomery County v. Leavitt*, 445 F.Supp.2d 505, 510–11 (D. Md. 2006), the plaintiff argued that the certification requirement in § 384 did not apply to the entire section and that FDA could authorize a specific waiver for the proposed importation program before any certification is made.  The court held that the certification provision applied to the entire section and that no certification had yet been made to put § 384 into effect.  *Id.* at 512.

that the personal importation it facilitates complies with the requirements of the PIP.  Defs.' Br. at 14 n.3.  And PCC's argument that its verification standards purportedly make importation to the U.S. "far more likely to be legal" is meritless—for the foregoing reasons, all of the personal importation PCC facilitates is illegal.

Finally, PCC's criticism of *In re Canadian Import Antitrust Litig.*, 470 F.3d 785 (8th Cir. 2006), is baseless.  PCC mischaracterizes *Canadian Import*; the court there did not opine that previously approved drugs "become" unapproved due to mislabeling.  Consistent with the law, the court reasoned that the mislabeling of the drugs at issue "illustrates why the Canadian drugs are 'unapproved' drugs" in the first place.  470 F.3d at 789.  *See also* 21 U.S.C. § 355(B)(1)(vi) (labeling and packaging are components of the drug approval process).[5]  And the case PCC cites, *Cook v. Food & Drug Admin.*, 733 F.3d 1, 10 (D.C. Cir. 2013), only undermines PCC's position— that court found that § 384(j) was "not yet in effect." 733 F.3d at 10; Opp'n at 23–25.

### C.    No Factual Dispute Precludes Summary Judgment

PCC omits one critical nuance of the Rule 56 standard.  "[F]acts must be viewed in the light most favorable to the nonmoving party *only if* there is a '*genuine*' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)) (emphasis added).  "[I]t is the *factual and legal context* within which a party presents its evidence that determines what are the *reasonable* inferences to be drawn from that evidence . . . ." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 58 (2d Cir. 1997) (emphases in original); *see also Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 214 (2d Cir. 2021) ("In order to survive [a] motion for summary judgment,

---

[5] PCC also makes a baffling claim that "drugs in the United States do not have to include the symbol 'Rx Only,' they need only indicate that a prescription is required."  Opp'n at 24 n.4.  PCC cites no source to support this false claim. The *Canadian Import* court is correct that the drugs at issue were misbranded under 21 U.S.C. § 353(b) *because* they did not bear the "Rx only" symbol.  470 F.3d at 789; *see also* 21 C.F.R. 201.100 (requiring the "Rx-only" symbol on all current and prior packaging).  PCC's citation to a list of regulations and the legal opinion of Mr. England does not support PCC's argument that the personal importation it facilitates is lawful.

the [nonmovants] were required to provide . . . 'hard evidence . . . from which a reasonable

inference in [their] favor may be drawn.'") (quoting *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir.

2020)).  PCC attempts to overcome the hard facts that Defendants advance, demonstrating PCC's

primarily illegal enterprise, by misdirection and impermissible speculation.

> 1.     **Defendants Make No Impermissible Inferences And, In Fact, No Inference Need Be Drawn To Conclude That PCC's Primary Purpose Is To Facilitate Illegal Importation**

Defendants' experts provide undisputed facts about what PCC's revenues and web traffic

show:  PCC's business is predominantly geared toward facilitating unlawful importation.  The

bottom line is that ▆▆▆ of PCC's ***total revenue*** during the relevant time period was generated

from foreign pharmacies.  DSOF ¶ 22.  The ▆▆▆▆▆ of PCC's total revenue, over ▆▆▆,

comes from click through fees that online pharmacies pay when consumers click on the links to

their websites.  DSOF ¶¶ 8, 13.  Of those click through fees, over ▆▆▆ came from foreign

pharmacies.  DSOF ¶ 22.  And almost ▆▆▆ of the click through fees are from U.S. consumers

clicking through to foreign pharmacies.[6]  Opp'n at 19.  PCC does not quarrel with these staggering

numbers.  In fact, Mr. Levitt assumes the accuracy of these numbers in his late disclosed expert

opinions.[7]

Instead, seeking to create a dispute of fact where none exists, PCC enlisted its co-founder,

Mr. Levitt (not an expert), to introduce a new, meaningless revenue percentage in a declaration:

▆▆▆.  Opp. at 19.  That number is misleading in its incompleteness.  PCC argues that the Court

should disregard the full picture of PCC's business and focus instead solely on a subset of its

---

[6] PCC claims that "defendants' own expert conclu[ded] that a substantial amount of plaintiff's paid clicks could not relate to unlawful importation," framing this as a "concession."  Opp'n at 19.  This is plainly false.  Nowhere did Defendants' expert characterize the around ▆▆▆ of remaining click fees as "substantial."

[7] Defendants have filed a pre-motion letter seeking permission to file a motion to strike those portions of Mr. Levitt's declaration relating to these newly disclosed revenue numbers on the bases that they: (i) constitute improper expert opinion by a non-expert witness; (ii) were disclosed months after PCC's expert disclosure deadline; and (iii) were disclosed long after Defendants' opportunity to conduct discovery on the opinions.

revenue, i.e., revenue generated only from U.S. consumer *clicks* to foreign pharmacies.  *Id*.  One problem with Mr. Levitt's late disclosed partial revenue share number is that it is contradicted by Mr. Levitt's 30(b)(6) testimony, where he stated that "██████████" of PCC's cost-per-click revenue was attributable to consumers visiting PCC's foreign pharmacies.[8]  DSOF ¶ 13. Moreover, PCC fails to acknowledge that what Mr. Levitt does to arrive at his new number constitutes mixing apples and oranges.  His approach compares a subset of click revenues (U.S.-consumer clicks to foreign sites) to PCC's total revenue of *all* kinds (click fees, accreditation, listing, etc.).  He does not, as Defendant's expert did, compare like to like (the subset of click revenues to total click revenues)—that is the ████ at which Mr. Kent arrived.  DSOF ¶ 40.  If PCC prefers to look at total revenue for the denominator, sticking with the appropriate apples to apples comparison, as already noted, Defendants' expert found that ████ of PCC's total revenue during the relevant time period was generated from foreign pharmacies.  DSOF ¶ 22.  Trying to justify the myopic view it advances, PCC falsely claims that Defendants rely solely on PCC's click through revenue to measure facilitation.  Opp'n at 19.  Defendants rely on much more than that, including revenue PCC generates from accrediting and listing its foreign pharmacies.  DSOF ¶¶ 22–23.  Simply stated, PCC does not earn any click fees from foreign pharmacies unless those foreign pharmacies are already PCC accredited and listed on PCC's site.  DSOF ¶ 26.  Carving out PCC revenues that relate to such foreign pharmacy accreditation and listing, as PCC does in arriving at its new ████ partial click through revenue number, makes no sense given this business model.

---

[8] The Court should disregard the new revenue percentage introduced in Mr. Levitt's declaration as contradictory to his prior deposition testimony.  *See, e.g.*, *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (affirming the District Court's ruling to disregard new evidence introduced in an affidavit at the summary judgment stage because the "sham issue of fact" doctrine "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony").

PCC also incorrectly claims that Defendants make "impermissible inferences" "connecting a click to a transaction and a transaction to an unlawful importation." Opp'n at 19. Defendants do not and need not make these connections—Defendants need to show, as the Court has articulated consistently, that the "primary purpose [of Plaintiff's business] is to *facilitate* unlawful importation." *See, e.g.*, Order at 27–28, Dkt. 129 (emphasis added). Facilitate means to make something easier. Merriam-Webster, https://www.merriam-webster.com/dictionary/facilitate. PCC's business does just that for unlawful importation. The Court's standard says nothing about requiring proof of a transaction or proof of an unlawful importation (though, as discussed below, the documents produced by PCC and the testimony of its foreign pharmacies plainly show both). Defendants have readily met their burden.



PCC's arguments regarding ██████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████, is also meaningless. Opp'n at 20. First, ████████████ ████████████████████████. Reply SOF ¶ 22. Second, ███████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████results from PCC's business operations.[9] Finally, ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████. Reply SOF ¶ 102 ("██████"); *Id.* ("██████").[10]

---

[9] The ████████ deponent ████████████████████████████████████████ ████████████████ that is, they are misbranded. Reply SOF ¶ 76, 110.

[10] These deposition transcripts became available to the parties only after Defendants' joint opening briefs and the accompanying Statement of Facts were submitted to this Court (but before Plaintiff's opposition briefing). This Reply presents the first opportunity for Defendants to bring this evidence in front of the Court.

PCC also seeks to have this Court ignore a holistic view of PCC's enterprise by branding as "immaterial" the location of customers it targets and its own statements about the business's specialty (advertising international drug prices) and by quibbling over whether its involvement in resolving consumer complaints makes it complicit in the transaction.  Opp'n at 18–20.  The evidence on this latter point is clear and voluminous; PCC directs users to foreign pharmacies, and when there is a problem with a transaction from those foreign pharmacies, PCC "intervenes" to ensure the consumer gets the illegal, embargoed prescription drugs they ordered.  DSOF ¶¶ 59–64.  For example, ███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████   Reply SOF ¶ 105 (discussing DX 108 (PCC0337045)).   ████████████████

██████████████████████████████████████████████████████████████████

████████████   *Id.*  PCC is not only aware that its accredited foreign pharmacies are targeting U.S. consumers but also that U.S. consumers are making online purchases of prescription drugs from its accredited members.  Taking it a step further, PCC makes the opportunity and experience of unlawful personal importation easier for U.S. consumers—i.e., facilitation.  Perhaps because there is no denying it, PCC also entirely fails to respond to Defendants' argument that it is exactly this type of conduct that PCC engages in that is similar to, and in fact, more blatant than that for which Google agreed to a $500 million penalty to resolve a DOJ and FDA investigation.  Defs.' Br. at 24; DSOF ¶ 7.

## 2. PCC's Mere Speculation Of Anticompetitive Effect On Its Enterprise Does Not Create A Genuine Issue Of Factual Dispute

To distract from the fact that PCC makes money predominantly from facilitating unlawful importation, PCC claims for the first time that more than ████ of its revenue would have come

from domestic sources because, but for Defendants' conduct, it would have had more U.S. pharmacy customers.  Opp'n at 9; DSOF ¶ 9.  PCC's claim rests on hearsay and speculation.

As support, PCC points to two employee declarations (both of whom Defendants deposed and PCC could have cross-noticed) and an unauthenticated email, all containing, at least, double hearsay, purportedly establishing that a single online pharmacy, Healthwarehouse.com, declined PCC's services due to the alleged conduct.  PSOF ¶¶ 9, 11, 24–25; PX 22.[11]  PCC then speculates from this one purported example that an unknown number of other U.S. pharmacies *might* have chosen to seek PCC accreditation and *might* have chosen to participate in its listing program but for Defendants' conduct.  Opp'n at 29.  But a plaintiff cannot overcome a Rule 56 motion with inadmissible evidence, *Spielmann v. Anchor Motor Freight, Inc*., 551 F. Supp. 817, 822 (S.D.N.Y. 1982), "rely[ing] on mere speculation or conjecture as to the true nature of the facts," *Laguerre v. Nat'l Grid USA*, No. 20-3901-cv, 2022 WL 728819, at *2 (2d Cir. Mar. 11, 2022) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)), or raising "metaphysical doubt as to the material facts," *Gentleman v. State Univ. of N.Y. Stony Brook*, No. 21-1102-cv, 2022 WL 1447381, at *1 (2d Cir. May 9, 2022).  Even if PCC could prove that Defendants caused the loss of Healthwarehouse.com business, this would not alter the fact that only ███ of its revenue came from domestic business.

Compounding PCC's lack of admissible evidence is the fact that PCC chose to conduct no discovery on these issues.  PCC falsely claims that "it has not been permitted to take" any discovery regarding its newly alleged injury.  Opp'n at 29.  That is wrong.  Phase I discovery permitted *all* parties to conduct "discovery from Plaintiff and third parties" regarding "the legality of Plaintiff's business model"—i.e., antitrust standing.  Order ¶ 5, Dkt. 166.  If PCC felt that it

---

[11] PX 22 is ████████████████████████████████████████.

could prove standing through the purported loss of domestic online pharmacy business and that the Defendants were the proximate cause of that loss, PCC could have sought purportedly supporting documents and testimony from PCC's current, former, or potential domestic pharmacy customers. PCC could have cross-noticed depositions of its employees (including the declarants it suddenly relies on here) to support its unfounded accusations. PCC could have proffered expert testimony substantiating its alleged loss of U.S. business and that Defendants were the alleged cause of those losses. PCC chose not to do any of this. Simply stating that "plaintiff *tried* to obtain more U.S. online pharmacy participation" and that failed efforts to do so *must* have been because of "defendants' anticompetitive acts" is nothing more than speculation. Opp'n at 29–30.

As discussed above (Section II.A), PCC carries the burden of showing the threshold requirement that it has antitrust standing—exactly what the Court ordered be explored in Phase I discovery. PCC sat on the sidelines. The law is clear; if the nonmovant "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is "entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322–23, 325. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. That is precisely the case here.

## III.  Conclusion

For all the foregoing reasons, there is no dispute of material fact that PCC's business is primarily geared toward facilitating the illegal importation of drugs. Thus the Court should grant summary judgment dismissing PCC's Sherman Act claim with prejudice.

DATED: August 5, 2022                                     Respectfully submitted,

*/s/ Erik T. Koons*
Erik T. Koons (*Pro Hac Vice*)
Jana I. Seidl (*Pro Hac Vice*)
**BAKER BOTTS L.L.P.**
700 K St. NW
Washington, DC 20001
Telephone: (202) 639-7973
Facsimile: (202) 585-1086
erik.koons@bakerbotts.com
jana.seidl@bakerbotts.com

*Counsel for Defendant National Association of Boards of Pharmacy*

*/s/ Rachel J. Adcox*
Rachel J. Adcox (*Pro Hac Vice*)
Melanie Kiser (*Pro Hac Vice*)
**AXINN VELTROP & HARKRIDER LLP**
1901 L St NW
Washington, DC 20036
Tel: 202-912-4700
Fax: 202-912-4701
radcox@axinn.com
mkiser@axinn.com

Denise Plunkett
**AXINN VELTROP & HARKRIDER LLP**
114 West 47th Street
New York, NY 10036
Tel: 212-728-2200
Fax: 212-728-2201
dplunkett@axinn.com

*Counsel for Defendant Alliance for Safe Online Pharmacies*

*/s/ Barry Werbin*
Barry Werbin, Esq.
Nicholas Grant Olear Veliky, Esq.
**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Tel.: 212-592-1418
bwerbin@herrick.com
nveliky@herrick.com

*Counsel for Defendant Center for Safe Internet Pharmacies Ltd.*

*/s/ Leslie E. John*
Leslie E. John (*Pro Hac Vice*)
john@ballardspahr.com
Elizabeth P. Weissert (*Pro Hac Vice*)
weisserte@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215-665-8500

Justin W. Lamson (ID. 770895)
lamsonjw@ballardspahr.com
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, New York 10019
Telephone: (212) 223-0200

*Counsel for Defendant Partnership for Safe Medicines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 5th day of August, 2022, I caused the foregoing Reply

Memorandum of Law in Support of Defendants' Joint Motion for Summary Judgment to be served

via email on all counsel of record in accordance with the Federal Rules of Civil Procedure and the

Local Rules of the United States District Court for the Southern District of New York.

<div align="center" style="margin-left:auto;">

/s/ *Erik T. Koons*
Erik T. Koons

</div>