UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PharmacyChecker.com LLC, | Civil Action No. 7:19-cv-07577-KMK |
| *Plaintiff*, | **Plaintiff's Opposition to National Association of Boards of Pharmacy's Motion to Dismiss PharmacyChecker's Lanham Act Claim** |
| vs. | |
| National Association of Boards of Pharmacy et al., | ORAL ARGUMENT REQUESTED |
| *Defendants.* | Judge Kenneth M. Karas |
| | Magistrate Judge Victoria Reznik |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

LEGAL STANDARD ....................................................................................... 3

I.   LAW OF THE CASE AND JUDICIAL NOTICE PROVIDE INSUFFICIENT
     SUPPORT FOR NABP'S MOTION ................................................................. 4

     A.   NABP's Law of the Case Argument Fails Because the Court Has Not
          Previously Addressed PharmacyChecker's Article III Standing ............ 5

     B.   The Court Should Deny NABP's Improper and Irrelevant Request for
          Judicial Notice ................................................................................ 8

II.  PHARMACYCHECKER HAS ARTICLE III STANDING TO VINDICATE
     ITS SUBSTANTIVE FEDERAL RIGHTS CONFERRED BY THE LANHAM
     ACT ....................................................................................................... 9

     A.   The Lanham Act Provides PharmacyChecker with a Legally Protected
          Interest ......................................................................................... 10

          1.   The Lanham Act confers a legally protected interest under federal
               law ........................................................................................ 10

          2.   PharmacyChecker is not seeking to protect any interest in evading
               the law ................................................................................... 11

          3.   Caselaw involving controlled substances confirms
               PharmacyChecker's Article III standing ..................................... 14

          4.   The Court's prior comments regarding PharmacyChecker's
               operations ............................................................................... 17

     B.   The Injuries that NABP's False Advertising Caused PharmacyChecker
          Are Redressable ............................................................................. 18

          1.   The cases cited by NABP have nothing to do with the redressability
               of PharmacyChecker's injury .................................................... 18

          2.   PharmacyChecker's injury is broader than that suggested by NABP
               or addressed in the summary judgment ruling .............................. 19

III. PHARMACYCHECKER SUFFICIENTLY PLED A LANHAM ACT CLAIM
     THAT SHOULD PROCEED TO DISCOVERY ................................................. 21

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,*
821 F.3d 352 (2d Cir. 2016).................................................................. 6

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
426 F.3d 635 (2d Cir. 2005).................................................................. 3

*Bank of N.Y. v. First Millennium, Inc.,*
607 F.3d 905 (2d Cir. 2010).................................................................. 4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................ 4

*Bell v. Redflex Traffic Sys., Inc.,*
374 F. App'x 518 (5th Cir. 2010) .................................................... 11, 12

*Caffrey v. N. Arrow Abstract & Settlement Servs., Inc.,*
73 N.Y.S.3d 70 (App. Div. 2018) .......................................................... 6

*In re Capacitors Antitrust Litig.,*
154 F. Supp. 3d 918 (N.D. Cal. 2015) ................................................... 6

*Carter v. HealthPort Techs., LLC,*
822 F.3d 47 (2d Cir. 2016).................................................................... 4

*Cetacean Cmty. v. Bush,*
386 F.3d 1169 (9th Cir. 2004) .............................................................. 6

*City of Waukesha v. EPA,*
320 F.3d 228 (D.C. Cir. 2003) .............................................................. 7

*Cottrell v. Alcon Lab'ys,*
874 F.3d 154 (3d Cir. 2017)....................................................... 7, 10, 21

*Cumis Ins. Soc'y, Inc. v. Windsor Bank & Tr. Co.,*
736 F. Supp. 1226 (D. Conn. 1990) ....................................................... 5

*De Johnson v. Holder,*
564 F.3d 95 (2d Cir. 2009)..................................................................... 5

*Dziennik v. Sealift, Inc.,*
No. 05-CV-4659 (DLI)(MDG), 2016 WL 4544024 (E.D.N.Y. Aug. 30, 2016).......... 5

*Exch. Nat'l Bank v. Touche Ross & Co.*,
    544 F.2d 1126 (2d Cir. 1976) ................................................................. 4

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
    14-Cv-712 (SHS), 2020 WL 4349840 (S.D.N.Y. July 29, 2020) ............................. 6

*Frompovicz v. Niagara Bottling, LLC*,
    313 F. Supp. 3d 603 (E.D. Pa. 2018) ...................................................... 11

*Georgia Atlas, Inc. v. Turnage*,
    594 F. Supp. 3d 1339 (N.D. Ga. 2022) ..................................................... 14

*Glob. Art Exhibitions, Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*,
    607 F. Supp. 3d 421 (S.D.N.Y. 2022) ....................................................... 3

*Gonzales v. Gorsuch*,
    688 F.2d 1263 (9th Cir. 1982) ............................................................ 18

*Graziano v. Pataki*,
    689 F.3d 110 (2d Cir. 2012) ............................................................... 4

*Greenwood v. Green Leaf Lab LLC*,
    No. 3:17-cv-00415-PK, 2017 WL 3391671 (D. Or. July 13, 2017) .................. 14, 15

*Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*,
    338 F.3d 1024 (D.C. Cir. 2003) ............................................................ 7

*J.E. v. Chappaqua Cent. Sch. Dist.*,
    No. 14 Civ. 3295 (NSR), 2015 WL 4934535 (S.D.N.Y. Aug. 17, 2015) ................. 3

*Johnson & Johnson v. Smithkline Beecham Corp.*,
    960 F.2d 294 (2d Cir. 1992) .............................................................. 21

*Jones v. Rivera*,
    No. 13-cv-1042 (NSR), 2015 WL 8362766 (S.D.N.Y. Dec. 7, 2015) ................... 8, 9

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ............................................................... 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................... 9, 10

*Marks v. Blount-Lee*,
    No. 16-CV-3524 (JMA) (AYS), 2017 WL 3098094 (E.D.N.Y. July 20, 2017) .......... 5

*Merck Eprova AG v. BrookStone Pharms., LLC*,
    920 F. Supp. 2d 404 (S.D.N.Y. 2013) ................................................. 3, 21

iv

*Merck Eprova AG v. Gnosis S.p.A.*,
    901 F. Supp. 2d 436 (S.D.N.Y. 2012) .................................................. 10

*Merck Eprova AG v. Prothera, Inc.*,
    No. 08-CV-35(RMB) (JCF), 2010 WL 9098310 (S.D.N.Y. Oct. 20, 2010) ............. 23

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*,
    850 F.2d 904 (2d Cir. 1988) ................................................ 10, 11

*Norton v. Town of Brookhaven*,
    No. 2:13-cv-3520 (ADS) (GRB), 2020 WL 364159 (E.D.N.Y. Jan. 21, 2020) .......... 5

*Pierce v. Breitburn Operating LP (In re Breitburn Energy Partners LP)*,
    No. 1:18-cv-4776 (ALC), 2019 WL 2559551 (S.D.N.Y. June 20, 2019) ............... 5, 6

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................ 18

*In re Remicade Antitrust Litig.*,
    345 F. Supp. 3d 566 (E.D. Pa. 2018) ...................................... 20, 21

*Riverkeeper, Inc. v. Coeymans Recycling Ctr., LLC*,
    No. 1:20-CV-1025, 2022 WL 17819738 (N.D.N.Y. Dec. 20, 2022) .................... 3, 7

*Rosado-Acha v. Red Bull GmbH*,
    No. 15 Civ. 7620 KPF, 2016 WL 3636672 (S.D.N.Y. June 29, 2016). ............... 8, 9

*Sahni v. Legal Servs.*,
    No. 14-CV-1616 NSR, 2015 WL 4879160 (S.D.N.Y. Aug. 13, 2015) .................... 8

*Shulman v. Kaplan*,
    2:19-CV-05413-AB (FFMx), 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ...... 18, 19

*Siva Entes. v. Ott*,
    No. 2:18-cv-06881-CAS(GJSx), 2018 WL 6844714 (C.D. Cal.
    Nov. 5, 2018) ........................................................ 14, 15, 18

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014) .................................................. 3

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) ................................................. 5

## Statutes and Rules

2 U.S.C. §§691 *et seq.* (Line Item Veto Act) ............................................ 18

15 U.S.C. §1 (Sherman Act) ............................................................................ 21

15 U.S.C. §§1051 *et seq.* (Lanham Act) ...................................................*passim*

18 U.S.C. §1836 (Defend Trade Secrets Act) ............................................... 15

21 U.S.C. §§301 *et seq.* (FDCA) ................................................................... 16

21 U.S.C. §381 ................................................................................................. 15

21 U.S.C. §384 ........................................................................................... 15, 16

21 U.S.C. §§801 *et seq.* (Controlled Substances Act) ................................... 15

29 U.S.C. §§201 *et seq.* (Fair Labor Standards Act) ..................................... 15

33 U.S.C. §1288 (Federal Water Pollution Control Act) ............................... 18

114 Stat. 1549A-40 (Prescription Drug Import Fairness Act of 2000) ...... 15

Fed. R. Civ. P. 12 .......................................................................................*passim*

Fed. R. Civ. P. 60 ............................................................................................... 5

Fed. R. Evid. 201 ............................................................................................... 9

# PRELIMINARY STATEMENT[1]

NABP offers, in essence, two motions to dismiss PharmacyChecker's Lanham Act (15 U.S.C. §§1051 *et seq.*) claims, both of which fail. First, NABP moves to dismiss for lack of Article III standing—a jurisdictional motion based on NABP's idea that PharmacyChecker has no legally protected interest in prosecuting a Lanham Act claim because its business facilitates illegality or is illegal. This mirrors the motion NABP made previously, repackaged as a constitutional, rather than as an antitrust, standing challenge. But the analysis is different. For purposes of a jurisdictional motion, the Court must assume that PharmacyChecker has alleged a Lanham Act claim that will succeed on the merits. None of the antitrust standing cases previously at issue on summary judgment is relevant to the distinct question whether PharmacyChecker has Article III standing. And NABP cites no Article III caselaw saying that a legally protected interest conferred by the Lanham Act gets stripped—except in the very narrow instance, inapplicable here, where a plaintiff's claim directly involves the manufacture and sale of a Schedule 1 controlled substance proscribed for all purposes under federal law.

Even if the caselaw ***did*** say that an illegal operation loses Article III standing as a *per se* matter (it does not), there is no previous ruling that PharmacyChecker is itself illegal. And NABP has not (and cannot) identify the federal law that supposedly makes PharmacyChecker illegal (because there is none).

---

1. Unless otherwise specified, for purposes of this opposition only, PharmacyChecker does not dispute the rulings in the MSJ Order (Dkt. 346), but PharmacyChecker does reserve all rights to do so going forward, including on appeal.

NABP also moves under Federal Rule 12(c) for a judgment on the pleadings, relying exclusively on the Court's prior summary judgment ruling, for dismissal of the Lanham Act claim on the pleadings. But the Court has already held that the complaint allegations are sufficient to state a claim under Rule 12(b)(6) (and NABP concedes that is the appropriate standard for considering its motion). Dkt. 129 at 63-69. Moreover, at the core of NABP's alleged false and misleading statements is NABP's characterization of sites on its "Not Recommended List" as rogue foreign pharmacy websites that sell counterfeit drugs. Am. Compl. ("AC") (Dkt. 82) ¶89. The Court's summary judgment order only reinforces the complaint allegations that NABP has wrongly conflated PharmacyChecker with rogue foreign pharmacies, falsely suggesting that PharmacyChecker sells drugs, sells unsafe drugs, and sells counterfeit drugs when it is undisputed that PharmacyChecker does not do that. MSJ Order at 11 ("The Parties agree that [PharmacyChecker] itself 'is not a pharmacy and does not sell, dispense, or distribute drugs.' ").

Finally, the summary judgment order does not affect the Court's prior ruling that the complaint sufficiently alleges that: NABP acted with an intent to deceive based, in part, on NABP's various contradictory statements that (i) PharmacyChecker "serve[s] a purpose" similar to NABP's; (ii) PharmacyChecker "help[s] consumers;" and (iii) there is "nothing wrong" with ordering prescription drugs from international pharmacies, as many cities and counties encourage as part of pharmacy benefit programs. Dkt. 129 at 67–68; AC ¶132d. So long as PharmacyChecker can prove NABP's alleged intent to deceive, after discovery,

PharmacyChecker need not rely on literal falsity or evidence of consumer deception because a presumption will arise that consumers are, in fact, being deceived. *Merck Eprova AG v. BrookStone Pharms., LLC*, 920 F. Supp. 2d 404, 417 (S.D.N.Y. 2013).

For the many reasons detailed below, NABP's current motions are infirm and should be denied.

## LEGAL STANDARD

NABP's motions are governed by two different legal standards.

**The Jurisdictional Rule 12(b)(1) Motion.** NABP's motion to dismiss for lack of Article III standing should be treated as a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. *J.E. v. Chappaqua Cent. Sch. Dist.*, No. 14 Civ. 3295 (NSR), 2015 WL 4934535, at *2 (S.D.N.Y. Aug. 17, 2015).

On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden to prove subject matter jurisdiction by a preponderance of the evidence, but "all ambiguities must be resolved, and inferences drawn in favor of the plaintiff." *Riverkeeper, Inc. v. Coeymans Recycling Ctr., LLC*, No. 1:20-CV-1025 (GTS/CFH), 2022 WL 17819738, at *5 (N.D.N.Y. Dec. 20, 2022) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

On a fact-based challenge to jurisdiction, "a court reviewing a Rule 12(b)(1) motion . . . can look to evidence outside the pleadings to resolve disputed jurisdictional facts." *Glob. Art Exhibitions, Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 429 (S.D.N.Y. 2022) (citing *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). The evidence proffered by the defendant is immaterial, however, unless it contradicts plausible complaint

allegations that are sufficient to show standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976) (plaintiff must present evidence to controvert that presented by the defendant only if defendant's "affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems" in the assertion of jurisdiction).

**The Rule 12(c) Pleadings Motion.** "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.' " *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings. Thus, we will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the [plaintiff].").

## ARGUMENT

### I. LAW OF THE CASE AND JUDICIAL NOTICE PROVIDE INSUFFICIENT SUPPORT FOR NABP'S MOTION

NABP relies on the MSJ Order to try to establish a pleading defect citing a "law of the case" theory and judicial notice. NABP Br. at 28. Both efforts should be rejected.

### A.      NABP's Law of the Case Argument Fails Because the Court Has Not Previously Addressed PharmacyChecker's Article III Standing

The "law of the case" is a matter within the Court's discretion and caselaw counsels in favor of considering questions related to subject matter jurisdiction "anew." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2016 WL 4544024, at *3 (E.D.N.Y. Aug. 30, 2016) ("The law of the case doctrine is discretionary, not mandatory."); *Cumis Ins. Soc'y, Inc. v. Windsor Bank & Tr. Co.*, 736 F. Supp. 1226, 1228 (D. Conn. 1990) ("[T]he law of the case doctrine is not a limit on the court's jurisdiction, but a rule of practice which may be departed from in the sound discretion of the district court. When further reflection allows the court to make a better informed ruling in accordance with its conscience, this discretion is not abused.") (citation omitted); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (the law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decisions"); *Norton v. Town of Brookhaven*, No. 2:13-cv-3520 (ADS) (GRB), 2020 WL 364159, at *4–5 (E.D.N.Y. Jan. 21, 2020) (law of the case does not apply to challenges to subject matter jurisdiction). NABP's cited decision is not to the contrary, stating that "law of the case" "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (citation omitted).

Several considerations here counsel against a strict application of law of the case. First, should NABP succeed on this motion, the MSJ Order would become void—and subsequently vacated under Rule 60. *Pierce v. Breitburn Operating LP (In re Breitburn Energy Partners LP)*, No. 1:18-cv-4776 (ALC), 2019 WL 2559551, at *2

(S.D.N.Y. June 20, 2019) ("should a court issue a decision in a case in which jurisdiction is not present, that decision is void as a matter of law"); *Marks v. Blount-Lee*, No. 16-CV-3524 (JMA) (AYS), 2017 WL 3098094, at *3 (E.D.N.Y. July 20, 2017) ("If a court lacks subject matter jurisdiction to adjudicate a claim, then any order entered by that court is void."). Judicial decisions that are void do not have preclusive effect and are not "law of the case." *Caffrey v. N. Arrow Abstract & Settlement Servs., Inc.*, 73 N.Y.S.3d 70, 81 (App. Div. 2018). Thus, as NABP would have it, any order dismissing the case for lack of subject matter jurisdiction would be based entirely on summary judgment rulings that lose all effect because of that jurisdictional order.

Another consideration is that the MSJ Order does not address Article III standing—as distinct from antitrust standing. Those are different concepts, and the determination whether PharmacyChecker has Article III standing to prosecute NABP's Lanham Act violations is new. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (noting differences between constitutional and statutory standing); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 14-Cv-712 (SHS), 2020 WL 4349840, at *2 n.1 (S.D.N.Y. July 29, 2020) ("Statutory standing should be distinguished from Article III standing."); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174–75 (9th Cir. 2004) (noting distinction between constitutional and non-constitutional standing); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) ("Article III standing is different from, and not to be measured by, statutory standing."). Thus, the caselaw that the Court relied on to conclude that PharmacyChecker "facilitates illegality" for purposes of antitrust standing is

6

irrelevant for purposes of Article III.

Additionally, on a Rule 12(b)(1) motion, courts are not to collapse the merits with jurisdictional questions; they should assume instead that the defendant committed the violation alleged. *Riverkeeper,* 2022 WL 17819738, at *5 (the merits must not be resolved on a Rule 12(b)(1) constitutional standing inquiry); *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1030 (D.C. Cir. 2003) (on a motion to dismiss, "a plaintiff's non-frivolous contention regarding the meaning of a statute must be taken as correct for purposes of standing," lest the court "effectively be deciding the merits under the guise of determining the plaintiff's standing") (citations omitted). Thus, for purposes of NABP's motion, the Court should assume that PharmacyChecker's Lanham Act claim will succeed on the merits—and the Court should ignore any merits-based arguments to the contrary. *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims."); *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017) ("To maintain this fundamental separation between standing and merits at the dismissal stage, we assume for the purposes of our standing inquiry that a plaintiff has stated valid legal claims.").

While this situation is unique due to the procedural sequence of events, the quagmire results from NABP sitting on this motion until now. If NABP had a good-faith motion that this Court lacked subject matter jurisdiction, fourteen months ago

following phase-one discovery, it should have brought this motion then, alongside the motion to dismiss for lack of antitrust standing. Indeed, this motion relies on nothing new aside from the MSJ Order.

### B. The Court Should Deny NABP's Improper and Irrelevant Request for Judicial Notice

As an alternative to "law of the case," NABP asks the Court to take judicial notice of the MSJ Order. NABP Br. at 7. For what specific purpose, NABP does not say. And NABP cites no decision in which a court took judicial notice of a prior order in the same case for purposes of deciding its jurisdiction.

On a Rule 12(c) motion, NABP's cases say that judicial notice can be taken of ***facts*** and only for purposes of ***background***—not for the truth of the matter asserted to resolve substantive rights. *Id.* (citing *Jones v. Rivera*, No. 13-cv-1042 (NSR), 2015 WL 8362766, at *2 (S.D.N.Y. Dec. 7, 2015)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (on a Rule 12(c) motion, judicial notice is limited to factual background).

NABP also cites *Sahni v. Legal Services*, but that case says only that a court may take judicial notice of state court proceedings for purposes of determining defenses such as claim and issue preclusion. No. 14-CV-1616 NSR, 2015 WL 4879160, at *2 n.4 (S.D.N.Y. Aug. 13, 2015). Similarly, NABP cites *Rosado-Acha v. Red Bull GmbH*, which says that courts may take judicial notice of documents filed "in another court not for the truth of the matters asserted," "but rather to establish the fact of such litigation and related filings," and may take judicial notice of its own prior orders to resolve issues involving res judicata. No. 15 Civ. 7620 KPF, 2016 WL 3636672, at

*7 (S.D.N.Y. June 29, 2016). These cases are irrelevant because NABP asks that the judicial notice be taken for the truth of the matters asserted and because res judicata is not at issue.

Finally, NABP cites *Jones* in which the court did ***not*** take judicial notice of a police report and information because they were not "facts appropriate for judicial notice" under Federal Rule of Evidence 201. 2015 WL 8362766, at *3. The documents were not integral to the complaint, incorporated into the complaint, or of common knowledge or derived from an unimpeachable source. *Id.* The court stressed that for purposes of Rule 201, a ***fact*** subject to judicial notice must be "beyond controversy" and that test is failed where the movant provides no explanation why judicial notice is appropriate given that high bar. *Id.* By contrast, and to illustrate the distinction between facts subject to judicial notice and materials not subject to judicial notice, the *Jones* court did take judicial notice of the simple ***fact*** of a certificate of disposition. *Id.*

NABP is not asking that judicial notice be taken of any document integral to, or incorporated by, the complaint. Nor is NABP asking that any fact be judicially noticed for background purposes, and it has not otherwise attempted to establish the propriety of judicial notice at all. The Court, therefore, should deny the request.

## II.   PHARMACYCHECKER HAS ARTICLE III STANDING TO VINDICATE ITS SUBSTANTIVE FEDERAL RIGHTS CONFERRED BY THE LANHAM ACT

To establish standing, a plaintiff must show that it has a redressable "injury in fact," i.e.*,* "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). NABP only challenges whether PharmacyChecker has a "legally protected interest" that is redressable—it is undisputed that PharmacyChecker's injury is sufficiently concrete, particularized, actual or imminent. NABP Br. at 1.

### A. The Lanham Act Provides PharmacyChecker with a Legally Protected Interest

#### 1. The Lanham Act confers a legally protected interest under federal law

The Lanham Act confers "a legally protected interest" in "any person" who believes that they are likely to be damaged by any "false or misleading description . . . or misrepresentation of fact" about their services or commercial activities. 15 U.S.C. §1125(a); *see Cottrell*, 874 F.3d at 164 (assuming that the language "legally protected interest" does any independent work in the standing analysis—and is not a "reformulation" of the traditional requirements—a "legally protected interest" may arise "solely by virtue of statutes creating legal rights, the invasion of which creates standing"). The Court already held that PharmacyChecker has sufficiently alleged that it is likely to be (and has been damaged) by NABP's false and misleading statements of fact in violation of the Lanham Act. Dkt. 129 at 63–69.

There is no dispute that is sufficient for purposes of Article III: a plaintiff suffers an injury in fact where "a competitor falsely advertises." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 449 (S.D.N.Y. 2012); *cf. Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 914 (2d Cir. 1988) ("[W]e conclude that appellants' alleged interest in benefiting from sales of generic propranolol is a legally protectible interest, even though appellants had no legal right to market their

10

product for post-MI treatment."); *see also Savvy Rest, Inc. v. Sleeping Organic, LLC*, No. 3:18CV00030, 2019 WL 1607585, at *2 (W.D. Va. Apr. 15, 2019) (allegations that plaintiff "suffered a loss of sales and goodwill as a result of [defendant]'s action" are sufficient for purposes of Article III standing to prosecute a Lanham Act claim); *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 609 (E.D. Pa. 2018) ("Plaintiff's Complaint alleges that Defendants' marketing and sale of their deceptively marketed spring water is damaging to the reputation and goodwill of Plaintiff, and that Defendants' actions hindered his sales. Thus, Plaintiff has sufficiently alleged a legally protected interest, and, thus, an injury-in-fact sufficient to confer standing.") (cleaned up).

### 2.   PharmacyChecker is not seeking to protect any interest in evading the law

NABP argues that this "legally protected interest" conferred by the Lanham Act ceases to exist if plaintiff runs "an illegal business, or one that facilitates illegal conduct." NABP Br. at 8. NABP cites no decision to the effect that facilitating, aiding or somehow encouraging illegality eliminates Article III standing, and PharmacyChecker is aware of none.

NABP's leading case is *Bell v. Redflex Traffic Systems, Inc.*, 374 F. App'x 518, 519 (5th Cir. 2010). That case is irrelevant: the plaintiffs there had no "legally protected interest" conferred by a federal statute (or any other law). They ran red lights, received traffic violations, and paid them. The violations were issued based on photographs taken by "red traffic light" cameras that the defendant operated without being properly licensed to do so. Plaintiffs sued defendant on the theory that their

admitted traffic violations would not have been discovered but-for the unlicensed photographs. The Fifth Circuit ruled that the plaintiffs lacked Article III standing because there is no cognizable "protected interest" in evading the law undetected or in a prosecution free from illegally obtained evidence (under local laws, illegally obtained evidence was admissible in traffic proceedings "and therefore the use of such evidence against appellants create[d] no injury"). *Id.* at 520.

NABP ignores that here, there **is** a federally-conferred right in the Lanham Act to have redress against competitors who falsely advertise harming the plaintiff's commercial activities or services. And PharmacyChecker is not suing to protect an interest in evading the law undetected. NABP Br. at 8. Its business is publicly run and, in fact, PharmacyChecker is well-known and publicly recognized as one of just a handful of companies that provides patients and policy makers with a resource that gives transparency to prescription drug prices in the United States and around the world. *See, e.g.*, WSJ article, dated July 11, 2022: *In Defense of Pharmacy Benefit Managers*. Dkt. 270-17 ("Companies such as GoodRx, PharmacyChecker, and SaveonMeds add transparency to the system and give patients the option to access affordable medication outside their pharmacy benefits.").

PharmacyChecker's verifications and price comparisons have been recommended and referenced by the New York Times, Wall Street Journal, AARP Magazine, Yahoo Finance, Kaiser Health News, and many others. Dkt. 271 ¶48. PharmacyChecker executives have testified before Congress regarding online

pharmacies, drug importation, prices, and safety.[2] Even a U.S. Senate staff report relies on data from PharmacyChecker.com.[3]

The FDA itself has directed the public to PharmacyChecker.com as a resource for real-time comparisons of U.S. and international drug prices. *See* NBC News article, dated Jan. 19, 2004: *Import drugs may cost more than generics.* Dkt. 270-40 at 2. And PharmacyChecker.com is recognized internationally as an authoritative resource for information about prescription drug prices worldwide. For example, in 2017, the World Health Organization published the "WHO Global Surveillance and Monitoring Systems for Substandard and Falsified Medical Products," wherein PharmacyCheckerBlog's data and analysis is cited as authority. *See* Dkt. 271 ¶15. Academic articles cite PharmacyChecker.com data, as do public interest organizations who advocate for changes to prescription drug laws.[4]

---

2.       *Role of Voluntary Agreements in the U.S. Intellectual Property System*: Hearing before the H. Judiciary Comm., Subcomm. on the Courts, Intellectual Property and the Internet (Sept. 18, 2013) (statement of Gabriel Levitt), *see* http://docs.house.gov/meetings/JU/JU03/20130918/101316/HHRG-113-JU03-Wstate-LevittG-20130918-U1.pdf (last accessed August 22, 2023).

3.       U.S. Senate Homeland Security & Gov't Affairs Comm. Staff Report, *Manufactured Crisis* at 4 ("Using PharmacyChecker.com, staff also reviewed price comparisons for specific brand-name drugs available through verified online pharmacies.").

4.       *See, e.g.,* Roger Bate, American Enterprise Institute, *Bing's Disservice to Online Drug Safety* (January 2019), http://www.aei.org/wp-content/uploads/2019/01/B%E2%80%8Cings-Disservice-to-Online-Drug-Safety.pdf; http://www.aei.org/wp-content/uploads/2019/ 01/B%E2%80%8Cings- The People's Pharmacy, *Paying Way Too Much for Foreign Made Meds* (Feb. 1, 2022), https://www.peoplespharmacy.com/articles/paying-way-too-much-for-foreign-made-meds (comparing average prices for identical brand-name medications based on PharmacyChecker.com information); Rochester Beacon, *Life-Threatening Costs* (Nov.

### 3. Caselaw involving controlled substances confirms PharmacyChecker's Article III standing

The other case that NABP cites is *Georgia Atlas, Inc. v. Turnage*, 594 F. Supp. 3d 1339, 1344–45 (N.D. Ga. 2022). But it is also irrelevant. There, the plaintiffs (would-be sellers of marijuana) sued state officials under Section 1983 challenging the officials' decision not to give plaintiffs a state license to sell marijuana. The court held that plaintiffs lacked standing because there is no federally recognized right to sell marijuana. One reason: marijuana is contraband *per se,* illegal for any purpose under federal law. *Id.*

*Georgia Atlas* does not stand for the broad proposition that an illegal business lacks Article III standing as a *per se* matter. Rather, it holds that a plaintiff must be able to point to a substantive right that has been violated to allege an injury-in-fact. *Id.* at 1346 ("Since Plaintiffs do not have a federal constitutional or statutory right to manufacture, distribute, or possess marijuana, having been denied a license to do so . . . is not an injury-in-fact sufficient to confer standing for their Section 1983 claims.").

To the extent that any controlled-substances caselaw is relevant, *Siva Enterprises v. Ott*, No. 2:18-cv-06881-CAS(GJSx), 2018 WL 6844714, at *5 (C.D. Cal. Nov. 5, 2018), is apt. There, defendants argued that plaintiffs had no Article III standing because their operation—selling cannabis—was completely illegal under federal law. The court disagreed: "plaintiffs have indeed alleged a legally cognizable

---

11, 2021), https://rochesterbeacon.com/2021/11/11/life-threatening-costs/ (discussing economics of U.S. drug prices using data from PharmacyChecker.com).

injury for purposes of Article III standing: that defendants misappropriated plaintiffs' proprietary business information and misused plaintiffs' identity and reputation." *Id.* These court ruled that these are substantive rights conferred by the Lanham Act and the Defend Trade Secrets Act (18 U.S.C. §1836), and their vindication does not involve the "actual production or sale of cannabis"—upholding plaintiff's constitutional standing. 2018 WL 6844714, at *5.

The same is true in *Greenwood v. Green Leaf Lab LLC*, No. 3:17-cv-00415-PK, 2017 WL 3391671 (D. Or. July 13, 2017). There, a defendant argued that the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* ("FLSA"), did not apply to his marijuana business. *Greenwood*, 2017 WL 3391671, at *2–3. The court rejected the argument because, in part, the Department of Justice, charged with prosecuting violations of the Controlled Substances Act, 21 U.S.C. §§801 *et seq.* ("CSA"), "has indicated that it [generally] will not prosecute medical marijuana companies." *Greenwood*, 2017 WL 3391671, at *5. And the court noted that Congress, too, had expressed a "tolerance" of state marijuana operations by prohibiting DOJ from using funds to stop the implementation of state marijuana programs. *Id.* at *7. Thus, the court found "no . . . conflict" in allowing plaintiff to prosecute a violation of the FLSA despite the illegality of defendant's operations. *Id.*

The same is true here. Congress has specifically declared that U.S. "patients" have "reason to import into the United States drugs that have been approved by the [FDA]." 21 U.S.C. §381(g); Prescription Drug Import Fairness Act of 2000, 114 Stat. 1549A-40 (Oct. 28, 2000). Congress has declared the Secretary of Health and Human

15

Services should use discretion to permit individuals to import prescription drugs for their own use that do not represent an unreasonable risk. 21 U.S.C. §384(j)(1) (general declaration to tolerate personal importation with no geographic limitation as to any particular foreign country). Congress also directed that "[t]he Secretary shall publish, and update as necessary, guidance that accurately describes circumstances in which the Secretary will consistently grant waivers on a case-by-case basis . . . so that individuals may know with the greatest practicable degree of certainty whether a particular importation for personal use will be permitted." 21 U.S.C. §384(j)(2).

The FDA has "guidance for personal importation of drug or device products."[5] And for prescription drugs, personal importation is permitted under the policy if certain factors apply including, for example, the product does not represent an unreasonable risk, the product is for personal use, and the quantity is not more than a three-month supply. *Id.* The FDA is the agency charged with prosecuting violations of the FDCA, but the FDA has, to PharmacyChecker's knowledge, not prosecuted a single individual for personal importation of a drug for which the patient had a prescription, and the FDA has suggested it has no intention to do so.[6] As to

---

[5]    FDA website, https://fda.gov/industry/import-basics/personal-importation.

[6]    FDA's website, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-imports ("FDA's personal importation policy provides guidance regarding situations where FDA does not intend to prevent the importation of an unapproved drug for personal use."); Michael McAuliff, *Trump Administration Seizing Cheaper Medications From Canada And Other Countries*, Health News Florida (June 18, 2018), https://health.wusf.usf.edu/health-news-florida/2018-06-18/trump-administration-seizing-cheaper-medications-from-canada-and-other-

PharmacyChecker itself, defendants subpoenaed the FDA for information pertaining to PharmacyChecker's business, and there was no indication that the FDA has ever reprimanded or sent any sort of warning letter to PharmacyChecker suggesting that it has violated any law. Dkt. 269-1 ¶83.

### 4.    The Court's prior comments on PharmacyChecker's operations

Previously, this Court disagreed with PharmacyChecker's statement that personal importation is usually illegal as a "technical" matter. MSJ Order at 57–58. But PharmacyChecker did not create that description: it is how government experts have described personal importation. *See, e.g.*, Congressional Research Service, *Prescription Drug Importation: A Legal Overview*, (December 1, 2008) ("[Personal importation] is ***technically*** a violation of the statute . . . .") (emphasis added);[7] Meredith Freed, et al., Kaiser Family Foundation, *10 FAQs on Prescription Drug Importation* (July 28, 2021) ("Even if the personal importation of a drug is ***technically*** illegal, current law directs the FDA to exercise discretion in permitting personal importation of drugs when the product is 'clearly for personal use, and does not appear to present an unreasonable risk to the user.' ") (emphasis added).[8]

In any event, PharmacyChecker does not believe that the Court ruled in its

---

countries (quoting an FDA spokesperson: "The FDA does not and would not prosecute an individual for buying medicines online for their personal use. . . . The product would be refused and no additional action would be taken against the individual.").

7.      https://www.everycrsreport.com/reports/RL32191.html (last visited Aug. 22, 2023)

8.      https://www.kff.org/medicare/issue-brief/10-faqs-on-prescription-drug-importation (last visited Aug. 21, 2023)

MSJ Order that PharmacyChecker is itself an unlawful business, as NABP contends. The Court did say that "it is not illegal for a U.S. business to receive some or even all of its revenue share from foreign entities. It is, however, illegal if this revenue stems from illegal activity (i.e., facilitating the purchase of foreign drugs the importation of which is prohibited by foreign law")." MSJ Order at 53. But the Court did not provide the statute or other law under which such conduct (if true) is illegal. And there is no evidence that the revenues at issue stem from drug purchases involving importations. The revenues stem from clicks to third-party websites whether or not a drug purchase or an importation is consummated. Dkt. 269-1 at 16–17. There is no law to PharmacyChecker's knowledge that makes such an informational service illegal and NABP cites none.

## B. The Injuries that NABP's False Advertising Caused PharmacyChecker Are Redressable

### 1. The cases cited by NABP have nothing to do with the redressability of PharmacyChecker's injury

NABP's challenges to redressability fare no better. NABP argues that "federal courts cannot remedy alleged harms to illegal ventures." NABP Br. at 10. In support it cites *Raines v. Byrd*, 521 U.S. 811 (1997), and *Gonzales v. Gorsuch*, 688 F.2d 1263 (9th Cir. 1982)—neither of which has anything to do with an allegedly illegal business. *Raines* involved members of Congress' lack of standing to challenge the Line Item Veto Act (2 U.S.C. §§691 *et seq.*), and *Gonzales* considered whether a citizen had standing to challenge the EPA's spending under the Federal Water Pollution Control Act (33 U.S.C. §1288 (1976)).

NABP also cites *Shulman v. Kaplan,* 2:19-CV-05413-AB (FFMx), 2020 WL

7094063 (C.D. Cal. Oct. 29, 2020). There, plaintiffs sought damages for defendant's scheme to take over plaintiff's business selling cannabis. The court held that any remedy would "contravene federal law under the CSA" which unequivocally makes it illegal to sell marijuana. *Id.* at *2. The court specifically distinguished a case like *Siva* in which the plaintiff ***could*** identify a legally protectible right (freedom from misappropriation and false statements) and its claims did "not involve the actual production or sale of cannabis." *Id.* And notably, the *Shulman* court dismissed Lanham Act claims—as a matter of statutory standing—that involved trademark misuse only because "the Lanham Act does not recognize the user's trademark priority or any derivative claims" when a trademark is used for a strictly illegal product—not because any purported "illegality" eliminates standing as a *per se* matter. *Id.* at *3.

At bottom, NABP cites no authority to support the idea that PharmacyChecker lacks standing with respect to injunctive relief and all of the damages caused by NABP's Lanham Act violations.

### 2. PharmacyChecker's injury is broader than that suggested by NABP or addressed in the summary judgment ruling

As another defect though, NABP mischaracterizes the injury for which PharmacyChecker is suing. NABP purports that PharmacyChecker's alleged injury is exclusively "attributable to reduced click fees." NABP Br. at 10. Presumably, NABP means "click fees" associated with U.S. users clicking through to foreign pharmacies—those are the clicks at issue in the MSJ Order.

But the complaint alleges more broadly that NABP's false statements have

19

caused a decrease in website visitors overall, including foreign-based traffic (irrelevant to the MSJ Order), and a decrease in participants in its U.S. online pharmacy accreditation program (same). AC ¶¶136–38. Nearly all website visitors—82%—never "click through" to any pharmacy. These visitors use the website as a comparative-price reference, for research, for policy advocacy, or as an educational tool (that is, without clicking through to any pharmacy at all). Dkt. 269 at 5.

In terms of accreditation revenues, regardless of the percentage-of-the-business allegedly "facilitating illegality," discovery could reveal that nearly all of PharmacyChecker's legal damages relate to PharmacyChecker's exclusion from the U.S. online pharmacy business—one fact (percentage of the business) does not necessarily dictate the other (the damages resulting from the anticompetitive conduct). Indeed, PharmacyChecker specifically alleges that NABP's conduct caused it to lose business with U.S. online pharmacies, including HealthWarehouse.com—one of the largest U.S. online pharmacies. HealthWarehouse.com left PharmacyChecker's verification program in 2017. *Id.* at 5–7.

NABP offers no valid reason why PharmacyChecker does not have Article III standing to prosecute this claim and, without discovery, PharmacyChecker does not have complete information about additional injury that PharmacyChecker suffered to its U.S.-based business (and PharmacyChecker does not need complete information at this stage). PharmacyChecker does know that, simultaneous with the conduct alleged, the number of U.S. pharmacies participating in PharmacyChecker's verification program dropped from 36 to 8. Dkt. 271 (Declaration of Gabriel Levitt,

dated July 20, 2022) ¶10.

Finally, even if the Court assumes that the "non-facilitating" slice of PharmacyChecker's business is small, the injury-in-fact element "is very generous to claimants, demanding only that the claimant allege some specific, identifiable trifle of injury." *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 584 (E.D. Pa. 2018) (cleaned up). Financial harm, even if minor, is a classic injury-in-fact. *Cottrell*, 874 F.3d at 163 ("[F]inancial harm is a 'classic' and 'paradigmatic form' of injury in fact . . . . 'Any monetary loss suffered by the plaintiff satisfies the injury-in-fact element; 'even a small financial loss' suffices . . . .' ").

## III. PHARMACYCHECKER SUFFICIENTLY PLED A LANHAM ACT CLAIM THAT SHOULD PROCEED TO DISCOVERY

NABP's second argument, that the MSJ Order forecloses PharmacyChecker's Lanham Act claim, seeks to override the complaint's allegations that NABP's statements were false. But the MSJ Order did not make findings that bear upon the falsity of NABP's statements as NABP has claimed.

To establish falsity, "a plaintiff must show that either: 1) the challenged advertisement is literally false, or 2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers." *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992). The determination of implied falsity is a question for the jury. *Id.* at 297–98. And if the defendant is found to have had the intent to deceive, a presumption of actual consumer deception arises, negating the need to show literal or implied falsity. *Merck*, 920 F. Supp. 2d at 417.

In denying the previous motion to dismiss, the Court divided the statements

alleged in the complaint into two categories: those about safety or risk, and those about legality. *See* Dkt. 129 at 64–65. The complaint alleges four NABP statements relating to the safety/risk statements about PharmacyChecker.com and PharmacyCheckerBlog.com on NABP's Not Recommended Sites List:

- The list "includes websites that 'are known to be unsafe' or that 'may: Dispense prescription medicine without a prescription; [d]ispense foreign or unapproved medicine; or Refer/link patients to sites that facilitate the dispensing of prescription medications in violation of state or federal law or NABP standards.' " AC ¶119.

- "Ordering drugs from these websites put you and your family at risk." *Id.*

- "The following sites are all known to be unsafe." *Id.* ¶¶121–22.

- "Using websites on the NRL to purchase drugs may put you or your loved ones at risk." *Id.* ¶123.

The Court found that these statements were "particularly likely to mislead because they appear to have a factual basis," and that the complaint alleged consumers were misled because the complaint alleges they "send a negative signal to search engines that a listed site is a risk to users" and "frighten consumers away from a listed site while directing them to NABP affiliates." Dkt. 129 at 66 (quoting AC ¶124). Indeed, the entire premise of these statements is that the websites on the "Not Recommended List" are rogue foreign pharmacy websites, and the summary judgment order only reinforces the complaint's allegations that NABP falsely

conflated PharmacyChecker with rogue foreign pharmacy websites. MSJ Order at 11 ("The Parties agree that PharmacyChecker itself 'is not a pharmacy and does not sell, dispense, or distribute drugs.' ").

The Court identified two statements relating to illegality:

- " 'Avoid [t]hese [w]ebsites' [on the Not Recommended Sites list] because they 'appear to be out of compliance with state and federal laws or NABP's patient safety and pharmacy practice standards.' " AC ¶119.

- "[W]ebsites on the list . . . are 'acting illegally or do not follow best practices.' " *Id.* ¶120.

The Court found that these statements adequately alleged implied falsity.[9] It pointed to allegations that "NABP conflates PharmacyChecker.com with 'illegal or rogue sites' that 'are located outside the U.S.' and are 'faking their licenses,' " and contradictory admissions by NABP that "clearly [PharmacyChecker] serve[s] a purpose, and [it] help[s] consumers, and we serve a different purpose, or maybe just slightly different.' " *Id.* (quoting AC ¶¶ 88, 131); *see also* AC ¶132 (alleging NABP has itself said there is "nothing wrong" with order prescription drugs from international pharmacies, as many cities and counties encourage it as part of their pharmacy benefit programs). Thus, the complaint adequately alleges (1) "motive to deceive because NABP competes with Plaintiff, and due to an inconsistency with NABP's prior statements," Dkt. 129 at 68 (citing AC ¶¶ 6, 88, 131), and (2) misconduct such that a jury "might conclude that NABP behaved egregiously." Dkt. 129 at 68–69

---

9.    And literal falsity as to PharmacyCheckerBlog.com. Dkt. 129 at 67.

(quoting *Merck Eprova AG v. Prothera, Inc.*, No. 08-CV-35(RMB) (JCF), 2010 WL 9098310, at *7 (S.D.N.Y. Oct. 20, 2010)).

The MSJ Order does not upend any of these conclusions or undermine the relevant factual pleadings, even considering the Court's summary judgment opinion that personal importation is generally unlawful or that PharmacyChecker's website makes it easier for U.S. consumers to find foreign pharmacies. The Court did not find that PharmacyChecker was "acting illegally"—indeed, PharmacyChecker has not been found to have violated any law, but that its business is "geared toward facilitating" the illegal conduct of others.[10] And even if the Court had in fact found that PharmacyChecker was acting illegally, that finding should not affect the Court's previous conclusions because it remains true that NABP conflated PharmacyChecker with a rogue foreign pharmacy website and that the complaint sufficiently alleges a motive and intentional deception by NABP, which NABP's motion fails to address entirely.

## CONCLUSION

For all these reasons, NABP's motion to dismiss for lack of subject matter jurisdiction and its motion for judgment on the pleadings should be denied.

---

10.     The Court previously observed that PharmacyChecker has not been accused of itself acting illegally. Sept. 11, 2019 Hr'g Tr. at 48.

Respectfully submitted,

DATED: August 22, 2023          BONA LAW PC

By:

*S/Aaron R. Gott*

AARON R. GOTT (admitted *pro hac vice*)

aaron.gott@bonalawpc.com
331 2nd Avenue South, Suite 420
Minneapolis, MN 55401

James F. Lerner
james.lerner@bonalawpc.com
287 Park Avenue South, Suite 422
New York, NY 10010

*Counsel for Plaintiff*
*PharmacyChecker.com LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of August, 2023, the foregoing Plaintiff's Opposition to National Association of Boards of Pharmacy's Motion to Dismiss PharmacyChecker's Lanham Act Claim was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record in this matter.

By: s/ *Aaron Gott*
Aaron Gott (admitted *phv*)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
aaron.gott@bonalawpc.com
(612) 284-5001