UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHARMACYCHECKER.COM LLC,

                              Plaintiff,

        v.

NATIONAL ASSOCIATION OF BOARDS
OF PHARMACY,

                              Defendant.

No. 19-CV-7577 (KMK)

OPINION & ORDER

Appearances:

Aaron Robert Gott, Esq.
Bona Law PC
Minneapolis, MN
*Counsel for Plaintiff*

James F. Lerner, Esq.
Bona Law PC
New York, NY
*Counsel for Plaintiff*

Matthew Robert Riley, Esq.
Bona Law PC
La Jolla, CA
*Counsel for Plaintiff*

Brian E. Casey, Esq.
Barnes & Thornburg LLP
South Bend, IN
*Counsel for Defendant*

Erik Thomas Koons, Esq.
Jana Irina Seidl, Esq.
Baker Botts LLP
Washington, DC
*Counsel for Defendant*

Rachel Johanna Adcox, Esq.
Axinn Veltrop & Harkrider, LLP
Washington, DC
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

PharmacyChecker.com ("PCC" or "Plaintiff") brings this Action against the National

Association of Boards of Pharmacy ("NABP" or "Defendant"), alleging that NABP falsely

advertised and promoted in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125 et seq.

(*See generally* Am. Compl. (Dkt. No. 82).)  Before the Court is NABP's Rule 12(c) Motion for

Judgment on the Pleadings.  (Not. of Mot. (Dkt. No. 376).)  For the foregoing reasons, NABP's

Motion is denied.

I.  Background

The Court assumes the Parties' familiarity with the facts and procedural history of this

case as described in its prior opinions.  *See PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of

Pharmacy* (*PharmacyChecker I*), 530 F. Supp. 3d 301 (S.D.N.Y. 2021); *PharmacyChecker.com

v. Nat'l Ass'n of Bds. of Pharmacy* (*PharmacyChecker II*), No. 19-CV-7577, 2023 WL 2973038

(S.D.N.Y. Mar. 28, 2023).  It recounts only the basic facts and history relevant to the instant

Motion.

A.  Factual Background

As a brief recap, PCC operates a website that accredits and provides comparative drug

price information for pharmacies in various jurisdictions around the world.  (Am. Compl. ¶¶ 27,

33.)  PCC receives a significant portion of its revenue from click-through fees that it charges for

referring visitors to accredited pharmacy websites.  (*See id.* ¶¶ 109–10.)  NABP is an association

of state pharmacy boards that operates as a competing accreditor.  (*Id.* ¶ 6.)  NABP publishes an

online "Not Recommended List" of websites that it claims are unsafe and illegal—a list that

2

includes PCC's website and blog.  (*Id.* ¶¶ 119–122.)  PCC alleges that statements about legality

and safety in the Not Recommended List were false and misleading, (*id.* ¶¶ 126–32), and that

they resulted in a substantial decrease in its click-through revenue, (*id.* ¶ 109).  The Amended

Complaint also pled a Sherman Act claim on a group-boycott theory arising out of similar facts.

(*Id.* ¶¶ 84–85, 104.)

   B.  Procedural History

   Earlier in this case, NABP joined a motion to dismiss PCC's Lanham Act and Sherman

Act Claims.  (Not. of Joint Mot. (Dkt. No. 97).)  The Court denied that Motion and, among other

things, held that PCC plausibly alleged that NABP's statements about its business were false and

misleading.  *PharmacyChecker I*, 530 F. Supp. 3d at 328, 351, 354.

   On June 22, 2022, NABP joined another motion, this time for summary judgment on

PCC's Sherman Act claim.  (Not. of Mot. (Dkt. No. 263).)  On March 28, 2023, the Court

granted that motion reasoning that PCC lacked antitrust standing—in other words, that the

antitrust laws were not designed to address PCC's claimed injury.  *PharmacyChecker II*, 2023

WL 2973038, at *30.  Both Opinions are discussed at length *infra*.

   On June 30, 2023, NABP filed a pre-motion letter in anticipation of the instant Motion

for Judgment on the Pleadings.  (Dkt. No. 364.)  PCC responded on July 13, 2023, (Dkt. No.

368), and the Court held a pre-motion conference on August 1, 2023, where it adopted a briefing

schedule, (*see* Dkt. (minute entry for Aug. 1, 2023)).  Pursuant to that schedule, NABP filed the

instant Motion on August 8, 2023.  (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Def's

Mem.") (Dkt. No. 377).)  Plaintiff responded on August 22, 2023.  (Resp. in Opp. to Mot. ("Pl's

Mem.") (Dkt. No. 378)), and NABP filed its reply on August 31, 2023, (Reply Mem. in Supp. of

Mot. ("Def's Reply") (Dkt. No. 380)).

## II.  Discussion

### A.  Standard of Review

NABP's Motion raises both jurisdictional and merits challenges.  "Where a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion."  *Doherty v. Bice*, No. 18-CV-10898, 2023 WL 5103900, at *3 (S.D.N.Y. Aug. 9, 2023) (quoting *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015)).  Otherwise, the Rule 12(b)(6) standard for a motion to dismiss applies.  *Id.*

### 1.  12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Biener v. Credit Control Servs., Inc*., No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*, 211 F.3d at 700–01).  "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

The Second Circuit has explained that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id*. at 56 (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id*. (alterations adopted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id*. at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, as NABP does here, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017). "If the extrinsic evidence presented by the defendant is material and controverted, the . . . [C]ourt will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

### 2.  12(b)(6)

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Accordingly, "[t]o survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (second alteration in original) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79, ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss [or a motion for judgment on the pleadings], a judge must accept as true all of the factual allegations contained in the complaint," *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, in adjudicating a Rule 12(c) motion, a court may consider the pleadings, their exhibits, statements, or documents incorporated by reference in the pleadings, "any matter of which [the court] can take judicial notice," and documents "integral" to the complaint. *120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co.*, No. 08-CV-6491, 2013 WL 12331487, at *4 (S.D.N.Y. Sept. 25, 2013) (citations omitted) (collecting cases).

B.  The Court's Summary Judgment Opinion

The instant Motion turns almost entirely on the Court's prior summary judgment Opinion & Order, (the "MSJ Opinion").  The Court's consideration of that Opinion is the subject of some contention.  The Parties debate both the scope of MSJ Opinion's holding and whether its findings are judicially noticeable for purposes of Rules 12(b)(1) and 12(c).

1.  The Court's Holding

In NABP's view, the MSJ Opinion held that PCC's business of referring consumers to foreign pharmacies is "itself illegal activity."  (*See, e.g.*, Def's Mem. 1 (quotation marks omitted).)  This assumption is the basis for NABP's standing challenge (that a court cannot redress injury to an illegal business, (*id.* at 7–11)), and its Lanham Act challenge (that its own statements about illegality and safety are true, (*id.* at 11–17)).  In essence, NABP believes that the law of the case requires a result in its favor.  (*See id.* at 7.)  PCC responds that the MSJ Opinion did not make this finding, (Pl's Mem. 6–8), and that the Court should not strictly adhere to the law of the case in this situation, (*id.* at 5–6).

7

The law of the case doctrine states that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)); *see also Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (stating that the law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decision prior to final judgment" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))). Here, "the Court need not decide here whether the law of the case doctrine applies to prevent or compel" adherence to the MSJ Opinion because the Court did not actually hold what NABP thinks it did. *See Broecker v. N.Y.C. Dep't of Educ.*, No. 21-CV-6387, 2023 WL 2710245, at *8 (E.D.N.Y. Mar. 30, 2023) (emphasis omitted).

The relevant portion of the MSJ Opinion decided a narrow issue: whether the "concept of antitrust standing" operated to bar PCC's Sherman Act claim. *PharmacyChecker II*, 2023 WL 2973038, at *12–13 (quotation marks omitted). Antitrust standing—a species of "statutory" standing—is distinct from the Article III case-or-controversy analysis. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("'[S]tatutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014))); *see also Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 112, 114, 118 (2d Cir. 2021) (referring to antitrust standing as a type of "statutory standing"). It asks only whether the plaintiff's alleged injury is "of the type the antitrust laws were intended to prevent." *In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 440 (S.D.N.Y. 2015) (citation omitted). In that analysis, the Court did not

consider Article III standing.  *See generally PharmacyChecker II*, 2023 WL 2973038.  Nor did it examine whether Plaintiff plausibly alleged a Lanham Act claim.  *Id.*[1]

Next, while the Court did consider a so-called illegality defense, it did not conclude that PCC's business violated federal law.  The Court applied a line of cases holding that a plaintiff "cannot plead an antitrust injury" if its enterprise is "illegal, or completely or almost completely geared toward facilitating illegality."  *PharmacyChecker II*, 2023 WL 2973038, at *13 (citation omitted).  It began by finding that "*personal importation* of prescription drugs is illegal under current federal law."  *Id.* at *24 (emphasis added).  It then explained that PCC's business "makes easier the illegal conduct at issue" by referring US consumers to foreign pharmacy websites, and therefore was not the type of activity that the antitrust laws were intended to protect.  *Id.* at *29 (quotation marks omitted).  Semantic similarity aside, the Court at no point decided that PCC, itself, violated federal law or that PCC engaged in something akin to criminal facilitation.[2]  The Parties agreed then, as they do now, that PCC "itself is not a pharmacy and does not sell, dispense, or distribute [unapproved] drugs."  *Id.* at *5 (quotation marks omitted).

---

[1] The Court did examine FDA guidance regarding the safety of foreign drugs.  *See, e.g.*, *PharmacyChecker II*, 2023 WL 2973038, at *28.  And although it compared that guidance to PCC's website, *see id.* at *24, 28, it made no findings about PCC's falsity allegations.

[2] NABP quotes this Court's statement that "facilitation" "does not require actual proof of purchases," apparently arguing that PCC engaged in illegal facilitation.  (*See* Def's Mem. 9 n.2.)  *See also PharmacyChecker II*, 2023 WL 2973038, at *29.  This argument is faulty for two reasons.  First, that portion of the MSJ Opinion examined the *purpose* of PCC's business, not whether it actually facilitated illegal imports.  *See PharmacyChecker II*, 2023 WL 2973038, at *12 (reiterating NABP's argument that "PCC's 'primary mission' is to facilitate . . . unlawful importation").  Second, NABP has not adduced evidence of facilitation.  While the *facilitator* need not have purchased anything, there must still be an underlying violation that it helped bring about.  *See United States v. Hansen*, 599 U.S. 762, 771 (2023) ("Facilitation . . . is the provision of assistance to a wrongdoer with the intent to further an offense's commission . . . [and] requires that a wrongful act be carried out[.]"  (citations omitted)).  NABP points to no such violations in its Motion.

NABP cites various sentences where it believes the Court went further, but it mischaracterizes the MSJ Opinion.  For instance, NABP asserts that "the Court held that [PCC's] click fee revenue is unlawfully derived because it 'stems from illegal activity[.]'"  (Def's Mem. 1 (quoting *PharmacyChecker II*, 2023 WL 2973038, at *25); *see id*. at 2 (discussing "PCC's illegal click fee revenue").)  Even assuming that PCC has been engaged in a distinct violation of federal law because it received illegally derived profits, a finding the Court does not make, that issue was not before the Court.  Indeed, as PCC notes, NABP put forward no evidence that "the revenues at issue stem from drug purchases involving importations."  (Pl's Mem. 18.)  Put differently, while PCC received nearly all its revenue from sending consumers to foreign pharmacies, NABP did not tie those funds to illegal imports.  Analogous cases about illegally derived profits all require some nexus to proscribed conduct.  *See PharmacyChecker II*, 2023 WL 2973038, at *29–30 (collecting cases stating similar nexus requirement); *S.E.C. v. Mortenson*, No. 04-CV-2276, 2013 WL 991334, at *4 (E.D.N.Y. Mar. 11, 2013) (stating disgorgement of fraudulently derived funds is appropriate for "profits causally connected to the violation" (citation omitted)); *see also United States v. Kaufman*, No. 21-2589, 2023 WL 1871669, at *6 (2d Cir. Feb. 10, 2023) (summary order) (explaining, in criminal forfeiture case, that government must prove "by a preponderance of the evidence" that funds were "'proceeds . . . obtained directly or indirectly, as a result of' [a] criminal violation" (quoting 18 U.S.C. § 982(a)(2))); *Graham v. Prince*, 265 F. Supp. 3d 366, 388 (S.D.N.Y. 2017) (explaining, in copyright case, that there must be a "nexus" between the illegally derived "profits" and the alleged "infringement").  If NABP later puts forward such evidence, the Court could then undertake the complex task of determining the extent of PCC's ill-gotten gains.  *See, e.g.*, *S.E.C. v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (noting the "difficulty of determining with

certainty the extent to which a defendant's gains resulted from his frauds"). Outside the illegally-derived-profits issue, the other statements and "[a]dmissions" NABP cites all reinforce the Court's limited holding. (*See, e.g.*, Def's Mem. 17 ("PCC's enterprise is completely or almost completely geared toward facilitating illegality." (internal quotation marks omitted) (quoting *PharmacyChecker II*, 2023 WL 2973038, at *30)); *id.* ("[PCC] is, at a minimum, aware of [its] effort to contravene the American pharmaceutical statutory scheme.").)[3]

To sum up, the Court held that PCC lacked antitrust standing; it did not examine Article III standing; it did not hold that PCC's business, itself, violates federal law; and it did not consider PCC's Lanham Act allegations. Accordingly, the Court agrees with PCC that the MSJ Opinion is not "law of the case" as to any of the issues raised in NABP's Motion. (*See* Pl's Mem. 5–8.)

## 2. Judicial Notice

In order to leverage statements in the MSJ Opinion, NABP also contends that the Opinion is subject to judicial notice. (Def's Mem. 7.) There is no dispute that a court may take notice of its own opinions and records, *see, e.g.*, *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL 3636672, at *7 (S.D.N.Y. June 29, 2016); (Pl's Mem. 8; Def's Mem. 7), but the Parties disagree about the *scope* of that notice. NABP relies on the Opinion's substantive conclusions, (*see, e.g.*, Def's Reply 4–6), while PCC argues that those same conclusions may only be considered for their "existence," not the "truth of the matter asserted," (Pl's Mem. 8).

---

[3] PCC's purported admission in Oregon district court is not to the contrary. (*See* Def's Reply 2 n.1.) Indeed, PCC's position in that case appears to be entirely consistent with its arguments here. (*See generally* Decl. of Erik T. Koons in Supp. of Mot., Ex. 1 (Dkt. No. 381); *see also id.* at 6 ("PharmacyChecker has not itself done anything that is illegal under federal law.").)

This is a peculiar question to say the least.  On face, it seems obvious that a Court can consider the truth of its own findings later in a case.  But that intuition does not square with Rule 12(c), which strictly limits the documents a Court may consider, *see Feliz v. Magill*, No. 20-CV-6392, 2023 WL 5803741, at *1 (S.D.N.Y. Sept. 6, 2023), and the associated limits on judicial notice.  For instance, there is considerable support for PCC's existence/truth limitation in the context of documents filed in other courts.  *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, No. 17-CV-2738, 2018 WL 4445150, at *5 (E.D.N.Y. Sept. 18, 2018) ("[F]actual findings in other court proceedings are generally not subject to judicial notice."); *see also Mattsson v. Pat McGrath Cosms. LLC*, No. 21-CV-5187, 2022 WL 21778342, at *6 n.2 (S.D.N.Y. July 11, 2022) ("Even if the [c]ourt were to consider the [extrinsic evidence], the [c]ourt could not . . . rely on [it] 'for the truth of the matters asserted therein . . . .'" (emphasis omitted) (quoting *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020) (summary order))); *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 74 (E.D.N.Y. 2016) (denying the defendant's request for judicial notice of selected quotes from a decision in a different court).[4]  An opinion by a court in the *same* case may be entitled to more weight because the parties have had the opportunity to "test the accuracy" of the underlying evidence, *see Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger*

---

[4] In Reply, NABP cites *Skippers & Maritime Services Ltd. v. KfW*, No. 06-CV-7041, 2008 WL 5215990, at *3 (S.D.N.Y. Dec. 8, 2008), where the court purportedly relied on the substance of a prior California district court opinion in deciding a 12(c) motion the same case post transfer.  (Def's Reply 3–4.)  But that case supports PCC's position.  There, the California district court denied a 12(b)(1) motion to dismiss on jurisdictional grounds.  *Skippers*, 2008 WL 5215990, at *3.  When the defendant later moved for judgment on the pleadings raising merits arguments, the plaintiff protested that the 12(c) motion was an improper attempt to relitigate the earlier motion to dismiss.  *Id*.  Judge Jones considered the substance only to note that the 12(b)(1) opinion's jurisdictional holding did not "preclude [the court] from examining whether it [could] grant the relief sought."  *Id*.  The Court could easily make the same move here and consider the substance of the MSJ Opinion only to explain why it does not dictate the outcome of this Motion.

*U.S.A., Inc.*, 146 F.3d 66, 71 (2d Cir. 1998) (quoting *Oneida Indian Nation of N.Y. v. State of New York*, 691 F.2d 1070, 1086 (2d Cir.1982)), but neither Party has provided an on-point case.[5]

The lack of authority on this issue may have something to do with the posture of this Motion.  NABP previously proposed, and the Court approved, a phased discovery schedule where the Parties would first conduct limited discovery on "the legality of [PCC's] business model."  (*See* Proposed Case Mgmt. and Sch. Order at 3 (Dkt. No. 163); Order (Dkt. No. 167) (adopting phase 1 of the discovery schedule).)  NABP maintained that a phased approach was efficient because "[i]f PCC's business is predominantly geared towards facilitating illegality, NABP will be able to move for *summary judgment* that its alleged statements about legality and risk are truthful . . . ."  (Proposed Case Mgmt. and Sch. Order, App. B (Def's Statement in Supp. of Phased Discovery) at 1 n.2 (Dkt. No. 163-2) (emphasis added).)  Exactly that scenario has come to pass, but despite completing discovery, NABP chose to move for judgment on the pleadings instead.

Without speculating about NABP's motivation, the Court has concerns about this approach.  The conclusions on which NABP relies are based entirely on evidence in the summary judgment record.  *See PharmacyChecker II*, 2023 WL 2973038, at *25–30.  To the

---

[5] The Parties also do not discuss whether the standard is different for 12(c) and 12(b)(1) motions.  At least some authority indicates that it is appropriate to consider extrinsic documents for their truth in a jurisdictional challenge.  *See Donoghue v. Astro Aerospace Ltd.*, No. 19-CV-7991, 2020 WL 6802844, at *1 (S.D.N.Y. Nov. 19, 2020) (considering SEC filing "for the truth of the matter in resolving a Rule 12(b)(1) motion" (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010–11 (2d Cir. 1986) ("Under Rule 12(b), a 'speaking' motion, i.e., a motion that includes evidentiary matters outside the pleadings, is properly converted to a Rule 56 motion only when it is made under Rule 12(b)(6): failure to state a claim.  However, when, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."))); *see also Morrison*, 547 F.3d at 170 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings.").  This lends support to NABP's arguments with respect to its standing challenge.

extent NABP is attempting to rely on that record evidence, it should move for summary

judgment.  *See Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) ("If, on a motion

under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by

the court, the motion must be treated as one for summary judgment . . . [and] [a]ll parties must be

given a reasonable opportunity to present all the material that is pertinent to the motion."

(quoting Fed. R. Civ. P. 12(d)).  Likewise, allowing parties to bootstrap 12(c) motions with

record evidence risks circumventing the summary judgment procedure and runs afoul of the

conversion provision of Rule 12(d).  *See Lively*, 6 F.4th at 302 n.2 (explaining that, without

limitations on incorporation by reference in 12(c) motions, "the conversion clause of [Rule

12(d)] would be too easily circumvented and disputed documents attached to an answer would

have to be taken as true at the pleadings stage" (alteration in original) (citing *Horsley v. Feldt*,

304 F.3d 1125, 1134 (11th Cir. 2002))).

 Those concerns are ample reason to exclude extrinsic evidence.  *See Kouakou v.

Fideliscare N.Y.*, 920 F. Supp. 2d 391, 396 & n.7 (S.D.N.Y. 2012) (declining to consider

"anything 'submitted by either party, by affidavit or otherwise, outside of the complaint and

answer,'" in 12(c) motion even though case proceeded to discovery (alterations adopted)

(quoting *Viacom Int'l Inc. v. Time Inc.*, 785 F. Supp. 371, 375 (S.D.N.Y. 1992)); *see also Robert

v. Cent. Intel. Agency*, No. 02-CV-6788, 2018 WL 1598611, at *1 n.1 (E.D.N.Y. Mar. 31, 2018)

(declining to consider materials that "significantly postdate[]" the pleadings (citation omitted)).

However, given the lack of authority on this issue and the already-limited scope of the MSJ

Opinion's holding, the Court assumes, without deciding, that it may consider the MSJ Opinion's

substantive conclusions.  As explained below, that assumption does not alter the Court's holding.

### C.  Analysis

With the proper construction of the MSJ Opinion in mind, the Court considers NABP's

standing and merits arguments.

#### 1.  Standing

Article III of the Constitution restricts the federal judicial power to the resolution of

"Cases" and "Controversies."  U.S. Const. art. III, § 2.  Under Article III, "a case or controversy

can exist only if a plaintiff has standing to sue."  *United States v. Texas*, 599 U.S. 670, 675

(2023); *accord TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To satisfy that bedrock

requirement, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection

between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be

redressed by a favorable decision.'"  *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d

Cir. 2023) (quoting *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022)).  An injury in fact, in

turn, means "an invasion of a legally protected interest," *Spokeo, Inc. v. Robins*, 578 U.S. 330,

339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), that is "concrete

and particularized" and "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at

560 (quotation marks omitted).

NABP appears to concede that PCC has alleged an injury.  (Def's Mem. 1.)  It

nevertheless argues that, because PCC's business is illegal, any injury is not a redressable

"invasion of a *legally* protected interest."  (Def's Mem. 8 (emphasis in original).)[6]  PCC

responds that the Lanham Act confers such an interest, and that it is not attempting to "protect"

---

[6] NABP's legally protected interest and redressability arguments merge for the purposes
of this analysis.  The former argument states that an "[a]lleged injury to an illegal business" is
not a sufficient "interest" for injury-in-fact purposes.  (Def's Mem. 8.)  And the latter argument
maintains that courts cannot "remedy alleged harms to illegal ventures."  (*Id.* at 10.)  Both sides
of that standing coin turn on the relevant business' legality.

any illegal activity.  (Pl's Mem. 9–13.)  Although illegal activity may undermine standing in some cases, that caselaw does not apply here.

For the sake of clarity, there is no question that PCC has plausibly alleged an injury in fact.  It claims that NABP's statements resulted in poor search ratings, reduced business, and ultimately reduced revenue.  (Am. Comp. ¶¶ 109–10, 113.)  That sort of "monetary harm[]" is among "[t]he most obvious . . . traditional tangible harms," and it "readily qualif[ies] as [a] concrete injur[y] under Article III."  *See TransUnion LLC*, 594 U.S. at 425; *see also Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 534 (2d Cir. 2020) ("'Any monetary loss suffered by the plaintiff satisfies' [the injury-in-fact] requirement." (quoting *Carter*, 822 F.3d at 55)).  Courts thus have "no difficulty finding [a plaintiff] has suffered an injury" in similar Lanham Act cases where "a competitor" makes false statements about the plaintiff's business.  *See Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 449 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014).[7]

The Parties' dispute instead focuses on the independent effect, if any, of the "legally protected injury" language in *Spokeo* and *Lujan*.  The caselaw on that phrase is very thin and does not come to a firm conclusion about its role in the standing analysis.  As a helpful Third Circuit case notes, "[t]he Supreme Court has not defined the term 'legally protected interest' as it pertains to Article III standing, nor has it clarified whether the term does any independent work

---

[7] PCC's Opposition can be read to suggest that standing exists simply because the Lanham Act creates a legal right.  (Pl's Mem. 10–11.)  That argument was squarely rejected in *TransUnion*, which held that "plaintiffs cannot establish Article III standing by relying entirely on a statutory violation" without any "concrete harm."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (citing and applying *TransUnion*, 594 U.S. at 440–42).  Here, of course, PCC does allege such a harm.  The Court simply clarifies that the Lanham Act cannot confer standing on its own.  *See Maddox*, 19 F.4th at 64; *see also Spokeo*, 578 U.S. at 341 (rejecting argument that injury-in-fact exists "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

in the standing analysis." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017).  Indeed, "[b]etween *Lujan* and *Spokeo* [], it [did] not appear[] with regularity" and "[a] host of the [Supreme] Court's standing opinions have omitted the term altogether."  *Id.* at 163–64; *see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent . . . ."); *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (formulating standing as requiring "a litigant [to] demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent"); *see also Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023) (making no mention of the phrase); *Texas*, 599 U.S. at 670 (same); *TransUnion*, 594 U.S. at 413 (same). Some courts have therefore concluded that the "legally protected interest" language "is simply a reformulation of the other components of injury in fact."  *Cottrell*, 874 F.3d at 164; *Jud. Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 363 (D.C. Cir. 2005) (Williams, J., concurring) (suggesting "legally protected" means that "the interest affected be a *cognizable* one" (emphasis in original)); *DePuy, Inc. v. Zimmer Holdings, Inc.*, 384 F. Supp. 2d 1237, 1240 (N.D. Ill. 2005) (Posner, J., sitting by designation) ("Probably all the [Supreme] Court meant was just that not any old injury can satisfy Article III . . . .").  *But see Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc) ("We believe . . . that this term has independent force and meaning[.]").  Although the Court is not aware of an on-point Second Circuit case, multiple decisions appear to use "legally protected interest" in that same, limited sense.  *See, e.g.*, *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (stating first element of Article III standing is "injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'" (citation omitted)); *Fulton v. Goord*, 591 F.3d 37, 41 (2d Cir. 2009) (explaining that a plaintiff must allege "an injury in fact, by which is meant an invasion of a

legally protected interest" (quotation marks omitted)).  The Court is thus skeptical that it should

add another step to the standing analysis.  But given the inconclusive caselaw, the Court puts

those doubts aside and considers NABP's argument.

Assuming "legally protected interest" does do some work, NABP argues it bars recovery

for injury to "an illegal business."  (Def's Mem. 8.)  It cites various cases that largely stand for

the proposition that plaintiffs cannot recover for injuries arising out of conduct that violates the

law.  In *Bell v. Redflex Traffic Sys., Inc.*, 374 F. App'x 518, 520 (5th Cir. 2010) (per curiam), for

instance, a plaintiff claimed he was injured by having to pay a traffic citation and sued the

company whose traffic camera caught him.  That plaintiff lacked standing because his "interest

in evading the law"—and not paying a fine—was not "legally protected."  *Id*.  NABP also cites a

few cases holding that individuals "have no legally protected interest in selling" contraband.  *See*

*Ga. Atlas, Inc. v. Turnage*, 594 F. Supp. 3d 1339, 1344 (N.D. Ga. 2022); *see also Shulman v.*

*Kaplan,* 19-CV-5413, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (finding remedy for

"lost profits" from plaintiff's "cannabis cultivation operation" "would contravene federal law").[8]

The argument is perhaps best summed up in a leading civil procedure treatise:  "Standing would

not be recognized for a smuggler who asserted that his drug traffic was disrupted.  Although the

smuggler had been injured in fact, and the inspection procedures might indeed be unlawful, the

---

[8] PCC suggests this caselaw is distinguishable because the plaintiffs did not seek to
vindicate substantive rights secured by a federal statute.  (Pl's Mem. 14–15.)  It cites two FLSA
cases—involving alleged violations by state-sanctioned marijuana businesses—which held that
there is "no inherent conflict between the FLSA's requirements and the [Controlled Substances
Act's] prohibition of marijuana."  *Siva Enters. v. Ott*, No. 18-CV-6881, 2018 WL 6844714, at *5
(C.D. Cal. Nov. 5, 2018) (quoting *Greenwood v. Green Leaf Lab LLC*, No. 17-CV-415, 2017
WL 3391671, at *2–3 (D. Or. July 13, 2017)).  This is an interesting distinction; and it may be
that *if* the "legally protected interest" language has independent force, such an interest may exist
"solely by virtue of statutes creating legal rights."  *See Fulton*, 591 F.3d at 41 (citation omitted).
But it is unnecessary to consider now as the no-standing-for-illegal-businesses principle does not
apply here in the first place.

asserted interest is not one the courts will protect."  13A C. Wright, A. Miller, & E. Cooper, Fed.

Prac. & Proc. Juris. § 3531.4 (3d ed. 2023) (footnote omitted).

So construed, this principle does not bar PCC's suit.  The cases and examples cited by

NABP all involve plaintiffs who violated, or planned to violate, federal or state law.  *See Bell*,

374 F. App'x at 520 ("Appellants do not allege that they were improperly cited for traffic

violations[.]"); *Ga. Atlas*, 594 F. Supp. 3d at 1344 (plaintiffs sought to "grow[] or sell[]

marijuana," a substance that is "contraband per se" under the Controlled Substances Act (italics

omitted));  *Shulman,* 2020 WL 7094063, at *2 ("Plaintiffs damages under RICO are inextricably

intertwined with their cannabis cultivation[.]").  The Court has not held, and NABP has not

proven, that PCC has engaged in such illegal activity.  *See supra* § II.B.1.  The Parties agree that

PCC—unlike the businesses in *Georgia Atlas* and *Shulman*—does not dispense proscribed drugs.

*PharmacyChecker II*, 2023 WL 2973038, at *5.  And contra *Bell*, PCC is not suing to recoup

fines imposed for its illegal acts.  *See* 374 F. App'x at 520.  At this point, PCC simply seeks to

remedy textbook economic harm.  *See TransUnion*, 594 U.S. at 425.  NABP may renew this

argument at summary judgment if it discovers evidence linking PCC's profits to illegal imports.

But at this stage, PCC has adequately alleged a compensable injury to its business.

Given this holding, the Court need not address PCC's arguments about possible

exceptions to the no-standing-for-illegal-businesses rule, (*see* Pl's Mem. 14–17), or its argument

that NABP mischaracterized the scope of the alleged injury, (*see id*. at 19–21).

## 2.  PCC's Lanham Act Claim

To succeed on a § 43(a) Lanham Act claim, "a plaintiff must establish that the message at

issue is '(1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and

(4) the cause of actual or likely injury to the plaintiff.'"  *Souza v. Exotic Island Enters., Inc*., 68

F.4th 99, 118 (2d Cir. 2023) (quoting *Church & Dwight Co. v. SPD Swiss Precision Diagnostics,*

*GmBH*, 843 F.3d 48, 65 (2d Cir. 2016)).  The Court previously held that PCC plausibly alleged false statements regarding the "safety and risk" and "[]legality" of its business. *PharmacyChecker I*, 530 F. Supp. 3d at 351–54.  The Court considered the exact same allegations that NABP challenges here—under the exact same standard—and denied NABP's motion to dismiss.  *See id.*  (Pl's Mem. 21–24; *compare PharmacyChecker I*, 530 F. Supp. 3d at 351–54, *with* Def's Mem. 12–13).

Defendant argues that the Court's summary judgment findings now warrant a different conclusion.  (*See* Def's Mem. 11–17.)  PCC responds that it is not appropriate either to disrupt this Court's prior ruling, (Pl's Mem. 21–24), or to consider the MSJ Opinion in deciding this Motion.  Although evidence in the summary judgment record obviously bears on PCC's Lanham Act claim, (*see* Def's Reply 8–10), this is the wrong posture in which to consider it.

First, NABP has not explained why the Court should revisit its prior opinion.  (*See* Pl's Mem. 21–23.)  Under the now-familiar law of the case doctrine, the Court's Motion To Dismiss ruling (the "MTD Opinion") "forecloses reconsideration of [the] issues that were decided" absent "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009)); *accord Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 49–50 (2d Cir. 2019) (summary order) (explaining this standard applies "when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court" (citation omitted)).  One of the "issues decided" here was whether, based on "the four corners of the [Amended] [C]omplaint," PCC plausibly stated a Lanham Act claim.  *See PharmacyChecker I*, 530 F. Supp. 3d at 327, 351, 356 (citation omitted).  The Court held that it did.  *Id.* at 354.

As to safety and risk, this Court determined that:

> Plaintiff has adequately alleged that consumers were misled.  In particular, Plaintiff has alleged that [NABP's] statements "send a negative signal to search engines that a listed site is a risk to users" and "frighten consumers away from a listed site while directing them to NABP affiliates." ([Am. Compl.] ¶ 124.)  It has also alleged that these signals have "had a profound negative effect on consumer web traffic to its website." (*Id*. ¶ 136; *see also id*. ¶ 109 (alleging declines in site traffic from search results and click-through revenue).)

*PharmacyChecker I*, 530 F. Supp. 3d at 352.  Likewise, PCC adequately alleged that NABP's statements about legality were impliedly false because they "conflate[] PharmacyChecker.com"—which is not *itself* illegal—"with 'illegal or rogue sites' that 'are located outside the U.S.'" *Id*. at 353 (quoting Am. Compl. ¶ 131).  NABP barely mentions that decision and does not argue that the MSJ Opinion is reason to reconsider it. (*See generally* Def's Mem.).

Even if the Court imports the MSJ Opinion's findings, they do not override the MTD Opinion.  In general, "[b]ecause of the divergent standard of review applicable to motions to dismiss and motions for summary judgment," the Court's findings at one stage are "inapposite" to its analysis at the other.  *See Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 647 (S.D.N.Y. 2015) (quoting *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009)); *see also Nobel Ins. Co. v. City of New York*, 00-CV-1328, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) (collecting cases).  That holds true here.  As explained above, the MSJ Opinion did not decide that PCC's business is "illegal," and it did not pass on the plausibility of PCC's falsity allegations.[9]  To the extent NABP seeks to draw inferences from the MSJ Opinion—or use it as

---

[9] In Reply, NABP argues that PCC's alleged injury predates its placement on the Not Recommended List.  (Def's Reply. 7–8.)  In contrast to NABP's other arguments, this one relies solely on evidence in the summary judgment record as opposed to statements in the MSJ Opinion.  (*See id*.)  Because PCC has not had an opportunity to controvert that evidence with its own "supporting materials," the Court will not consider it.  *See Chen v. Arts Nail Putnam Valley*

*evidence* to rebut PCC's allegations of falsity—it may not do so in a motion for judgment on the

pleadings.  *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 468 (S.D.N.Y. 2020)

(declining to draw "inferences in [a defendant's] favor" from judicially noticeable documents);

*see also In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, No. 20-CV-5615, 2021 WL

4481215, at *27 (S.D.N.Y. Sept. 30, 2021) (noting a court cannot "draw inferences in [a

d]efendant's favor on a motion to dismiss").

      NABP's arguments instead demonstrate what this Court reiterated numerous times in the

MTD Opinion: "conclusions drawn on the pleadings may not necessarily hold" in later phases of

the case.  *PharmacyChecker.com I*, 530 F. Supp. 3d at 338; *id*. at 354 ("NABP may raise the

same arguments at summary judgment should Plaintiff be unable to present evidence that

NABP's speech actually misled consumers[.]"); *id*. at 345–46 ("[Defendants'] various

protestations that [Plaintiff] will not be able to prove its allegations will have to wait for

summary judgment[.]" (quoting *Consumers Warehouse Ctr., Inc. v. Intercounty Appliance

Corp.*, No. 05-CV-5549, 2007 WL 922423, at *4 (E.D.N.Y. Mar. 26, 2007)).  As before, NABP

remains free to raise its arguments in a motion under Rule 56.  But right now, nothing separates

the instant Motion from the mine run of cases where courts deny "successive motions seeking

the same relief."  *See Meehan v. Brookliv LLC*, No. 21-CV-2573, 2022 WL 523545, at *1

(E.D.N.Y. Feb. 22, 2022); *see also Carnagie Inst. of Wash. v. Fenix Diamonds, LLC*, 544 F.

Supp. 3d 440, 451 (S.D.N.Y. 2021) ("The Court rejects plaintiffs' disguised motion for

reconsideration, which identifies no legal or factual basis for departing from the law of the

case."); *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, No. 10-CV-4062, 2011 WL 1899730, at *4

---

*Inc.*, No. 14-CV-3037, 2017 WL 3017712, at *1 (S.D.N.Y. July 14, 2017) (choosing to exclude
additional material and consider motion "based on the complaint alone" where the non-movant
could not present its own evidence).

(S.D.N.Y. May 13, 2011) (rejecting summary judgment motion as "thinly disguised attempt to relitigate issues" already lost on motion to dismiss).

### III.  Conclusion

For the foregoing reasons, NABP's Motion is denied without prejudice to its ability to file a summary judgment motion on Plaintiff's Lanham Act claim.  The Court will hold a telephonic status conference on April 3, 2024 at 11:00 AM.

SO ORDERED.

Dated:   March 20, 2024
         White Plains, New York

_____
                KENNETH M. KARAS
              United States District Judge