UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PharmacyChecker.com LLC,

                    Plaintiff,

              -against-

National Association of Boards
of Pharmacy et al.,

                    Defendants.

-------------------------------------------------------------------X

19-cv-7577-KMK-VR

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

Currently before the Court is a motion by Defendant National Association of

Boards of Pharmacy (NABP) under Rule 37(e) for sanctions against Plaintiff

PharmacyChecker.com LLC. For the reasons below, the motion is **GRANTED in

part and DENIED in part**.

**BACKGROUND**

Plaintiff is an organization that provides consumers with comparative drug

pricing information from domestic and international pharmacies. (ECF No. 82 at

4).[1] It started this action in August 2019 against Defendants—various nonprofit

organizations and private entities associated with drug pricing—alleging that they

violated the Sherman Act and conspired to exclude Plaintiff from the marketplace

by "using shadow regulation." (ECF No. 1 at 1–2). Plaintiff also alleged that it was

blacklisted by Defendants, which negatively impacted the ability of consumers to

---

[1] All page numbers for documents filed on ECF refer to ECF pagination.

discover it through the Internet. (ECF No. 82 at 12–14). For example, Plaintiff alleged that it was placed on NABP's list of "Not Recommended Sites" and NABP then "reached private agreements with key gatekeepers . . . , including Internet search companies such [as] Google and Bing[,] to incorporate NABP's Not Recommended Sites list" into aspects of their search engine rankings and/or results. (*Id.* at 32–40).

In August 2021, the case was referred to a Magistrate Judge for general pretrial purposes. (ECF No. 175).[2] During what the parties have called "phase 1 discovery," Plaintiff produced at least one report of monthly organic Internet traffic data for its website that was broken down by the specific search engine source of the traffic.[3] And Plaintiff provided as much for the time period from January 2015 to August 2021. (ECF Nos. 464-1; 498-1 at 2; 498-4 at 2–4).

The parties then raised a dispute to Magistrate Judge Paul Davison about the production of additional traffic data much later. (ECF Nos. 417 at 1 & n.1; 418-1 at 5–11). Judge Davison ordered Plaintiff to produce reports with generalized, high-level traffic data that accounted for sources beyond the organic search engine sources it produced earlier, and Plaintiff complied. (ECF Nos. 417 at 1 & n.1; 418-1

---

[2] The case was initially referred to Magistrate Judge Paul Davison, but it was reassigned to the undersigned in May 2023. (ECF entry for May 31, 2023).

[3] At the most recent discovery conference with the Court on September 11, 2025, the parties differed in their memories about the negotiations leading up to that production. Plaintiff's current counsel was not party to those negotiations so he could not say whether production of the data by search engine source was specifically discussed. Defense counsel represented that the data by search engine source was the subject of much negotiation, which resulted in its production in that granular format. But there is no letter or email memorializing this either way. In any case, there is no dispute that the report with granular data by search engine source was produced in September 2021 during phase 1 discovery.

at 5–11).[4] But the data produced was not broken down to the granular level like Plaintiff's initial report in 2021. (ECF Nos. 417 at 1 & n.1; 418-1 at 5–11).

In March 2022, Plaintiff became aware that the platform it used to track website traffic data, Google's Universal Analytics platform, was being replaced by a new platform called Google Analytics 4. Plaintiff was informed that any data maintained on the Universal Analytics platform would not be available after July 1, 2024. (ECF No. 465 at 2). In an effort to preserve data from Universal Analytics before it went offline, one of Plaintiff's I.T. employees began downloading portions of Plaintiff's data from the platform. (*Id.* at 2–3). The employee was aware of the instant litigation and previously worked to generate the traffic data reports Plaintiff produced earlier in discovery in response to Judge Davison's order. (*Id.*). Without direction from Plaintiff's counsel, the employee began downloading reports from Universal Analytics that he believed were relevant to this action, a determination that was based on the reports he generated previously and his belief that the reports he was downloading would provide a "comprehensive view of the overall traffic" to Plaintiff's website. (*Id.* at 3–4).

In April 2024, NABP served Plaintiff with a request for production (RFP) seeking, among other things, all documents and Electronically Stored Information (ESI) related to Plaintiff's website traffic, "lost [w]ebsite traffic" from being placed on NABP's Not Recommended Sites list, and alleged damages. (ECF Nos. 415-1).

---

[4] No written order detailed the explicit directions of Judge Davison's order, but both parties confirmed the general content of the order at the Discovery Conference with the undersigned on September 11, 2025.

After the parties met and conferred on the topic, Plaintiff agreed to "refresh" the traffic data reports from before and produced a series of spreadsheets that were updated versions of spreadsheets produced earlier in discovery. (ECF Nos. 487 at 8; 490 at 6–7). But the data was not broken down to the granular level of specific search engines. (ECF Nos. 487 at 8; 490 at 6–7).

A dispute arose regarding the updated reports and NABP submitted a pre-motion letter in March 2025 after attempts to resolve the dispute through a meet-and-confer process were unsuccessful. (ECF No. 417). NABP sought a pre-motion conference with the Court to compel Plaintiff to produce, among other things, "a report showing monthly web traffic volume by source." (*Id.* at 1). NABP argued that the traffic data report should be produced because it was relevant and easy to generate. (*Id.* at 1–2). According to NABP, the report was relevant because Plaintiff "injected the source of its alleged lost web traffic" into the litigation by alleging that web traffic from Google and Bing, specifically, dropped after Plaintiff was purportedly blacklisted. (*Id.* at 2). And it was not burdensome for Plaintiff to generate the report because it already generated and produced other files from the same database; it was just a matter of exporting the data. (*Id.*).

Plaintiff opposed the pre-motion letter (ECF No. 424), arguing that NABP's RFP was untimely and sought website visitor activity while visitors perused the site, not information about the source of the website's traffic. (*Id.* at 1–2). It also argued that it should not have to create new evidence by generating a report from a dynamic database (*id.* at 1) and highlighted that it had produced a report showing

website traffic volume by month. (*Id.* at 2). The Court scheduled a Discovery Conference for April 11, 2025, to resolve the dispute. (ECF No. 426).

At the conference, during a colloquy with the Court about Plaintiff's ability to produce a granular traffic data report like the kind sought by NABP, Plaintiff admitted that it could do so. (ECF No. 489 at 14). The Court issued its findings on the record from the bench, and concluded that the granular traffic data was relevant, it was not burdensome for Plaintiff to produce a report for the time period requested, and querying a dynamic database like Universal Analytics was not forcing Plaintiff to generate new evidence against itself. (*Id.* at 15–17). The Court granted NABP's motion to compel and directed Plaintiff to produce a report with traffic data for the requested period that broke down the source of traffic by the specific search engine involved. (*Id.*). The Court later issued an order to that effect. (ECF No. 428).

Plaintiff subsequently produced the report, but it was missing granular traffic data for a 19-month period from September 2021 through May 2023. (ECF No. 498-1). Plaintiff explained that this gap was based on the way the data was downloaded from Universal Analytics before it went offline. Only the overall traffic data was downloaded for this period; the granular data was never downloaded, and it could no longer be reproduced with Universal Analytics gone. (ECF No. 463 at 1–2). At the time of the April 2025 Discovery Conference (on NABP's motion to compel), Plaintiff mistakenly believed that the granular traffic data for those 19 months had been retained and was capable of being produced. NABP then

submitted a premotion letter seeking a conference regarding a motion for spoliation sanctions against Plaintiff (ECF No. 449), which Plaintiff opposed. (ECF No. 463). The Court issued an order that waived the requirement for a premotion conference, directed NABP to file its motion for sanctions, and provided a briefing schedule. (ECF No. 480).

NABP now moves to sanction Plaintiff for allegedly allowing 19 months of traffic data to be destroyed (ECF No. 487), and it seeks to prohibit Plaintiff and its experts "from relying on or presenting testimony, evidence, or arguments relating to Google or Bing search traffic" during that 19-month period; to permit itself "to present evidence of [Plaintiff's] destruction of evidence at summary judgment and at trial;" a special jury instruction about the traffic data that was allegedly destroyed; and reasonable costs and fees associated with the instant motion for sanctions and its prior motion to compel. (*Id.* at 24). Plaintiff opposes the motion. (ECF Nos. 490–91).

The Court scheduled a Discovery Conference for September 11, 2025, to ask additional questions to both parties. (ECF No. 495). The parties were also directed to submit a joint exhibit to the Court before the conference to aid the Court in "understanding (1) the total volume of website traffic data from all organic search engine sources from 2015 to 2025 and (2) the specific volume of website traffic from Google and Bing, as compared to other search engines, during those same periods where such data is available." (ECF No. 495). The joint exhibit contained line graphs plotting search engine traffic data for all organic sources, Google, Bing, and

all other search engines, (ECF No. 498-1; 498-3), and spreadsheets providing the

actual data points that were used to generate the line graphs. (ECF Nos. 498-2; 498-

4).

## DISCUSSION

The spoliation of Electronically Stored Information (ESI) is governed by Rule

37(e), and whether to issue sanctions under this rule falls within the court's

discretion. *See Barbera v. Grailed, LLC*, 24-cv-3535 (LJL), 2025 WL 2098635, at *8

(S.D.N.Y. July 25, 2025) ("Sanctions under this rule are 'entrusted to the court's

discretion.'" (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015

amendment)). Before issuing any such sanctions, a court must determine that:

(1) the information lost was ESI, (2) the lost ESI should have been preserved by the

party opposing sanctions, (3) the party who lost the ESI "failed to take reasonable

steps to preserve it," (4) the lost ESI "cannot be restored or replaced through

additional discovery," and (5) the party seeking spoliation was prejudiced by the

ESI's loss. Fed. R. Civ. P. 37(e)(1); *see Kosher Ski Tours Inc. v. Okemo Ltd. Liab.

Co.*, 20 CV 9815 (VB), 2024 WL 3905742, at *2 (citing Fed. R. Civ. P. 37(e)(1)).

Here, it is undisputed that the lost traffic data was ESI, should have been

preserved,[5] and cannot be restored or replicated. The parties only dispute whether

---

[5] The Background section of Plaintiff's opposition papers suggests that it may be disputing whether it had a duty to preserve the data in granular form. (ECF No. 490 at 6–7). But the Court views this as more of an issue about the reasonableness of the steps Plaintiff took to preserve the data and the foreseeability of the need to preserve it in granular form. Notably, Plaintiff's central argument focuses on whether NABP suffered prejudice, and not its duty to preserve.

Plaintiff took reasonable steps to preserve the granular traffic data and whether NABP was prejudiced by its loss. The Court addresses both issues in turn.

## I.    <u>Whether Plaintiff took reasonable steps</u>

NABP argues that Plaintiff failed to take reasonable steps to preserve the granular traffic data for the 19-month period because it never downloaded the data, despite knowing that it would become irretrievable once the Universal Analytics platform ceased operation. (ECF No. 487 at 18–19). NABP argues further that its RFP put Plaintiff on notice that it needed to download the granular traffic data. (*Id.*; ECF No. 494 at 5–6).

Plaintiff argues in opposition that it took reasonable steps because it did download traffic data for the entire 19-month period, just not by search engine source. (ECF No. 490 at 6). According to it, the data's form or level of detail does not render their actions unreasonable. (*Id.*). Plaintiff also argues that it took reasonable steps because NABP failed to ask for the refreshed reports to include granular data, despite having prior reports with similar levels of detail. (*Id.* at 6–7). And the reports that Plaintiff did refresh were precisely the ones that Judge Davison ordered later in discovery, making it reasonable for Plaintiff to assume that the more high-level data would be sufficient. (ECF No. 490 at 6–8).

Whether a party took reasonable steps to preserve lost ESI is equivalent to a negligence inquiry, i.e., did the party do what a reasonable person would have done in a similar situation. *See Leidig v. Buzzfeed, Inc.*, 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017) (holding reasonable steps analysis

under Rule 37(e) "equate[s] to roughly a negligence standard"). But that determination is heavily dependent on the facts, circumstances, and context of the litigation. *See Oakley v. MSG Networks, Inc.*, No. 17-cv-6903 (RJS), 2025 WL 2061665, at *5 (S.D.N.Y. July 23, 2025) ("[W]hat constitutes reasonable steps under Rule 37(e) is subject to interpretation in the context of specific litigation and is highly dependent on the facts and circumstances of a particular matter." (internal quotation marks and citation omitted)).

Here, Plaintiff failed to take reasonable steps to preserve the granular traffic data. In its operative complaint, Plaintiff alleged that being blacklisted by NABP caused its website to lose organic Internet traffic, and it identified specific search engines (Google and Bing) in making those allegations. (ECF No. 82 at 18–19, 41–42, 49). And in line with those allegations, during phase 1 of discovery, Plaintiff produced at least one report with granular traffic data by search engine. (ECF Nos. 464-1; 498-1 at 2; 498-4 at 2–4). Thus, it was reasonable to expect that website traffic data broken down by search engine would remain relevant and necessary to Plaintiff's ability to prove its claims (and NABP's ability to rebut them) at summary judgment or trial. *See Medcenter Holdings Inc. v. Web MD Health Corp.*, 734 F. Supp. 3d 303, 309 (S.D.N.Y. 2024) (finding plaintiff failed to take reasonable steps to preserve ESI because evidence from database was "absolutely critical" to plaintiff's trade secrets claims); *Kosher Ski Tours Inc.*, 2024 WL 3905742, at *3 (finding party failed to take reasonable steps because it "knew or should have

known" lost emails "were relevant or potentially relevant" to plaintiff's breach of contract claims).

The failure to take reasonable steps is also evident from how events unfolded after Plaintiff became aware of Universal Analytics going offline. Plaintiff's employee downloaded whatever data he personally believed was relevant to the litigation (ECF No. 465 at 2–3), despite Plaintiff being in possession of NABP's April 2024 RFP when the download occurred. And Plaintiff's counsel conceded at the September 2025 Discovery Conference that no attorney worked with the employee to determine what was necessary. No affirmative steps were taken to strategize, develop, and execute an initial assessment of what must be downloaded. No affirmative steps were taken to contact opposing counsel and ensure everyone agreed about the ramifications of losing access to the platform. And no subsequent steps were taken to routinely and periodically follow-up on the preservation of the granular data. All of these failures, viewed together, rise to the level of negligence that constitutes a failure to take reasonable steps. *See Oakley*, 2025 WL 2061665, at *5–6 (finding party failed to take reasonable steps to preserve text messages because party's attorneys failed to take affirmative steps to clone phone at commencement of litigation and failed to take follow-up steps to ensure preservation throughout litigation); *Medcenter Holdings Inc. v. Web MD Health Corp.*, 692 F. Supp. 3d 81, 97–98 (S.D.N.Y. 2023) (finding party failed to take reasonable steps because "it provide[d] no intelligible explanation" for why lost ESI could not have been downloaded before party lost access to database where it was

stored), *amended by Medcenter Holdings Inc. v. Web MD Health Corp.*, 734 F. Supp. 3d 303 (S.D.N.Y. 2024).

Lastly, it was reasonable for Plaintiff to expect that it would need to retain granular traffic data. Not only did Plaintiff's complaint include allegations about granular traffic data from Google and Bing, but at least one of the initial reports Plaintiff produced was broken down at this granular level. And when the parties discussed NABP's desire to refresh the reports produced earlier, it was reasonable for Plaintiff to expect that NABP wanted updated versions of *all* prior reports, not just the overall traffic data reports ordered by Magistrate Judge Davison later in discovery. Although both parties should have been more precise in defining their expectations of what would be updated,[6] as the lone party in control of the ESI, Plaintiff should have been more proactive and diligent in ensuring it was producing the proper reports, particularly given its knowledge about the data's imminent loss. *See EBIN N.Y., Inc. v. SIC Enter., Inc.*, 19-CV-1017 (PKC) (TAM), 2022 WL 4451001, at *9–10 (E.D.N.Y. Sept. 23, 2022) (finding party failed to take reasonable steps to inform others to retain key messages, because it was foreseeable that lack of formal retention policy could lead to deletion).

---

[6] At the September 2025 Discovery Conference, it became apparent that the parties' discussion regarding what reports would be refreshed and updated lacked precision. Plaintiff's counsel stated his understanding was that refreshed "data" meant only the reports Magistrate Judge Davison ordered to be produced, whereas NABP's counsel stated that he understood "data" to mean every report ever produced in the litigation thus far. Much of this protracted motion practice might have been avoided if the parties had been clearer at the start about what spreadsheets would be updated and had made certain to discuss this before the database went offline.

II.    <u>**Whether NABP suffered prejudice**</u>

NABP argues that it was prejudiced by the loss of the more granular traffic data because that data is "central" to Plaintiff's claims, Plaintiff's damages, and NABP's defenses. (ECF No. 487 at 20–21). According to NABP, all three of those items are targeted towards, and tied to, specific search engines (Google and Bing). (*Id.*). NABP also argues that without data broken down to the level of individual search engines, it cannot challenge the assertions by Plaintiff and its experts; it cannot demonstrate that any purported drop in internet traffic was caused by other, confounding factors. (*Id.* at 21–23).

Plaintiff argues in opposition that NABP was not prejudiced because the missing data represents only a small piece of the overall dataset (ECF No. 490 at 12), and that Plaintiff's own experts did not rely on that granular data. (*Id.* at 11–12). Plaintiff also argues that no prejudice occurred because NABP's experts did not rely on the granular data either and were still able to rebut the opinions of Plaintiff's experts. (*Id.* at 9–13).

In reply, NABP reiterates, among other things, that it was prejudiced by the loss of the granular traffic data because it cannot challenge the claims and damages asserted by Plaintiff and the opinions of its experts. (ECF No. 494 at 6–10).

The text of Rule 37(e) does not define what constitutes sufficient prejudice to justify sanctions under the rule; instead, it "leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. But courts have concluded that the

prejudice determination includes analyzing how important the lost ESI was to the litigation. *See Oakley*, 2025 WL 2061665, at *6 (stating that "'an evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation.'" (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment) (internal brackets omitted)). And neither party bears the burden of demonstrating prejudice under the rule. *See Kosher Ski Tours Inc.*, 2024 WL 3905742, at *2 ("Rule 37(e) 'does not place a burden of proving or disproving prejudice on one party or the other.'" (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment)).

Here, NABP was prejudiced by the loss of granular traffic data for the 19-month period. As explained above, the granular traffic data is relevant to Plaintiff's claims and would have helped NABP in defending against them. For example, to the extent Plaintiff argues that their website traffic from Google and Bing dropped during this period, NABP lacks data to identify specifically which traffic came from Google and Bing compared to all other organic search engine traffic. Although Plaintiff chooses to rely on overall search engine traffic to support its claims, that does not define the limits of what may be relevant and necessary to NABP's defenses. That is sufficient to find prejudice. *See Oakley*, 2025 WL 2061665, at *7–8 (finding party prejudiced by lost text messages because they "would have supported [defendant's] defenses" by "undermin[ing plaintiff's] version of events" in intentional tort action); *Kosher Ski Tours Inc.*, 2024 WL 3905742, at *4 (finding

prejudice where lost chat messages and emails were relevant to Plaintiff's breach of contract claims and would have aided defendant's defense of them).

Yet, the prejudice NABP suffered may not be as great as it claims. NABP argues that it is now unable to cross-examine Plaintiff's experts about the missing granular traffic data and the bases for Plaintiff's damages during that period. (ECF No. 487 at 22–23). But that is not entirely accurate. NABP can still cross-examine and question those experts about the reliability and certainty of their conclusions, given that granular data no longer exists. (ECF Nos. 455-2 at 6–7; Dep. Tr. of Pl.'s Expert Witness Jonathan Hochman) (questioning Plaintiff's search engine expert witness at deposition about veracity of conclusion and opinion on traffic loss based on absence of specific data). And, in fact, NABP has made similar arguments in its *Daubert* motions to exclude these experts altogether. (ECF Nos. 455 at 1–3). Thus, NABP can still strategically attack and cast doubt on the opinions and testimony of Plaintiff's experts, perhaps with more ammunition than if NABP had the missing data in hand.

NABP also received a substantial amount of granular traffic data that spans from January 2015 to April 2025, (ECF No. 498-1; 498-2; 498-3; 498-4), with the missing data only accounting for some of that time period. NABP can still rebut Plaintiff's assertions and challenge its claims using the data it has.[7] And the evidence of any confounding factors that might impact changes in search engine

---

[7] For instance, NABP may choose to highlight trends presented in the data for other months to interpolate the missing data or cast doubt on its reliability. The situation is analogous to a jigsaw puzzle with a few pieces missing. The larger image of the puzzle may still be visible, despite the holes.

traffic during any given period largely exists outside the search traffic data in any case. It may be that NABP's proof on confounding factors could have been more persuasive if correlated to the missing granular data. But the large portion of granular traffic data NABP does possess somewhat lessens the prejudice it suffered. *See EBIN N.Y., Inc.*, 2022 WL 4451001, at *10 (finding party suffered "relatively minimal" prejudice because it had "at least a portion" of lost mobile messages); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 15cv9363 (ALC) (DF), 2018 WL 1512055, at *12–15 (concluding party prejudiced, "although not as significantly as it would claim," because it was able to acquire "meaningful evidence" through additional discovery).

## III.  <u>Properly curing the prejudice</u>

When it is determined that a party seeking sanctions was prejudiced, a court is still limited by Rule 37(e) in the relief it may impose. Rule 37(e) does not explicitly define what relief is allowed, but a court may only order "'measures no greater than necessary to cure the prejudice.'" *MedCenter Holdings Inc.*, 734 F. Supp. 3d at 310 (quoting Fed. R. Civ. P. 37(e)(1)). An appropriate sanction may be the exclusion of "a specific item of evidence," whereas precluding a party from offering any evidence in support of a central claim or defense is considered severe and inappropriate. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. But a court need not "adopt measures to cure every possible prejudicial effect." *Id.*

NABP seeks an order that, among other things, (1) prohibits Plaintiff and its experts "from relying on or presenting testimony, evidence, or arguments relating to Google and Bing search traffic" during the period of 19 months where there is no granular traffic data; (2) allows NABP to present evidence of Plaintiff's "destruction of evidence" at summary judgment and trial, and a related special jury instruction about the missing data; and (3) awards attorneys' fees and costs to NABP for the prior motion to compel made in March 2025, the premotion letter seeking a conference regarding a motion for sanctions, and the instant motion for sanctions. (ECF No. 487 at 24). The Court addresses each of these proposed sanctions below.

### A. Preclusion of evidence

NABP's predominant request seeks to restrict Plaintiff's ability to present any evidence relating to Google and Bing search traffic during the 19-month period where granular data no longer exists. Generally speaking, precluding a party from relying on a specific piece of evidence may be an appropriate sanction under Rule 37(e)(1). *See Medcenter Holdings Inc.*, 734 F. Supp. 3d at 313 (S.D.N.Y. 2024) (precluding plaintiff from offering "any evidence relying on or derived from the data" lost from database). And NABP's request is appropriately limited to cover only the 19-month period where Plaintiff has no granular traffic data; it does not seek to prohibit reliance on data outside that timeframe.

But to the extent NABP seeks to preclude Plaintiff from offering any evidence on liability and damages at all during this 19-month period, the Court declines to do so. Such measures "would be greater than necessary to cure the prejudice" to NABP.

*Cf. Oakley*, 2025 WL 2061665, at \*8 (declining to preclude plaintiff "from asserting or introducing any evidence that he was pushed to the ground" by defendants in intentional tort action because sanction too severe for Rule 37(e)(1)). It is certainly true that the precise amount of search engine traffic attributable to Google and Bing during this 19-month period is unavailable. And this lack of data may hinder NABP's ability to calculate the precise damages, if any, that would be attributable to Google and Bing. But to preclude Plaintiff from making *any* argument on liability and damages attributable to Google and Bing during this period would ignore the eight and half years' worth of granular data that was produced. (ECF No. 498; 498-1—498-4). As the parties conceded during the September 2025 Discovery Conference, the produced data shows that most of the total organic search traffic comes from Google for every period such data was measured.[8] (ECF No. 498-1; 498-3). For the missing data to look vastly different from all other years would defy logic and mathematical probabilities. Indeed, in some ways the "missing" data gives NABP a stronger argument against Plaintiff's damages and experts than if the data had been produced.

Thus, to remedy the prejudice outlined above, the Court will not go so far as to preclude Plaintiff and its experts from relying on or presenting *any* testimony, evidence, or arguments about Google and Bing search engine traffic for the missing

---

[8] For Bing, the produced data shows that (apart from Google) Bing traffic is similar to all other search engine traffic combined, but may not be as easily distinguishable. (ECF No. 498-1; 498-3). Perhaps there is some discernible pattern that the Court fails to see. In any case, even Plaintiff's counsel admitted during the September 2025 Discovery Conference that the search engine traffic attributable to Bing is "negligible" as compared to Google.

period. *See Medcenter Holdings Inc.*, 692 F. Supp. 3d at 97, 101 (crafting remedy by allowing party to rely on and present evidence of data that was "still intact," but prohibiting party from relying on data it did not have access to). Instead, when presenting such evidence, Plaintiff must make clear that any Google and Bing search engine traffic and related damages for this missing period are an approximation or estimate derived from the data available, which does not include granular data by search engine.[9]

As noted above, the lack of granular data necessarily means that any drop in search engine traffic and related damages attributable to Google or Bing during the missing period cannot be measured directly by NABP with precision and can be based only on estimates, approximations, or interpolations from the existing data. Those estimates are not impossible and could be based on the years' worth of granular data already produced, among other things. But Plaintiff should not be allowed to present Google and Bing search engine traffic and related damages during this missing period as if they were certain and precise, when the specific data to contradict that evidence is unavailable to NABP.[10]

---

[9] The Court understands that Plaintiff's experts may have chosen to rely on the overall organic search engine traffic for all periods, not just the missing 19-month period. This may beg the question of whether Plaintiff's testimony or evidence in other periods should be accompanied by a similar caveat about estimation and approximation. But for the avoidance of doubt, the Court's ruling above does not weigh-in on that question or otherwise limit Plaintiff's ability to present its analysis as it chooses for those other periods.

[10] Of course, NABP is still free to cross-examine Plaintiff's experts about the missing data and whether it impacts the reliability and certainty of the damages sought.

## B. Evidence of loss of data and related jury instruction

NABP's request to present evidence about Plaintiff's loss of granular traffic data for that 19-month period is also appropriate under the rule. Again, this sanction is explicitly contemplated under Rule 37(e)(1), and it "ensure[s] that the finder of fact will have the full context for the evidentiary imbalance that will become apparent at trial." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 69 (S.D.N.Y. 2020) (granting party's request to present evidence about opposing party's loss of emails); *accord Oakley*, 2025 WL 2061665, at *8 (similar regarding evidence of lost text messages).

If this case is tried to a jury, NABP may also seek an appropriate jury instruction about the lost data, the wording and scope of which will be at the discretion of the trial judge. *See Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 69 (allowing party to seek jury instruction about lost evidence in the event of jury trial). As other courts have noted, the contours and scope of any jury instruction are better determined by the trial judge on a full evidentiary record. *Id.* (noting that "it is the trial judge who must determine the precise scope of the spoliation evidence to be permitted at trial and craft any related jury instructions on a full evidentiary record"); *see also Lokai Holdings,* 2018 WL 1512055, at *17 (permitting injured party to seek jury instruction, in a form to be approved by district judge, as sanction under Rule 37(e)(1)).

C. **Attorney's fees and costs**

Attorneys' fees and costs are also a sanction contemplated by Rule 37(e)(1), and courts have regularly awarded as much when a party is prejudiced. *See Oakley*, 2025 WL 2061665, at *8 (awarding attorneys' fees and costs associated with bringing motion for sanctions and pursuing additional discovery); *Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67–68 (similar). Here, such a sanction would be warranted as NABP has likely incurred significant attorney's fees and costs in analyzing Plaintiff's spoliation and obtaining this opinion. Thus, NABP is entitled to the attorneys' fees and costs it incurred in making the instant motion for sanctions and in filing the premotion letter that preceded it.

But the Court will not award NABP's attorneys' fees and costs associated with the prior motion to compel. That motion would have been made regardless of Plaintiff's spoliation and ultimately did result in Plaintiff's production of several years' worth of granular data. Plaintiff's counsel also clarified that at the time NABP made its motion to compel, counsel was unaware that some of the requested data was no longer available. Thus, awarding attorney's fees and costs associated with the prior motion to compel would impose a sanction greater than necessary to cure the prejudice to NABP. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (awarding attorneys' fees because it "ameliorate[d] the economic prejudice imposed on the defendants," "serve[d] as a deterrent to future spoliation," and was "no more severe than is necessary to cure the prejudice to the defendants").

## <u>CONCLUSION</u>

For the reasons above, Defendant National Association of Boards of Pharmacy's motion for sanctions is GRANTED in part and DENIED in part.

NAPB shall submit one or more declarations evidencing its recoverable fees and costs no later than **October 10, 2025**. All sums requested must be supported by admissible evidence, including properly authenticated copies of counsel's relevant time and expense records. Plaintiff may file a response, limited to the amount of NABP's recoverable fees and costs, by no later than **October 24, 2025**.

The Clerk of Court is directed to close the gavel associated with ECF No. 485.

**SO ORDERED.**

DATED:      White Plains, New York
                September 25, 2025


_____
VICTORIA REZNIK
United States Magistrate Judge