UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHARMACYCHECKER.COM LLC,

*Plaintiff*,

v.

NATIONAL ASSOCIATION OF BOARDS
OF PHARMACY, *et al.*,

*Defendants*.

No. 7:19-CV-7577 (KMK)

OPINION & ORDER

KENNETH M. KARAS, United States District Judge:

On August 6, 2025, Counsel for PharmacyChecker.com LLC ("Plaintiff") requested to

seal a portion of Exhibit B filed in connection with its Response to NABP ("Defendant")'s Pre-

Motion Letter for Summary Judgment.  (*See* Req. to Seal Ex. B to Pl.'s Resp. to Def.'s Pre-Mot.

Letter for Summ. J. (Dkt. No. 467); Req. to Seal Ex. B to Pl.'s Resp. to Def.'s Pre-Mot. Letter

for Summ. J. (Dkt. No. 468) (collectively "Pl.'s Req.").)  The request was not opposed.  (*See*

*generally* Dkt.)  For the reasons explained herein, Plaintiff's Request is granted.

## I.  Discussion

### A.  Governing Law

Determining whether the public has a right of access to documents in a case, or whether

those documents may instead remain under seal, is a multi-step process governed by

constitutional and common law.  Under the First Amendment, the public has a strong

presumptive right of access to certain judicial documents, as well as a weaker presumptive right

to all judicial documents under common law.  *See Newsday LLC v. County of Nassau*, 730 F.3d

156, 163 (2d Cir. 2013) ("Federal courts employ two related but distinct presumptions in favor of

public access to court proceedings and records:  a strong form rooted in the First Amendment and a slightly weaker form based in federal common law."); *see also United States v. Amodeo*, 71 F.3d 1044, 1047–49 (2d Cir. 1995) ("*Amodeo II*") (discussing and analyzing the presumption of access under common law).

In deciding whether the common law right applies, the Court first evaluates whether the document is a "judicial document," that is, "a filed item that is relevant to the performance of the judicial function and useful in the judicial process."  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quotation marks omitted); *see also United States v. Greenwood*, 145 F.4th 248, 254 (2d Cir. 2025) ("The common law right of public access turns on whether the document at issue is a judicial document, to which the common law presumption applies.").  If the Court finds the document is a "judicial document," it next determines the weight of the presumption.  *See Amodeo II*, 71 F.3d at 1049 ("As one moves along the continuum, [determined by the role of the material in the exercise of Article III power and the value of such information to those monitoring the courts] the weight of the presumption declines."); *see also Bernstein*, 814 F.3d at 142–43 ("Once the court has determined that the documents are judicial documents . . . it must determine the weight of that presumption.  The weight . . . is a function of (1) the role of the material . . . in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts[.]" (quotation marks and citations omitted)).  The Court then balances competing considerations— for instance, the "danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure"—against the presumption of disclosure.  *Amodeo II*, 71 F.3d at 1050.

2

The First Amendment right of access applies to "certain judicial documents." *Greenwood*, 145 F.4th at 255.  Courts follow "two different approaches" to determine "whether the First Amendment right applies to particular material." *Newsday*, 730 F.3d at 164.  Under the "'experience and logic' approach," a court asks whether the documents "have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quotation marks and citation omitted).  In the alternative, a court may consider the extent to which the documents "are derived from or are a necessary corollary of the capacity to attend the relevant [court] proceedings." *Id.* (quotation marks and citation omitted, alteration adopted).  Under either approach, if the First Amendment right applies, the moving party must demonstrate that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest." *Bernstein*, 814 F.3d at 144.

Materials submitted in support of a motion, even when commercially sensitive, are properly considered judicial documents.  *See Graczyk v. Verizon Commc'ns, Inc.*, No. 18-CV-6465, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (concluding contracts submitted in support of a motion "plainly" were judicial documents); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07-CV-2014, 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents . . . .").  This is particularly true when the filed materials are "explicitly referred to, and quoted" by a party and form "one of the key grounds" for a party's argument.  *Olson v. Major League Baseball*, 29 F.4th 59, 88 (2d Cir. 2022).

Courts in this district "routinely permit parties to seal or redact commercially sensitive information to protect confidential business interests and financial information." *IBM Corp. v. Micro Focus (US), Inc.*, No. 22-CV-9910, 2024 WL 343265, at *1 (S.D.N.Y. Jan. 30, 2024); *see*

3

*also Gracyzk*, 2020 WL 1435031, at \*9 (reasoning that information in contracts "had no bearing on [the] [c]ourt's treatment of [p]laintiff's motion" and involved "sensitive" materials, and therefore "the presumption in favor of public access is low" and outweighed the public interest); *Bernstein*, 814 F.3d at 143 (citing, among other prototypical examples where interests might favor secrecy, cases involving the revelation of "trade secrets").  Although courts can "seal 'business information that might harm a litigant's competitive standing' in the market," the mere "'fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order.'"  *New York v. Actavis, PLC*, No. 14-CV-7473, 2014 WL 5353774, at \*3 (S.D.N.Y. Oct. 21, 2014) (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)).

B. Common Law

    1. Judicial Documents

       The document at issue in Plaintiff's request is clearly a judicial document.  The document was "placed before the court by the parties" and is "relevant to the performance of the judicial function and useful in the judicial process."  *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (quotation marks and citation omitted); *see also Olson*, 29 F.4th at 89 (recognizing that materials with a "tendency to influence a district court's ruling" are properly treated as judicial documents, even if the court ultimately finds their contents "immaterial" to its decision); *Kewazinga Corp. v. Google LLC*, No. 20-CV-1106, 2024 WL 4224792, at \*1 (S.D.N.Y. Sept. 18, 2024) (reasoning that a "memorandum of law and exhibits in support of [a] motion," *inter alia*, "are judicial documents"); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2024 WL 2076714, at \*2 (E.D.N.Y. May 9, 2024) (denying request to seal language from memorandum in support of motion which, the court explained, was "an important judicial document").

### 2. Weight of the Presumption

Generally, there is a "very strong presumption in favor of public access" to all judicial documents, *Olson*, 29 F.4th at 88 (quotation marks omitted), particularly those "filed in connection with dispositive motions," *id.* at 90. Here, Exhibit B was submitted in support of PharmacyChecker's Response to Defendant's Pre-Motion Letter for Summary Judgment, which is not a dispositive motion. (*See* Decl. of Aaron Gott in Supp. of PharmacyChecker.com's Resp. to NAPB Pre-Mot. Letter for Summ. J. ("Pl.'s Decl.") ¶ 3 (Dkt. No. 469-1).) Thus, the presumption falls somewhere short of the common law presumption's "zenith." *Olson*, 29 F.4th at 89. Moreover, Exhibit B was neither central to the Parties' briefing nor to the legal issues decided by the Court, and it was only referenced once in Plaintiff's Response. (*See* Resp. to NABP Pre-Mot. Letter for Summ. J. ("Pl.'s Resp.") 2 (Dkt. No. 469).)

Information that is "largely collateral to the factual and legal issues central to the resolution of these motions" is afforded a lower weight than material at the heart of the decision before the Court. *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017). Therefore, the weight of the presumption afforded to the material that Plaintiff seeks to seal is somewhat reduced.

### 3. Balance of Interests

As to the balance of interests, the Court determines the Parties' interests in sealing Exhibit B outweigh the public's interest in accessing the information.

Plaintiff requests that the Court permit it to file under seal two pages of the Deposition Transcript of Carmen Catizone, which is "Protected Material" as defined by the Parties' Stipulated Protective Order in this Action. (*See* Pl.'s Req. 1; Stipulated Protective Order Governing the Production and Exchange of Confidential Information ("Protective Order") 16

(Dkt. No. 181).)  The pages contain information derived from documents designated as Confidential by Defendant and are considered highly proprietary business material.  (Pl.'s Req. 1.)  This material falls within a category of documents commonly subject to sealing: "'specific business information and strategies [which] may provide valuable insights into a company's current business practices that a competitor would seek to exploit.'"  *Boothbay Absolute Return Strategies, LP v. Belgische Scheepvaartmaatschappij-Compagnie Maritime Belge S.A.*, No. 24-CV-1445, 2024 WL 1097128, at *8 (S.D.N.Y. Mar. 13, 2024) (quoting *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015)) (alterations adopted).

Defendant is "engaged in a highly competitive industry and deliberately has shielded such information from its competitors" to gain a commercial advantage.  *Actavis*, 2014 WL 5353774, at *3; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing that "common-law right of inspection has bowed before the power of a court" to ensure that records are not used "as sources of business information that might harm a litigant's competitive standing").  The disclosure of this material, which reflects Defendant's own understanding of the "competitiveness of its" products, would cause competitive harm.  *Oliver Wyman*, 282 F. Supp. 3d at 706–707.  Moreover, the Court finds that the proposed redactions are "sufficiently narrowly tailored to protect the parties' competitively sensitive sales and marketing information" because they are limited to that information.  *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-CV-598, 2021 WL 776701, at *7 (N.D.N.Y. Mar. 1, 2021).

The Court concludes that that the risk of commercial harm to Defendant's competitive advantage outweighs the common law right to access and that sealing is essential to preserve the value of Defendant's work and is narrowly tailored to serve that interest.  This conclusion is buttressed by the fact that the material was, for the most part, not cited by Plaintiff in its own

response. (*But see* Pl.'s Resp. 2 (citing a single piece of information from Exhibit B).) Accordingly, Exhibit B may remain under seal until further order of the Court.

C.  First Amendment

Plaintiff did not meaningfully address the public's First Amendment presumption of access to the materials submitted. (*See generally* Pl.'s Req.) Nevertheless, the Court evaluates whether the public has a First Amendment right to an unredacted copy of Exhibit B. *See EFT Servs., LLC v. I-POS Sys. LLC*, No. 20-CV-1757, 2025 WL 1752144, at *5 (S.D.N.Y. June 25, 2025) (addressing First Amendment right despite failure to address by parties); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542, 2023 WL 196134, at *6 (S.D.N.Y. Jan. 17, 2023) ("Finally, while the moving party bears the burden of justifying sealing, the ultimate task of balancing these interests 'rests heavily upon the shoulders of the trial judge.'" (quoting *Matter of N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987))).

The Second Circuit has held that the presumption of access under the First Amendment applies to pretrial motions and the documents submitted in connection with those motions. *See Next Caller Inc. v. Martir*e, 368 F. Supp. 3d 663, 666 (S.D.N.Y. 2019) ("The [Second Circuit] has held that [the] presumption applies to complaints filed in civil actions, as well as pretrial motions and written documents submitted in connection with them, and docket sheets." (citations and quotation marks omitted)); *Newsday*, 730 F.3d at 167 (considering whether a document produced in a case was a judicial document, looking to "the use that was made, and that the parties could reasonably have been expected to make, of the [document] in connection with the . . . proceeding"). The material that Plaintiff seeks to seal, then, is largely subject to the public right of access—except insofar as it contains "proprietary information and trade secrets," which are materials "to which the general public has no right of access." *EFT Servs.*, 2025 WL

1752144, at *5.  Accordingly, the nature of the redacted information warrants its continued redaction.  *Id.*; *see also Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20-CV-8037, 2023 WL 3736440, at *2 (S.D.N.Y. May 31, 2023) ("Nonetheless, 'in certain circumstances, business data . . . may remain under seal even where the First Amendment is implicated.'" (quoting *In re Keurig Green Mountain*, 2023 WL 196134, at *6)).  As described, the information discussed in Exhibit B is proprietary and commercially sensitive, and its disclosure would otherwise risk harm to Defendant's business interests.  *See EFT Servs.*, 2025 WL 1752144, at *5 (reasoning in the alternative that, even where the First Amendment right of access applies, sealing can be justified based on possible harms to business interests).

## II. Conclusion

For the reasons set forth above, Plaintiff's request to file under seal is granted.  The Clerk of Court is respectfully requested to close the pending motions at Dkt. No. 467 and Dkt. No. 468.

SO ORDERED.

Dated:   March 27, 2026
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

8