**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

PharmacyChecker.com LLC,

                   Plaintiff,

            -against-

National Association of Boards
of Pharmacy et al.,

                Defendants.

------------------------------------------------------------------X

19-cv-07577-KMK-VR

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/10/2026

**VICTORIA REZNIK, United States Magistrate Judge:**

Before the Court is a request by Defendant National Association of Boards of Pharmacy (NABP) for recoverable fees associated with sanctions issued by the undersigned against Plaintiff PharmacyChecker.com LLC. For the reasons below, the request is **GRANTED in part**.

## BACKGROUND

The Court assumes familiarity with the factual background and procedural history of this antitrust action. In August 2025, NABP moved for sanctions against Plaintiff for allegedly allowing 19 months of granular website traffic data to be destroyed during discovery (ECF Nos. 485–87), which Plaintiff opposed (ECF Nos. 490–91).

By opinion and order entered September 25, 2025, NABP's motion was partially granted, and the Court imposed several sanctions on Plaintiff. (ECF No. 502). Among them, Plaintiff was directed to "make clear that any Google and Bing

1

search engine traffic and related damages for this missing period are an approximation or estimate derived from the data available, which does not include granular data by search engine." (*Id.* at 17–18). Plaintiff was also sanctioned with a requirement to cover NABP's attorneys' fees and costs incurred in making the sanctions motion and preceding premotion letter. (*Id.* at 20). NABP was directed to "submit one or more declarations evidencing its recoverable fees and costs," and Plaintiff was given a chance to respond to any submitted declarations. (*Id.* at 21).

Shortly thereafter, NABP submitted its declaration with several exhibits. (ECF Nos. 506, 506-1 to 506-7). In its declaration, NABP explained that the following eight individuals were involved in the sanctions-seeking process and provided their corresponding title and hourly rate:

| Name | Title | Hourly Rate (in dollars per hour) |
|---|---|---|
| Erik Koons | Partner | 1,235 |
| Monica Smith | Partner | 1170 |
| Kelsey Paine | Senior Associate | 975 |
| Natalie Cardenas | Associate | 945 |
| Megan Tankel | Associate | 870 |
| Eric Weider | eDiscovery Counsel | 570 |
| John Mitchell | Paralegal | 400 |
| Olga Marshall | Paralegal | 380 |

(ECF No. 506 at 9).

In total, NABP sought reimbursement of $312,429 in attorneys' fees and costs. (ECF No. 506 at 3, 11).[1] The exhibits supporting the declaration contained invoices detailing relevant work performed (ECF Nos. 506-1 to 506-6), and an AmLaw 100 data print-out listing the hourly rates for attorneys and paralegals at the 100 largest law firms in New York City (ECF No. 506-7). Plaintiff then responded to NABP's declaration. (ECF No. 509).

## DISCUSSION

NABP argues that the hourly rates listed above were reasonable, given the complexity of this action, experience levels of the individuals involved, and prevailing hourly rates for comparable law firms in New York City. (ECF Nos. 506 at 8–11). It also argues that the hours its attorneys spent on this discovery issue were reasonable based on the time needed for factual investigation, drafting documents, and preparing for oral argument, among other things. (*Id.* at 5–8).

In opposition, Plaintiff argues that the hourly rates for Paine, Cardenas, Tankel, Weider, Mitchell, and Marshall listed in the declaration were unreasonable because they exceeded the hourly rates seen in this District. (ECF No. 509 at 25–27). It also argues the number of hours NABP's team worked were unreasonable because, among other things, the matter was overstaffed, individuals performed redundant work, and billing entries were vague. (*Id.* at 11–25).

---

[1] This total amount broke down to $272,341 for 274.4 hours spent working on the motion for sanctions and associated premotion letter, and an additional $40,088 for 39.5 hours spent working on the declaration evidencing recoverable fees. (ECF No. 506 at 3, 5, 7).

3

When a district court awards attorneys' fees and costs, it has "considerable discretion" in determining the amount of any award. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008) [hereinafter *Arbor Hill*]. But the award must be limited to fees and costs caused by the sanctioned party's misconduct; it cannot include fees and costs the injured party would have incurred even absent that misconduct. *See Laba v. JBO Worldwide Supply Pty Ltd*, 20-CV-3443 (AKH) (KHP), 2023 WL 4985290, at *13 (S.D.N.Y. July 19, 2023), *report and recommendation adopted by*, 2024 WL 550252 (S.D.N.Y. Feb. 12, 2024), *aff'd*, 2025 WL 323762 (2d Cir. Jan. 29, 2025). Nor may the award go beyond what is necessary to compensate the injured party for the losses it suffered. *See Laba*, 2023 WL 4985290, at *13.

The Court calculates the amount of the award by multiplying a reasonable hourly rate by a reasonable number of hours worked, which yields a "presumptively reasonable fee." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (internal quotation marks and citation omitted). Even so, a court may apply an across-the-board reduction to the total fee award to account for excessive rates or hours when performing a targeted, more precise reduction would be burdensome. *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) ("It is common practice in [the Second Circuit] to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." (internal quotation marks and citations omitted)); *see also StoneX Grp., Inc. v. Shipman*, 23-CV-00613 (JGK) (VF), 2025 WL 1212165, at *10

4

(collecting cases that imposed across-the-board reductions for circumstances such as excessive billing, vague and redundant billing entries, block billing, overstaffing, and clerical tasks). Indeed, "courts in this Circuit have applied across-the-board reductions ranging from 30% to 75%," *StoneX Grp., Inc.*, 2025 WL 1212165, at *10, with reductions around 30% considered "common" in this District specifically. *Beastie Boys*, 112 F. Supp. 3d at 57 (collecting cases in Southern District of New York where courts reduced fee awards by approximately 25% to 35%).

Because the parties dispute both the reasonableness of the hourly rates and the number of hours billed, the Court addresses each in turn.

### A. <u>Hourly Rates</u>

A reasonable hourly rate is what a reasonable client would be willing to pay, recognizing that a client prefers to pay no more than necessary to effectively litigate the case. *See Arbor Hill*, 522 F.3d at 189–90 ("The reasonable hourly rate is the rate a paying client would be willing to pay. . . . [A court] should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.").

In calculating a reasonable hourly rate, courts treat the hourly rates a law firm actually charges and that clients actually pay as "strong evidence" that the requested rate is reasonable. *Laba*, 2023 WL 4985290, at *14. But any rate calculation must account for "all case-specific variables" and consider "all pertinent factors" like those detailed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d

5

714 (5th Cir. 1974).[2] *Lilly*, 934 F.3d at 230 (internal quotation marks and citation omitted). Two often-mentioned considerations are "the quality of an attorney's performance" and the prevailing market rate in a given district for similar work performed by attorneys with comparable skill, experience, and reputation. *Bobulinski v. Tarlov*, 24-CV-2349 (JPO), 2025 WL 872178, at *1 (S.D.N.Y. Mar. 20, 2025) (internal quotation marks and citations omitted). Courts also routinely consider the "novelty and complexity" of the legal issues involved, *Lilly*, 934 F.3d at 232, with discovery matters typically yielding lower rates and awards. *See Top Jet Enters., Ltd. v. Kulowiec*, 21-MC-789 (RA) (KHP), 2022 WL 1184245, at *3 (S.D.N.Y. Apr. 21, 2022) (collecting cases where awards reduced because discovery issues involved).

Here, Plaintiff challenges the hourly rates for six timekeepers, but not the rates for the two partners, Koons and Smith. (ECF No. 509 at 25–27). Those partner rates for Koons and Smith are high. But they are in line with rates charged by large New York City law firms for partners in complex litigation, and courts in this District have approved partner rates of $1000 per hour and above. *See Top Jet Enters., Ltd.*, 2022 WL 1184245, at *3 (noting that "courts in this District have approved hourly rates as high as $1,000"); *Wells Fargo Tr. Co., N.A. v. Fast*

---

[2] In *Johnson*, the Fifth Circuit identified twelve factors that should be considered: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717–19).

*Colombia S.A.S.*, 23-CV-603 (PGG) (RWL), 2023 WL 8591953, at *7 (S.D.N.Y. Oct. 16, 2023) (concluding hourly rate between $1,370 and $1,750 per hour not unreasonable for partners at large New York City law firm), *report and recommendation adopted by*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding hourly rates ranging from $1,170 and $1,260 per hour reasonable for partners at large New York City law firm). And although the Court finds the submitted AmLaw 100 data[3] largely unhelpful, that data does show comparable partner rates above those sought for Koons and Smith.

But the hourly rate sought for Paine, a ninth-year senior associate, exceeds those typically awarded in this District. Approved rates for senior associates at large New York City firms, or their equivalent, have ranged from roughly $475 to $895 per hour. *See Top Jet Enters, Ltd.*, 2022 WL 1184245, at *4 (awarding senior associate rate of $475 per hour); *StoneX Grp., Inc.*, 2025 WL 1212165, at *3 (awarding $800 per hour); *An v. Despins*, 22-cv-10062 (VEC) (JW), 2024 WL 1157281, at *1 (S.D.N.Y. Mar. 18, 2024) (awarding $895 per hour), *appeal dismissed*, 2024 WL 4524742 (2d Cir. Aug. 13, 2024). NABP's requested rate for Paine of $975 per hour sits above even the top end of that range. And NABP offers very little to justify it. Aside from Paine's graduation year (2016) and law school (the University of Miami), NABP provides no information about her experience or expertise.

---

[3] *See* ECF No. 506-7.

The submitted AmLaw 100 data does little to shed light on this. At best, it shows an inexplicable variability among the rates for ninth-year associates ranging from $605 to $1,780 per hour. But without more information about these lawyers' credentials, experience, or expertise, it is difficult to explain these discrepancies and assess whether they justify the rate sought for Paine. It is true that some courts have observed that the "going rate" for senior associates in New York City "is near or above $1,000 per hour." *Wells Fargo Tr. Co., N.A.*, 2023 WL 8591953, at *7. But NABP has not made the necessary showing to justify that rate for Paine.

The same problem applies to NABP's requested rates for Cardenas and Tankel, the mid-level associates. Courts have generally approved hourly rates ranging from $300 to $750 per hour for associates, depending on experience. *Top Jet Enters, Ltd.*, 2022 WL 1184245, at *3 (collecting cases in Southern District of New York detailing range of associate rates); *Wells Fargo Tr. Co., N.A.*, 2023 WL 8591953, at *7 (identifying associate rates ranging from $405 to $660 per hour after surveying recent cases). For Cardenas, a fifth-year associate, and Tankel, a fourth-year associate, NABP seeks a rate of $945 and $870 per hour, respectively. (ECF No. 506 at 9). Not only are those rates well above those typically awarded for mid-level associates, but NABP provides no support for why they should command rates nearly equal to Paine's, the senior associate on the case. That NABP provides no support for their experience level or expertise (beyond their year of graduation and law school attended) only underscores this problem. And, as mentioned above, the AmLaw 100 data provides little insight. In it, rates range from $655 to $1,780 per

hour for fourth-year associates and $582 to $1,780 per hour for fifth-year associates, with no explanation for what justifies the high or low end of the range.

The requested rates for Wieder, Mitchell, and Marshall are also too high. For paralegals, research managers, and eDiscovery specialists, courts in this District generally approve rates ranging from $150 to $200 per hour, depending on experience and expertise. *See Barbera v. Grailed, LLC*, 24-cv-3535 (LJL), 2025 WL 1237413, at *3 (finding rate of $200 per hour for paralegal reasonable); *Vista Outdoor Inc.*, 2018 WL 3104631, at *7 ($150 to $200 per hour); *Access Bio, Inc. v. Division 5 Labs, Inc.*, 23 Civ. 4820 (LGS), 2024 WL 3084990, at *3 (S.D.N.Y. June 20, 2024) ($100 to $150 per hour); *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22 Civ. 4629 (LGS) (SLC), 2023 WL 9603886, at *8 ($150 per hour); *StoneX Grp., Inc.*, 2025 WL 1212165, at *5 ($150 per hour); *Top Jet Enters., Ltd.*, 2022 WL 1184245, at *4 ($100 per hour). In some instances, courts have approved higher rates, but those cases involved more senior staff with significant experience or expertise. *See Bobulinski*, 2025 WL 872178, at *2 (finding $297.50 per hour reasonable for paralegal with 15 years experience in industry); *Laba*, 2023 WL 4985290, at *14 (finding rate between $250 and $275 per hour was "not unreasonable or excessive" for legal assistant).

Here, for Mitchell and Marshall, the two paralegals, NABP seeks rates of $380 per hour and $400 per hour, respectively. And for Weider, its eDiscovery counsel, it seeks a rate of $570 per hour. All three rates are far above the norm. Yet NABP provides no information about their seniority or experience. That omission

9

weighs strongly against awarding those higher rates. *See Match Grp., LLC*, 2023 WL 9603886, at *8 (declining to award requested fees for paralegals and "ESI staff" because requesting party failed to provide information about seniority and experience). And, again, the AmLaw 100 data offers little help. It shows paralegal rates ranging wildly from $125 to $890 per hour and provides no comparable rates at all for eDiscovery counsel or similar ESI staff.

### B.  <u>Hours Billed</u>

NABP requests fees based on 274.4 hours billed in connection with their sanctions motion, which includes time spent investigating the spoliation, drafting its premotion letter, briefing the sanctions motion, and appearing for oral argument. (ECF No. 506 at 5–7). It also requests additional fees for 39.5 hours spent preparing and filing the attorney's fees motion, including the declaration and exhibits. But there are several issues with the total time billed.

First, NABP's time records reveal very top-heavy staffing of this case, with the most senior attorneys billing the most amount of time as compared to the mid-level associates.[4] For instance, one senior partner billed more hours than both mid-level associates combined, and the most senior partner billed more time than the most junior associate on the case. And of the total 274.4 hours spent on the premotion letter and sanctions motion, the substantial majority of that time was billed by the most senior attorneys involved. It may be true that some tasks for these two filings required heavy involvement by more senior attorneys. But it is also

---

[4] Although NABP did provide contemporaneous time records, it failed to summarize the number of hours billed by each individual, which required considerable time for the Court to deduce.

true that much of the work involved investigation, research, and writing, which most clients expect to be delegated to more junior attorneys. That the client here seemed willing to pay for such top-heavy staffing does not dictate that the resulting fees are reasonable.[5] *See Beastie Boys*, 112 F. Supp. 3d at 51, 57 (acknowledging that client may have demanded senior attorneys perform bulk of work, but reasonableness test is objective and not dictated by whims of what particular client was willing to pay).

Second, the number of hours spent on this spoliation sanctions issue seems excessive when compared to the number of hours deemed reasonable in similar situations. "Courts in this District generally find 100 hours to be within the reasonable range for attorneys to expend on work related to a motion for sanctions." *StoneX Grp., Inc.*, 2025 WL 1212165, at \*6 (collecting cases involving motions for sanctions where roughly 100 hours expended were deemed reasonable). But even in cases like this one, involving an extensive record and expert-driven analyses, the range of reasonable hours expended often falls between 128 and 190 hours—still well below the number of hours billed by NABP here. *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS) (OTW), 2020 WL 4750600, at \*3 (finding 190 hours expended on motion for sanctions was reasonable); *Laba,* 2023 WL 4985290, at \*15 (finding roughly 128 hours worked was reasonable).

---

[5] The use of an insurance carrier by NABP and its counsel to pay a portion of the attorneys' fees may also essentially create a de facto lower rate for the client to bear, which any client may be more inclined to accept.

Third, some amount of time was billed for analyzing the website traffic data produced by Plaintiff and investigating the spoliation. But some portion of that traffic data analysis would have been necessary regardless of the spoliation. Indeed, it appears that Plaintiff identified the issue of months of missing traffic data soon after it produced a larger portion of traffic data in response to an order from this Court. (ECF Nos. 428, 449 at 2). In other words, it was not as if NABP had to investigate the traffic data to "discover" the spoliation; Plaintiff essentially pointed it out to them.

Fourth, and finally, at least 30 hours were spent on searching the production for the missing data that may have been produced in some other form earlier in the case. As a result, NABP identified some of the missing data and submitted a letter clarifying the narrower remedy sought by its sanctions motion. But that clarification letter was not the result of Plaintiff's spoliation, it was the result of NABP's failure to identify some of the data in the production that had already been produced. Thus, it is not fairly included among the fees sought.

## C. **An Across-the-Board Fee Reduction is Necessary**

Taking all of the necessary factors and considerations into account, the Court finds that a reduction in NABP's total fee award is necessary. But an item-by-item reduction in hourly rates or hours billed would be unwieldy, making an across-the-board reduction more appropriate. Thus, NABP's total requested fee award is reduced by 40%. As noted above, across-the-board fee reductions ranging from 30% to 75% are common in this District to reflect whether the fee request lacked

12

information about individual attorney experience, or whether the work performed was top-heavy, unnecessary, or improperly billed, among other reasons. *See StoneX Grp., Inc.*, 2025 WL 1212165, at *6–10 (collecting cases where across-the-board reductions imposed and imposing 65% reduction, in part, because of overstaffing, top-heavy staffing, and excessive billing); *Beastie Boys*, 112 F. Supp. 3d at 53 (imposing across-the-board reduction to requested award "to reflect the unusually partner-intensive nature" of work performed by law firm); *Wells Fargo Tr. Co., N.A.*, 2023 WL 8591953, at *7–10 (imposing across-the-board reduction of fee award by 20% after noting missing information about attorney work experience and determining that hourly rates charged were unreasonable).[6]

As noted above, this Court identified several of these issues in NABP's fee request. The hourly rates requested for associates and non-attorney staff were substantially higher than those typically awarded in this District, and NABP provided little information about the individuals' experience or expertise that would justify this departure. The staffing of the case was top-heavy, with partners collectively billing a substantial majority of the time, rather than the more junior associates on the case. The total number of hours billed on the premotion letter and sanctions motion was excessive compared to the range of hours courts in this District have found reasonable for similar motions. And some of the billed hours

---

[6] *See also HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 590–93 (S.D.N.Y. 2021) (imposing across-the-board fee reduction by 15% because of overlapping work and top-heavy staffing); *Top Jet Enters., Ltd.*, 2022 WL 1184245, at *3 (imposing across-the-board reduction of hours to address overbilling); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 20-cv-5120 (LJL), 2023 WL 112429, at *9 (similar).

included time for work that would have been, or should have been, done regardless of Plaintiff's spoliation.

Thus, this Court awards attorneys' fees and costs in the amount of $187,457.00 to NABP, to be paid joint and severally by Plaintiff and its counsel. *See Barbera*, 2025 WL 1237413, at \*4 (making fee award payable jointly and severally because party and counsel bore responsibility for discovery violations).

## **CONCLUSION**

For the reasons above, Defendant NABP's request for recoverable fees is GRANTED in part. NABP is awarded attorneys' fees and costs in the amount of $187,457.00, to be paid jointly and severally by Plaintiff PharmacyChecker.com LLC and its counsel within 60 days of this Order.

**SO ORDERED.**

DATED:    White Plains, New York
          April 10, 2026


_____
VICTORIA REZNIK
United States Magistrate Judge

14