UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHARMACYCHECKER.COM LLC,

Plaintiff,

v.

NATIONAL ASSOCIATION OF BOARDS OF PHARMACY, *et al.*,

Defendants.

No. 7:19-cv-07577 (KMK)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF PHARMACYCHECKER.COM LLC'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 29, 2026 OPINION AND ORDER**

(Fed. R. Civ. P. 59(e); Local Civil Rule 6.3)

NABP's opposition is as notable for what it does not address as for what it does. It does not address Google's February 2019 public statement that its ranking systems give "more weight" to authoritativeness and trustworthiness on health-related searches—the mechanism evidence the Order did not address. ECF No. 563 ("Mot.") at 7. It does not address Magistrate Judge Reznik's finding that most of PCC's organic traffic came from Google "for every period such data was measured." *Id.* at 6. And it does not address PCC's request that the Court reconsider only Hochman's core Google opinion. *Id.* at 11.

What NABP does address concedes the premise of the motion: it agrees that the result of Hochman's structural break analysis is "not disputed." ECF No. 565 ("Opp.") at 2. NABP's own SEO expert admitted Hochman's method is one practitioners could "use to 'make inferences.'" ECF No. 513, Ex. D ("Kent Rep.") ¶ 228. The Google-specific traffic data NABP faults Hochman for not analyzing is in the record. It shows the same March 2019 break.

## ARGUMENT

### I. *RUTLEDGE* IS A CONTROLLING DECISION THE ORDER DID NOT APPLY

PCC did not argue that *Rutledge* changed the law. *Rutledge v. Walgreen Co.*, 182 F.4th 168 (2d Cir. 2026). It argued that the Order overlooked a controlling decision, a ground for reconsideration recognized by the Second Circuit. Mot. at 1–2; *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). That *Rutledge* applies *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), does not diminish it; it reversed

exclusions resting on reasoning that parallels the Order's. *Rutledge*, 182 F.4th at 184–86.

Nor did PCC forfeit *Rutledge* by not filing a notice of supplemental authority. The *Rutledge* opinion was issued after briefing closed, and no rule required a notice. The out-of-circuit district court decisions NABP cites do not relieve its obligation to apply binding Second Circuit precedent. *N.Y. by James v. Red Rose Rescue*, 771 F. Supp. 3d 311, 340 (S.D.N.Y. 2025) (district court bound to apply precedent unless and until overruled).

## II. THE STRUCTURAL BREAK ANALYSIS DISTINGUISHES AMONG COMPETING EXPLANATIONS

NABP does not dispute that the structural break analysis is reliable. It argues instead that the analysis shows only that traffic declined. Opp. at 2–3 & n.2. But gradual causes—competition, site quality, a long-term trend—produce gradual declines, not a single dominant break. Hochman's models, run across the series from 2015 forward, identified exactly that. ECF No. 513, Ex. B ¶ 69; *id.* Ex. A at 305:24–306:14, 308:20–309:5. And traffic settled well below its pre-Medic level, which a reversal would not produce. *See* § IV.

The structural break analysis is distinct from Hochman's month-to-month charts because it is a formal statistical test, not a visual comparison. As PCC's damages expert explained, data with "enough noise mixed in with the signal" cannot be read by eye, "and that's why you want to resort to a formal statistical test." ECF No. 516, Ex. B at 186:22–187:3. It also tests competing timing explanations: if a later

event had dominated, the test would have placed the break there. *Id.* at 219:16–220:10.

PCC never argued that a breakpoint identifies cause by itself. NABP omits the relevant assertion: “Paired with a mechanism publicly disclosed by Google and cited by Dr. Hochman, that is evidence of causation, not mere correlation.” Mot. at 3. NABP’s description of *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018)—an analysis “designed to confirm a hypothesis” supported by other evidence—describes Hochman’s analysis. 3d 152 (S.D.N.Y. 2018)—an analysis “designed to confirm a hypothesis” supported by other evidence—also describes Hochman’s analysis. Opp. at 4.

NABP’s claim that the Order considered the analysis is also wrong. The Order does not cite the Ruptures analysis in either Hochman report. The paragraphs NABP identifies concern revenue and Hochman’s summary conclusions. *Compare* Opp. 2–3 n.2, *with* ECF No. 561 at 26 (citing ECF No. 513, Ex. B ¶¶ 67, 70, Ex. G ¶¶ 67, 70).

## III. HOCHMAN USED THE BEST AVAILABLE MEASURE OF PCC’S LOSS

NABP cannot confine *Rutledge*’s mechanism holding to epidemiology: *Rutledge* grounded that holding in *Kumho Tire*’s field-practice standard. *Rutledge*, 182 F.4th at 186, 189. Nor can NABP confine *Rutledge*’s proxy holding to data unavailable for ethical reasons. Opp. at 6. *Rutledge* is not so limited; it rested on data that “would rarely if ever be available in observational studies.” 182 F.4th at 188–89. The Order faulted Hochman first for lacking evidence of Google’s internal ranking inputs, ECF No. 561 at 20, 25, which is not generally available to anyone outside of Google—

including NABP's own expert, whose analysis rests on searches he ran in 2025. ECF No. 513 at 7 (citing Kent Report ¶¶ 137-61).

The search-engine-specific data NABP invokes is in the record. ECF Nos. 498-2, 498-4. Reviewing it, Judge Reznik found that Google supplied most of PCC's organic traffic "for every period such data was measured," and that for any period to "look vastly different . . . would defy logic." ECF No. 502 at 17. Hochman's aggregate measured what NABP says he should have measured. Keyword rankings would not have been a better measure. In 2018, PCC ranked for roughly 38,000 keywords but it tracked only 276—less than one percent. ECF 513, Ex. D ¶ 128.

Hochman's work in *Delta* does not suggest otherwise, as it asked a different question: what consumers saw when they searched for particular brand names. *Delta Air Lines, Inc. v. Marriott Int'l, Inc.*, No. 20-CV-01125 (N.D. Ga.). He answered it with search results. ECF No. 526, Ex. 1 at 94:21–24, 100:7–25. The question here is how much traffic PCC lost across all searches. Traffic answers that question.

NABP's own expert refutes its assertion that PCC offers no evidence that Hochman's method reflects practice in the field. Kent acknowledges that "SEO relies on inference," that an SEO expert "may infer that some particular factor caused the drop," and that Hochman's methodology "is one that people could use to 'make inferences." Kent Rep. ¶¶ 226, 228. His objections to Hochman's confidence and how he applied the method go to weight.

## IV. THE RECORD SHOWS THAT HOCHMAN CONSIDERED THE MEDIC REVERSAL UPDATE

NABP concedes that the Court did not find that the Medic reversal caused PCC's decline; it found that Hochman 'fail[ed] to acknowledge' it." Opp. at 9. But the record indicates that he considered it and found it speculative. ECF No. 513, Ex. A at 223:7-14 ("Q: But the facts are also that the biggest gains and losses corresponded precisely to two Google updates, one of which is believed by the industry to be a reversal of the prior update. Did you consider that fact at all in your report? A: Oh, yes, I considered all this. But what I'm most interested in are facts and evidence, not in speculation."). Showing that an order misdescribes evidence already before the Court is not new argument. Nor is Hochman's deposition testimony a source of "new arguments not raised in his report." Opp. at 10. The Order relied on Hochman's testimony throughout, ECF No. 561 at 16 n.9, 20, 23, and an expert does not ignore a confounder he addresses "elsewhere in his expert testimony." *Rutledge*, 182 F.4th at 196.

NABP's expert says the decline merely returned traffic to its September 2018 level. ECF 513, Ex. D ¶ 206. September 2018 was PCC's lowest month of 2018 and the month it launched its redesign. ECF No. 498-4 at 3; ECF No. 513, Ex. A at 281:5–13. Hochman testified that traffic fell below the level it had held from 2015 into 2019 and stayed there. ECF No. 513, Ex. A at 250:6–18. A reversal would not produce that result.

NABP's other alternatives fare no better. Hochman agreed that denunciation by trustworthy parties could hurt rankings, ECF No. 513, Ex. A at 175:5–7 and

explained that the earlier statements were already reflected in his baseline. *Id.* at 183:3–10. The backlink spike NABP's expert identifies occurred in September 2018, Kent Rep. ¶¶ 236–39, and PCC's page deletions were complete by October 2018. ECF No. 561 at 27. Both preceded five months of sharply higher traffic. Neither explains a break in March 2019.

## V. NABP IS NOT ENTITLED TO FEES

An award of fees under the Court's inherent power requires clear evidence that the challenged position was entirely without color and was pursued in bad faith. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012); *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). A motion resting on a binding decision published after briefing closed is not colorless. NABP identifies no evidence of bad faith, let alone " 'clear evidence' that [PCC's] actions were taken to harass, delay the proceedings, or for otherwise inappropriate reasons." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 935 F. Supp. 443, 448 (S.D.N.Y. 1996).

## CONCLUSION

The Court should grant PCC's motion, admit Hochman's opinion that NABP's listing caused the March 2019 break in PCC's organic search traffic, vacate its grant of summary judgment, and deny NABP's request for fees.

Respectfully submitted,

Dated: November 3, 2026

BONA LAW PC

*S/ James F. Lerner*
JAMES F. LERNER

james.lerner@bonalawpc.com
16 Madison Square Park West, 9th Floor
New York, NY 10010
(212) 634-6861

Aaron R. Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
331 2nd Avenue S., Suite 420
Minneapolis, MN 55401
(612) 968-7758

*Counsel for Plaintiff PharmacyChecker.com LLC*

**CERTIFICATE OF COMPLIANCE**

I certify that this reply memorandum of law complies with the 1,750-word limitation of Local Civil Rule 6.3 and Local Civil Rule 7.1(c). Excluding the parts of the document exempted by Local Civil Rule 7.1(c), it contains 1,535 words, as counted by the word-processing program used to prepare it.

*S/ James F. Lerner*
James F. Lerner

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November 2026, the Reply Memorandum of Law in Further Support of Plaintiff PharmacyChecker.com LLC's Motion for Reconsideration of the Court's September 29, 2026 Opinion and Order (Fed. R. Civ. P. 59(e); Local Civil Rule 6.3) was filed electronically with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this matter.

*S/ James F. Lerner*
James F. Lerner